HEATHER SMITH
CIRCUIT CLERK

2019 MAR 14 AM 11: 36

CLEBURNE COUNTY
HEBER SPRINGS, ARKANSAS

### IN THE CIRCUIT COURT OF CLEBURNE COUNTY, ARKANSAS
### CIVIL DIVISION

JERRY McCARTY; PATRICIA THOMAS;
LARRY THOMAS; HAROLD RAY MOORE;
DORIS A. MOORE; JOHNNY BITTLE;
LINDA BITTLE; ERNIE C. HUNT;
SHERRY L. HUNT; WILLIAM DELLAIN NELSON;
HENRY KEITH MURPHREE; and EVELYN MURPHREE,
On Behalf of Themselves and All Others
Similarly Situated                                                    **PLAINTIFFS**

v.                          No. 21CV 2019- 41

XTO ENERGY, INC.                                                      **DEFENDANT**

### COMPLAINT
(Class Action)

Come the Plaintiffs, Jerry McCarty; Patricia Thomas; Larry Thomas; Harold Ray Moore;

Doris A. Moore; Johnny Bittle; Linda Bittle; Ernie C. Hunt; Sherry L. Hunt; William Dellain

Nelson; Henry Keith Murphree; and Evelyn Murphree for themselves and for all others in the

class of persons hereinafter described who are similarly situated, and for their cause of action

against the defendant, XTO Energy, Inc., state:

### *Introduction*

1.  This is a Complaint to recover amounts due to the Plaintiffs and all other persons

similarly situated with the Plaintiffs who are owners ("Lessors") of oil, gas and other

hydrocarbons (herein referred to as "Minerals") in real property located in the Fayetteville Shale

gas production area of the State of Arkansas from which natural gas is produced, and who have

entered into oil and gas leases now held by the Defendant, XTO Energy, Inc.

2.  The Oil and Gas Leases between the Plaintiffs and XTO contain provisions hereinafter described prohibiting the deduction, directly or indirectly, of the costs to XTO of producing, gathering, storing, separating, treating, dehydrating, compressing, processing, transporting and marketing ("the production/marketing costs") the gas from the royalty proceeds accruing to the Lessors (*i.e.*, the Plaintiffs) under the lease or by state law.

3.  Notwithstanding the lease provisions prohibiting the deduction of such production/marketing costs from the royalty share, such costs have nevertheless been deducted and withheld from the Plaintiff Lessors by the Defendant XTO.

### *Class Action Allegations*

4.  The named Plaintiffs bring this claim for themselves and for all others similarly situated to obtain monetary relief pursuant to Arkansas Rule of Civil Procedure 23(a) and (b). Plaintiffs seek to certify this lawsuit as a class action and to be appointed as the class representatives to bring this collective action.

5.  The class is comprised of all persons who have (i) entered into oil and gas leases (including exhibits or addenda) now held by XTO Energy, Inc. (ii) covering lands in the Fayetteville Shale gas formation in the State of Arkansas from which natural gas production is obtained; and (iii) which leases contain provisions prohibiting the deduction by the Lessee (XTO) from the Lessor's royalty interest of the costs of producing, gathering, storing, separating, treating, dehydrating, compressing, processing, transporting and marketing the gas; and (iv) from whose royalty payments XTO is nevertheless deducting such production and marketing costs.

6. The class members may be identified with precision and by objective criteria. The exact number of class members is unknown at this time, but the approximate size of the class is in the hundreds, if not thousands. Thus, under Ark. R. Civ. P. 23(a)(l), the class is so numerous that

2

joinder of all members is impracticable.

6. Pursuant to Ark. R. Civ. P. 23(a)(2), there are questions of law or fact common to the class members. The leases of the Plaintiffs and class members contain provisions that are common in wording and intent. The claims of the Plaintiffs and class members arise from a common nucleus of operative facts relevant to each Plaintiff and each member of the designated class, and Plaintiffs and each class member sue under common legal theories.

7. Common issues of law or fact for Plaintiffs and the class include, but are not limited to:

    a.    Whether XTO is prohibited by the Plaintiffs'/class members' lease or leases from deducting its costs of producing, gathering, storing, separating, treating, dehydrating, compressing, processing, transporting and marketing the gas produced from the drilling units in which Plaintiffs and members of the class have an interest?

    b.    If XTO is prohibited from making the deductions listed in (a), has XTO nevertheless made such deductions?

    c.    If XTO is prohibited from making the deductions listed in (a), and has nevertheless made such deductions, what are the amounts of such deductions made by XTO to the date of trial?

    d.    Whether Plaintiffs/class members should be awarded judgment for the amount of deductions made by XTO to date of trial, plus pre-judgment interest?

    e.    Whether Plaintiffs/class members should be awarded statutory penalties and attorney's fees, and if so, what amount should be awarded?

7. Pursuant to Ark. R. Civ. P. 23(a)(3), the claims of the proposed class representatives are typical of the claims for the rest of the class members. XTO has evidenced a common course of corporate policy, pattern, practice and conduct by its concerted and coordinated acts of deducting costs of production, transportation and marketing from the royalty interests of the named Plaintiffs without contractual authority. Based upon such practice and conduct as to the named Plaintiffs' royalty interests, Plaintiffs believe that XTO has also asserted the same

3

withholdings against the royalty interests of the proposed class. There is common liability and a common wrongful conduct by XTO applicable to all class members.

8.    Pursuant to Ark. R. Civ. P. 23(a)(4), the representative parties will fairly and adequately represent and protect the interests of the class members because the class members reside in the Fayetteville Shale area, their royalty income has declined as a result of the common course of corporate policy, pattern, practice and conduct by XTO concerning the deduction of its production and marketing expenses from lessors' royalty payments without contractual authority, and because the class representatives bring this lawsuit for the benefit of and to recover for affected class members.

9. Moreover, the class representatives (the named Plaintiffs) have retained counsel to represent themselves and class members who have extensive experience representing parties and class actions involving property claims, and who have knowledge and experience of the law and claims presented in this lawsuit and the procedural nature of Rule 23, as a procedural mechanism to bring a lawsuit to decide a common liability for and bring relief for a group of affected persons.

10.    Pursuant to Ark. R. Civ. P. 23(b)Alo, this lawsuit should be certified as a class action because individually affected members who prosecute separate actions would cause multiplicity of litigation, there would be risk of inconsistent findings on the same set of operative facts of liability, there would be inconsistent and varying adjudications with respect to individual class members that would establish incompatible standards of conduct for XTO, and individual adjudications would as a practical matter affect the interests and rights of individual persons not made a party to this lawsuit.

4

11. Also, pursuant to Ark. R. Civ. P. 23(b), the common questions of law and fact predominate over any questions affecting individual members. Further, maintaining this lawsuit as a collective action is a superior means of litigating this case because it eliminates multiple lawsuits involving the same operative set of liability facts, multiple litigation with the same witnesses and Defendant, risk of inconsistent adjudication and standards and preserves the rights of individuals who might be affected by disposition of an individual lawsuit, of which they are not a party.

12. Plaintiffs respectfully request that this action be certified as a class action for the recovery of monies owed to Plaintiffs and others similarly situated to Plaintiffs with regard to the terms of oil and gas leases that Plaintiffs and others have with the Defendant, XTO, the breach of such contractual terms by XTO by the withholding of royalties due to the Plaintiffs, and the amounts due to the Plaintiffs and the proposed class.

### *Jurisdiction and Venue*

13. Jurisdiction of this case is proper in this Court pursuant to Arkansas Constitution Amendment 80, Arkansas Code Ann. §15-74-603(a), and Ark. Code Ann. §16-13-201.

14. Venue of this case is proper in this Court pursuant to Arkansas Code Ann. §15-74-603(a) and Ark. Code Ann. §16-55-213.

### *Parties*

15. Plaintiff, Jerry McCarty, is an unmarried individual citizen and resident of Cleburne County, Arkansas.

16. Plaintiffs, Larry Thomas and Patricia A. Thomas are husband and wife, and are individual citizens and residents of Cleburne County, Arkansas.

5

17. Plaintiffs, Harold Ray Moore and Doris A. Moore are husband and wife, and are individual citizens and residents of Cleburne County, Arkansas.

18. Plaintiffs Johnny Bittle and Linda Bittle are husband and wife and are citizens and residents of Cleburne County, Arkansas.

19. Plaintiffs Ernie C. Hunt and Sherry L. Hunt are husband and wife and are citizens and residents of Cleburne County, Arkansas.

20. Plaintiff William Dellain Nelson is a citizen and resident of Cleburne County, Arkansas.

21. Plaintiffs Keith Murphree and Evelyn Murphree are husband and wife and are citizens and residents of Cleburne County, Arkansas.

22. The defendant, XTO Energy, Inc. ("XTO"), is a corporation organized and existing under the laws of the State of Delaware, with its principal office and place of business at 810 Houston Street, Fort Worth, Texas 76102. The agent for service of XTO is Corporation Service Company, 300 Spring Building, Suite 900, 300 South Spring Street, Little Rock, AR 72201.

### *Factual Allegations*

#### *A.  The McCarty Lease*

23. The Plaintiff, Jerry McCarty, is the owner of oil, gas and other mineral interests in real property located in Section 28, Township 11 North, Range 11 West, Cleburne County, Arkansas, said real property hereinafter referred to as "the McCarty Property."

24. On or before December 16, 2009, Plaintiff Jerry McCarty ("McCarty Plaintiff") and his then-wife, Cassandra McCarty, were approached by representatives of Chesapeake Exploration LLC regarding Chesapeake's leasing of the McCarty Property for purposes of conducting

exploration and drilling for and production of oil, gas and other hydrocarbons in, on and under the McCarty Property.

25. Chesapeake prepared an Oil and Gas Lease covering the McCarty Property dated December 16, 2009 ("the McCarty Lease"), including Exhibit A thereto, which Lease and Exhibit A were signed by Jerry McCarty and Cassandra McCarty on or about said date. A copy of the Lease and Exhibit A are collectively attached to this Complaint as Exhibit No. 1.

26. Subsequent to the execution of the said Lease, the rights and obligations of the Lessee in and to the Lease were assigned by Chesapeake and the Lessee's rights and obligations in the Lease are now held by XTO. The Property was placed in a drilling unit by order of the Arkansas Oil and Gas Commission, and XTO is the current operator of gas wells in the drilling unit including the McCarty Property.

27. Production has been and is currently being obtained by XTO from the gas wells on the drilling unit including the McCarty Property.

28. Among other terms and provisions of the McCarty Lease, Paragraph No. 3 of the main text of the Lease states, with regard to proceeds accruing to the Plaintiff McCarty from such production, the following:

4.    Lessee shall pay or, if required by law, contribute to be paid to Lessor $1/5^{th}$ of the net proceeds realized by Lessee for all gas (including all substances contained in such gas) produced from the leased premises and sold by Lessee, less Lessor's proportionate share of taxes and all costs incurred by Lessee in delivering, processing, compressing or otherwise making such gas or other substances merchantable or enhancing the marketing thereof. If such gas is used by Lessee off the leased premises or used by the Lessee for the manufacture of casinghead gasoline or other products, Lessee shall pay Lessor $1/5^{th}$ of the prevailing market value at the well for the gas so used.

29. However, as a result of negotiations regarding the royalty to be paid by Lessee to Lessor, Exhibit A to the Lease was prepared by Chesapeake to amend and modify the main text of the Lease and specifically modifies Paragraph No. 3 of the Lease. Relative to the

7

determination of the amount of royalty to be paid to Plaintiff McCarty, Exhibit A to the Lease

provides as follows:

> The terms and provisions of the Oil and Gas Lease to which the Exhibit "A" is attached
> shall be amended as follows:
>
> ...
>
> 2.      It is agreed between the Lessor and Lessee that, notwithstanding any language
> herein to the contrary, all oil gas or other proceeds accruing to the Lessor under this lease
> or by state law shall be without deduction, directly or indirectly, for the cost of
> producing, gathering, storing, separating, treating, dehydrating, compressing,
> transporting, and marketing the oil, gas and other products produced hereunder to
> transform the product into marketable form; however any such costs which result in
> enhancing the value of the marketable oil, gas or other products to receive a better price
> may be deducted from Lessor's share of production so long as they are based on Lessee's
> actual cost of such enhancements.

30. After production was obtained from the gas wells in the drilling unit containing the

McCarty Property, XTO and its predecessors in interest commenced payment of royalties to the

Plaintiff McCarty for his share of the proceeds from the sale of gas from such wells. In the

royalty payments made prior to January, 2016, XTO or its predecessors in interest did not deduct

from the Plaintiff McCarty's royalties any costs of production, gathering, storing, separating,

treating, dehydration, compression, processing, transporting and marketing the gas.

31. However, commencing with royalty payments made in or about January, 2016, XTO

commenced deducting from the royalties paid to Plaintiff McCarty costs related to production,

gathering, storing, separating, treating, dehydration, compression, processing, transporting and

marketing the gas, contrary to the plain and express terms of the McCarty Lease and said Exhibit

A thereto.

32. Subsequent to the execution of the McCarty Lease, Jerry McCarty and Cassandra

McCarty were divorced, and all interest of Cassandra McCarty in the Minerals covered by the

McCarty Lease were assigned and conveyed by Cassandra McCarty to Plaintiff, Jerry McCarty.

8

### B. *The Thomas Lease*

33. The Plaintiffs, Larry Thomas and Patricia A. Thomas, are the owners of oil, gas and other mineral interests in real property located in Section 28, Township 11 North, Range 11 West, Cleburne County, Arkansas, said real property hereinafter referred to as "the Thomas Property."

34. On or before December 16, 2009, Plaintiffs Larry Thomas and Patricia Thomas were approached by representatives of Chesapeake Exploration LLC regarding Chesapeake's leasing of the Thomas Property for purposes of conducting exploration and drilling for and production of oil, gas and other hydrocarbons in, on and under the Thomas Property.

35. Chesapeake prepared an Oil and Gas Lease covering the Thomas Property dated December 16, 2009 ("the Thomas Lease"), including Exhibit A thereto, which Lease and Exhibit A were signed by Larry Thomas and Patricia A. Thomas on or about said date. A copy of the Lease and Exhibit A are collectively attached to this Complaint as Exhibit No. 2.

36. Subsequent to the execution of the said Thomas Lease, the rights and obligations of the Lessee in and to the Lease were assigned by Chesapeake and the Lessee's rights and obligations in the Lease are now held by XTO. The Property was placed in a drilling unit by order of the Arkansas Oil and Gas Commission, and XTO is the current operator of gas wells in the drilling unit including the Thomas Property.

37. Production has been and is currently being obtained by XTO from the gas wells on the drilling unit including the Thomas Property.

38. Among the terms and provisions of the Thomas Lease, Paragraph No. 3 of the main text of the Lease states, with regard to proceeds accruing to the Thomas Plaintiffs from such production, the following:

9

3.      Lessee shall pay or, if required by law, contribute to be paid to Lessor 1/5th of the net proceeds realized by Lessee for all gas (including all substances contained in such gas) produced from the leased premises and  sold by Lessee, less Lessor's proportionate share of taxes and all costs incurred by Lessee in delivering, processing, compressing or otherwise making such gas or other substances merchantable or enhancing the marketing thereof. If such gas is used by Lessee off the leased premises or used by the Lessee for the manufacture of casinghead gasoline or other products, Lessee shall pay Lessor 1/8th of the prevailing market value at the well for the gas so used.

39. As a result of negotiations regarding the royalty to be paid by Lessee to Lessor, Exhibit A to the Lease was prepared by Chesapeake to amend and modify the main text of the Lease and specifically modifies Paragraph No. 3 of the Lease. Relative to the determination of the amount of royalty to be paid to the Thomas Plaintiffs, Exhibit A to the Lease provides as follows:

The terms and provisions of the Oil and Gas Lease to which the Exhibit "A" is attached shall be amended as follows:
...

2.      It is agreed between the Lessor and Lessee that, notwithstanding any language herein to the contrary, all oil gas or other proceeds accruing to the Lessor under this lease or by state law shall be without deduction, directly or indirectly, for the cost of producing, gathering, storing, separating, treating, dehydrating, compressing, transporting, and marketing the oil, gas and other products produced hereunder to transform the product into marketable form; however any such costs which result in enhancing the value of the marketable oil, gas or other products to receive a better price may be deducted from Lessor's share of production so long as they are based on Lessee's actual cost of such enhancements.

40. Production has been and is currently being obtained from the above-mentioned wells on the Property by XTO.

41. After production was obtained from the gas wells in the drilling unit containing the Thomas Property, XTO or its predecessors in interest commenced payment of royalties to the Thomas Plaintiffs for their royalty share of the proceeds from the sale of gas from such wells. In the royalty payments made prior to January, 2016, XTO or its predecessors in interest did not deduct from the Thomas Plaintiffs' royalties any costs of production, gathering, storing, separating, treating, dehydration, compression, processing, transporting and marketing the gas.

10

42. However, commencing with royalty payments made in or about January, 2016, XTO commenced deducting from the royalties paid to Thomas Plaintiffs costs related to production, gathering, storing, separating, treating, dehydration, compression, processing, transporting and marketing the gas, contrary to the plain and express terms of the Thomas Lease and said Exhibit A thereto.

### C. The Moore Leases

43. The Plaintiffs, Harold Ray Moore and Doris A. Moore ("the Moore Plaintiffs"), are the owners of oil, gas and other mineral interests in real property located in Sections 27 and 28, Township 11 North, Range 11 West, Cleburne County, Arkansas, said real property hereinafter referred to as "the Moore Property."

### The Moore-Petrohawk Lease

44. On or before December 10, 2008, the Moore Plaintiffs were approached by representatives of Petrohawk Properties, LP, regarding Petrohawk's leasing of the Moore Property located in Section 28, Twp. 11 North, Range 11 West, for purposes of conducting exploration and drilling for and production of oil, gas and other hydrocarbons in, on and under that portion of the Moore Property.

45. Petrohawk prepared an Oil and Gas Lease covering the above described portion of the Moore Property dated December 10, 2008 ("the Moore-Petrohawk Lease"), including Exhibit A thereto, which Lease and Exhibit A were signed by the Moore Plaintiffs on or about said date. A copy of the Lease and Exhibit A are collectively attached to this Complaint as Exhibit No. 3.

11

46. Subsequent to the execution of the said Moore-Petrohawk Lease, the rights and obligations of the Lessee in and to the Lease were assigned by Petrohawk, and the Lessee's rights and obligations in the Lease are now held by XTO. The Property was placed in a drilling unit by order of the Arkansas Oil and Gas Commission, and XTO is the current operator of gas wells in the drilling unit including the Moore Property.

47. Production has been and is currently being obtained by XTO from the gas wells on the drilling unit including the Moore Property.

48. Among other terms and provisions of the Moore-Petrohawk Lease, Paragraph No. 2 of the main text of the Lease states, with regard to proceeds accruing to the Moore Plaintiffs from such production, the following:

> In consideration of the premises, Lessee covenants and agrees:
>
> ...
>
> 2.    Lessee shall pay Lessor one-eighth (1/8) of the proceeds derived from the sale of all gas (including subsances contained in such gas) produced, saved and sold by Lessee. Proceeds are defined as the actual amount received by the Lessee for the sale of said gas. In calculating the proceeds derived from the sale of gas produced, saved and sold by Lessee, Lessee shall be entitled to deduct all reasonable gatherings, transportation, treatment, compression, processing and marketing costs that are incurred by Lessee in connection with the sale of such gas.

49. However, as a result of negotiations regarding the royalty to be paid by Lessee to Lessor, Exhibit A to the Lease was prepared by Petrohawk to amend and modify the main text of the Lease and specifically modifies the above-quoted Paragraph No. 2 of the Lease. Relative to the determination of the amount of royalty to be paid to the Moore Plaintiffs, Exhibit A to the Moore-Petrohawk Lease provides as follows:

> Attached to and made a part of that certain Oil and Gas Lease dated December 10, 2008 , by and between Doris A. Moore and Ray Moore, Lessee, and Petrohawk Properties, LP, Lessee:
>
> ...

19.    Lessors' royalty under this lease shall be one-fifth (1/5), rather than the stated one-eighth (1/8). And wherever the fraction one-eighth (1/8) is shown in the attached lease it shall be replaced by one-fifth (1/5).

...

24.    Royalty shall be free of costs or deductions.

50. Production has been and is currently being obtained by XTO from wells on the Moore Property covered by the Moore-Petrohawk Lease.

51. After production was obtained from the gas wells in the drilling unit containing the Moore-Petrohawk Lease property, XTO or its predecessors in interest commenced payment of royalties to the Moore Plaintiffs for their one-fifth (1/5th) share of the proceeds from the sale of gas from such wells. In the royalty payments made prior to January, 2016, XTO or its predecessors in interest did not deduct from the Moore Plaintiffs' royalties any costs of production, gathering, storing, separating, treating, dehydration, compression, processing, transporting and marketing the gas.

52. However, commencing with the royalty payments made in or about January, 2016, XTO commenced deducting from the royalties paid to the Moore Plaintiffs costs related to production, gathering, storing, separating, treating, dehydration, compression, processing, transporting and marketing the gas, contrary to the plain and express terms of the Moore-Petrohawk Lease and said Exhibit A thereto.

### *The Moore-Chesapeake Lease*

53. On or before March 9, 2010, Plaintiffs Harold Ray Moore and Doris A. Moore were approached by representatives of Chesapeake Exploration LLC regarding Chesapeake's leasing of the portion of the Moore Property located in Section 27, Twp. 11 North, Range 11

13

West, Cleburne County, Arkansas, for purposes of conducting exploration and drilling for and production of oil, gas and other hydrocarbons in, on and under that portion of the Moore Property.

54. Chesapeake prepared an Oil and Gas Lease covering the above-described portions of the Moore Property dated March 9, 2010 ("the Moore/Chesapeake Lease"), including Exhibit A thereto, which Lease and Exhibit A were signed by Harold Ray Moore and Doris A. Moore on or about said date. A copy of the Lease and Exhibit A are collectively attached to this Complaint as Exhibit No. 4.

55. Subsequent to the execution of the said Lease, the rights and obligations of the Lessee in and to the Lease were assigned by Chesapeake and the Lessee's rights and obligations in the Lease are now held by XTO.

56. The Moore Properties located in said Section 27 were placed in a drilling unit by order of the Arkansas Oil and Gas Commission, and production has been and is currently being obtained from the above-mentioned wells on the Property by XTO.

57. Among other terms and provisions of the Moore/Chesapeake Lease, Paragraph No. 3 of the main text of the Lease states, with regard to proceeds accruing to the Moore Plaintiffs from such production, the following:

> 4.     Lessee shall pay or, if required by law, contribute to be paid to Lessor 1/5th of the net proceeds realized by Lessee for all gas (including all substances contained in such gas) produced from the leased premises and sold by Lessee, less Lessor's proportionate share of taxes and all costs incurred by Lessee in delivering, processing, compressing or otherwise making such gas or other substances merchantable or enhancing the marketing thereof. If so gas is used by Lessee off the leased premises or used by the Lessee for the manufacture of casinghead gasoline or other products, Lessee shall pay Lessor 1/5th of the prevailing market value at the well for the gas so used.

14

58. Exhibit A to the Lease was prepared by Chesapeake to amend and modify the main text of the Lease as a result of negotiations regarding the royalty to be paid by Lessee to Lessors, and modifies Paragraph No. 3 of the Lease. Exhibit A to the Lease provides as follows:

> The terms and provisions of the Oil and Gas Lease to which the Exhibit "A" is attached shall be amended as follows:
> ...
>
> 2.       It is agreed between the Lessor and Lessee that, notwithstanding any language herein to the contrary, all oil gas or other proceeds accruing to the Lessor under this lease or by state law shall be without deduction, directly or indirectly, for the cost of producing, gathering, storing, separating, treating, dehydrating, compressing, transporting, and marketing the oil, gas and other products produced hereunder to transform the product into marketable form; however any such costs which result in enhancing the value of the marketable oil, gas or other products to receive a better price may be deducted from Lessor's share of production so long as they are based on Lessee's actual cost of such enhancements.

59. After production was obtained from the gas wells in the drilling unit containing the Moore-Chesapeake Lease property, XTO or its predecessors in interest commenced payment of royalties to the plaintiffs for plaintiffs' one-fifth (1/5th) share of the proceeds from the sale of gas from such wells. In the royalty payments made prior to January, 2016, XTO or its predecessors in interest did not deduct from the plaintiffs' royalties any costs of production, gathering, storing, separating, treating, dehydration, compression, processing, transporting and marketing the gas.

60. However, commencing with the royalty payments made in or about January, 2016, XTO commenced deducting costs from the royalties paid to the Moore Plaintiffs related to production, gathering, storing, separating, treating, dehydration, compression, processing, transporting and marketing the gas, contrary to the plain and express terms of the Moore-Chesapeake Lease and said Exhibit A thereto.

15

### D. The Bittle Leases

61. The Plaintiffs, Johnny Bittle (aka Johnny W. Bittle) and Linda Bittle (aka Melinda L. Bittle, aka Linda Hunt Bittle) ("the Bittle Plaintiffs"), are the owners of oil, gas and other mineral interests in real property located in Sections 9, Township 11 North, Range 10 West, and Sections 18, 21 and 22 of Township 11 North, Range 11 West, Cleburne County, Arkansas, said real property hereinafter collectively referred to as "the Bittle Property."

### The Bittle Lease dated February 26, 2010

62. On or before February 26, 2010, the Bittle Plaintiffs were approached by representatives of Chesapeake Exploration LLC regarding Chesapeake's leasing of the portion of the Bittle Property located in Section 9, Twp. 11 North, Range 10 West, Cleburne County, Arkansas, for purposes of conducting exploration and drilling for and production of oil, gas and other hydrocarbons in, on and under that portion of the Bittle Property.

63. Chesapeake prepared an Oil and Gas Lease covering the above-described portions of the Bittle Property dated February 26, 2010 ("the Bittle 2/26/10 Lease"), including Exhibit A thereto, which Lease and Exhibit A were signed by the Bittle Plaintiffs on or about said date. A copy of the Lease and Exhibit A are collectively attached to this Complaint as Exhibit No. 5.

64. Subsequent to the execution of the said Lease, the rights and obligations of the Lessee in and to the Lease were assigned by Chesapeake and the Lessee's rights and obligations in the Bittle 2/26/10 Lease are now held by XTO.

16

65. The Bittle Properties located in said Section 9-11-10 were placed in a drilling unit by order of the Arkansas Oil and Gas Commission, and production has been and is currently being obtained from the above-mentioned wells in the drilling unit including the Bittle Property by XTO.

66. Among other terms and provisions of the Bittle 2/26/10 Lease, Paragraph No. 3 of the main text of the Lease states, with regard to proceeds accruing to the Bittle Plaintiffs from such production, the following:

> 4.      Lessee shall pay or, if required by law, contribute to be paid to Lessor 1/5th of the net proceeds realized by Lessee for all gas (including all substances contained in such gas) produced from the leased premises and sold by Lessee, less Lessor's proportionate share of taxes and all costs incurred by Lessee in delivering, processing, compressing or otherwise making such gas or other substances merchantable or enhancing the marketing thereof. If so gas is used by Lessee off the leased premises or used by the Lessee for the manufacture of casinghead gasoline or other products, Lessee shall pay Lessor 1/5th of the prevailing market value at the well for the gas so used.

67. Exhibit A to the Lease was prepared by Chesapeake to amend and modify the main text of the Lease as a result of negotiations regarding the royalty to be paid by Lessee to Lessors, and modifies Paragraph No. 3 of the Lease. Exhibit A to the Lease provides as follows:

> It is agreed between the Lessor and Lessee that, notwithstanding any language herein to the contrary, all oil gas or other proceeds accruing to the Lessor under this lease or by state law shall be without deduction, directly or indirectly, for the cost of producing, gathering, storing, separating, treating, dehydrating, compressing, transporting, and marketing the oil, gas and other products produced hereunder to transform the product into marketable form; however any such costs which result in enhancing the value of the marketable oil, gas or other products to receive a better price may be deducted from Lessor's share of production so long as they are based on Lessee's actual cost of such enhancements.

68. After production was obtained from the gas wells in the drilling unit that includes the property covered by the Bittle 2/26/10 Lease, XTO or its predecessors in interest commenced payment of royalties to the plaintiffs for plaintiffs' one-fifth (1/5th) share of the proceeds from the sale of gas from such wells. In the royalty payments made prior to January, 2016, XTO or its

17

predecessors in interest did not deduct from the plaintiffs' royalties any costs of production, gathering, storing, separating, treating, dehydration, compression, processing, transporting and marketing the gas.

69. However, commencing with the royalty payments made in or about January, 2016, XTO commenced deducting costs from the royalties paid to the Bittle Plaintiffs related to production, gathering, storing, separating, treating, dehydration, compression, processing, transporting and marketing the gas, contrary to the plain and express terms of the Bittle 2/26/10 Lease and said Exhibit A thereto.

### *The Bittle Lease dated May 27, 2010 (the "Bittle 5/27/10A Lease")*

70. On or before May 27, 2010, the Bittle Plaintiffs were approached by representatives of Chesapeake Exploration LLC regarding Chesapeake's leasing of the portion of the Bittle Property located in Section 21, Twp. 11 North, Range 11 West, Cleburne County, Arkansas, for purposes of conducting exploration and drilling for and production of oil, gas and other hydrocarbons in, on and under that portion of the Bittle Property.

71. Chesapeake prepared an Oil and Gas Lease covering the above-described portions of the Bittle Property dated May 27, 2010 ("the Bittle 5/27/10A Lease"), including Exhibits A and B thereto, which Lease and Exhibits A and B were signed by the Bittle Plaintiffs on or about said date. A copy of the Lease and Exhibits A and B are collectively attached to this Complaint as Exhibit No. 6.

72. Subsequent to the execution of the said Lease, the rights and obligations of the Lessee in and to the Lease were assigned by Chesapeake and the Lessee's rights and obligations in the Bittle 5/27/10A Lease are now held by XTO.

73. The Bittle Properties located in said Section 21-11-11 were placed in a drilling unit by order of the Arkansas Oil and Gas Commission, and production has been and is currently being obtained from the above-mentioned wells in the drilling unit including the Bittle Property by XTO.

74. Among other terms and provisions of the Bittle 5/27/10A Lease, Paragraph No. 3 of the main text of the Lease states, with regard to proceeds accruing to the Bittle Plaintiffs from such production, the following:

> 3.      Lessee shall pay or, if required by law, contribute to be paid to Lessor 1/5th of the net proceeds realized by Lessee for all gas (including all substances contained in such gas) produced from the leased premises and sold by Lessee, less Lessor's proportionate share of taxes and all costs incurred by Lessee in delivering, processing, compressing or otherwise making such gas or other substances merchantable or enhancing the marketing thereof. If so gas is used by Lessee off the leased premises or used by the Lessee for the manufacture of casinghead gasoline or other products, Lessee shall pay Lessor 1/5th of the prevailing market value at the well for the gas so used.

75. Exhibit B to the Lease was prepared by Chesapeake to amend and modify the main text of the Lease as a result of negotiations regarding the royalty to be paid by Lessee to Lessors, and modifies Paragraph No. 3 of the Lease. Exhibit B to the Lease provides as follows:

> It is agreed between the Lessor and Lessee that, notwithstanding any language herein to the contrary, all oil gas or other proceeds accruing to the Lessor under this lease or by state law shall be without deduction, directly or indirectly, for the cost of producing, gathering, storing, separating, treating, dehydrating, compressing, transporting, and marketing the oil, gas and other products produced hereunder to transform the product into marketable form; however any such costs which result in enhancing the value of the marketable oil, gas or other products to receive a better price may be deducted from Lessor's share of production so long as they are based on Lessee's actual cost of such enhancements.

76. After production was obtained from the gas wells in the drilling unit that includes the property covered by the Bittle 2/26/10A Lease, XTO or its predecessors in interest commenced payment of royalties to the plaintiffs for plaintiffs' one-fifth (1/5th) share of the proceeds from the sale of gas from such wells. In the royalty payments made prior to January, 2016, XTO or its

predecessors in interest did not deduct from the plaintiffs' royalties any costs of production, gathering, storing, separating, treating, dehydration, compression, processing, transporting and marketing the gas.

77. However, commencing with the royalty payments made in or about January, 2016, XTO commenced deducting costs from the royalties paid to the Bittle Plaintiffs related to production, gathering, storing, separating, treating, dehydration, compression, processing, transporting and marketing the gas, contrary to the plain and express terms of the Bittle 2/26/10A Lease and said Exhibit A thereto.

### *The Bittle Lease dated May 27, 2010 (the "Bittle 5/27/10B Lease")*

78. On the same date of May 27, 2010, the Bittle Plaintiffs were also approached by representatives of Chesapeake Exploration LLC regarding Chesapeake's leasing of the portion of the Bittle Property located in Section 18, Twp. 11 North, Range 11 West, Cleburne County, Arkansas, for purposes of conducting exploration and drilling for and production of oil, gas and other hydrocarbons in, on and under that portion of the Bittle Property.

79. Chesapeake prepared an Oil and Gas Lease covering the above-described portions of the Bittle Property dated May 27, 2010 ("the Bittle 5/27/10B Lease"), including Exhibit A thereto, which Lease and Exhibit A was signed by the Bittle Plaintiffs on or about said date. A copy of the Lease and Exhibit A are collectively attached to this Complaint as Exhibit No. 7.

80. Subsequent to the execution of the said Lease, the rights and obligations of the Lessee in and to the Lease were assigned by Chesapeake and the Lessee's rights and obligations in the Bittle 5/27/10B Lease are now held by XTO.

20

81. The Bittle Properties located in said Section 21-11-11 were placed in a drilling unit by order of the Arkansas Oil and Gas Commission, and production has been and is currently being obtained from the above-mentioned wells in the drilling unit including the Bittle Property by XTO.

82. Among other terms and provisions of the Bittle 5/27/10B Lease, Paragraph No. 3 of the main text of the Lease states, with regard to proceeds accruing to the Bittle Plaintiffs from such production, the following:

> 3.      Lessee shall pay or, if required by law, contribute to be paid to Lessor 1/5th of the net proceeds realized by Lessee for all gas (including all substances contained in such gas) produced from the leased premises and sold by Lessee, less Lessor's proportionate share of taxes and all costs incurred by Lessee in delivering, processing, compressing or otherwise making such gas or other substances merchantable or enhancing the marketing thereof. If so gas is used by Lessee off the leased premises or used by the Lessee for the manufacture of casinghead gasoline or other products, Lessee shall pay Lessor 1/5th of the prevailing market value at the well for the gas so used.

83. Exhibit B to the Lease was prepared by Chesapeake to amend and modify the main text of the Lease as a result of negotiations regarding the royalty to be paid by Lessee to Lessors, and modifies Paragraph No. 3 of the Lease. Exhibit B to the Lease provides as follows:

> It is agreed between the Lessor and Lessee that, notwithstanding any language herein to the contrary, all oil gas or other proceeds accruing to the Lessor under this lease or by state law shall be without deduction, directly or indirectly, for the cost of producing, gathering, storing, separating, treating, dehydrating, compressing, transporting, and marketing the oil, gas and other products produced hereunder to transform the product into marketable form; however any such costs which result in enhancing the value of the marketable oil, gas or other products to receive a better price may be deducted from Lessor's share of production so long as they are based on Lessee's actual cost of such enhancements.

84. After production was obtained from the gas wells in the drilling unit that includes the property covered by the Bittle 2/26/10B Lease, XTO or its predecessors in interest commenced payment of royalties to the plaintiffs for plaintiffs' one-fifth (1/5th) share of the proceeds from the sale of gas from such wells. In the royalty payments made prior to January, 2016, XTO or its

21

predecessors in interest did not deduct from the plaintiffs' royalties any costs of production, gathering, storing, separating, treating, dehydration, compression, processing, transporting and marketing the gas.

85. However, commencing with the royalty payments made in or about January, 2016, XTO commenced deducting costs from the royalties paid to the Bittle Plaintiffs related to production, gathering, storing, separating, treating, dehydration, compression, processing, transporting and marketing the gas, contrary to the plain and express terms of the Bittle 2/26/10B Lease and said Exhibit A thereto.

### The Bittle Lease dated May 27, 2010 (the "Bittle 5/27/10C Lease")

86. On the same date of May 27, 2010, the Bittle Plaintiffs were also approached by representatives of Chesapeake Exploration LLC regarding Chesapeake's leasing of the portion of the Bittle Property located in Section 22, Twp. 11 North, Range 11 West, Cleburne County, Arkansas, for purposes of conducting exploration and drilling for and production of oil, gas and other hydrocarbons in, on and under that portion of the Bittle Property.

87. Chesapeake prepared an Oil and Gas Lease covering the above-described portions of the Bittle Property dated May 27, 2010 ("the Bittle 5/27/10C Lease"), including Exhibit A thereto, which Lease and Exhibit A was signed by the Bittle Plaintiffs on or about said date. A copy of the Lease and Exhibit A are collectively attached to this Complaint as Exhibit No. 8.

88. Subsequent to the execution of the said Lease, the rights and obligations of the Lessee in and to the Lease were assigned by Chesapeake and the Lessee's rights and obligations in the Bittle 5/27/10C Lease are now held by XTO.

22

89. The Bittle Properties located in said Section 22-11-11 were placed in a drilling unit by order of the Arkansas Oil and Gas Commission, and production has been and is currently being obtained from the above-mentioned wells in the drilling unit including the Bittle Property by XTO.

90. Among other terms and provisions of the Bittle 5/27/10C Lease, Paragraph No. 3 of the main text of the Lease states, with regard to proceeds accruing to the Bittle Plaintiffs from such production, the following:

> 3.      Lessee shall pay or, if required by law, contribute to be paid to Lessor $1/5^{th}$ of the net proceeds realized by Lessee for all gas (including all substances contained in such gas) produced from the leased premises and sold by Lessee, less Lessor's proportionate share of taxes and all costs incurred by Lessee in delivering, processing, compressing or otherwise making such gas or other substances merchantable or enhancing the marketing thereof. If so gas is used by Lessee off the leased premises or used by the Lessee for the manufacture of casinghead gasoline or other products, Lessee shall pay Lessor $1/5^{th}$ of the prevailing market value at the well for the gas so used.

91. Exhibit B to the Lease was prepared by Chesapeake to amend and modify the main text of the Lease as a result of negotiations regarding the royalty to be paid by Lessee to Lessors, and modifies Paragraph No. 3 of the Lease. Exhibit B to the Lease provides as follows:

> It is agreed between the Lessor and Lessee that, notwithstanding any language herein to the contrary, all oil gas or other proceeds accruing to the Lessor under this lease or by state law shall be without deduction, directly or indirectly, for the cost of producing, gathering, storing, separating, treating, dehydrating, compressing, transporting, and marketing the oil, gas and other products produced hereunder to transform the product into marketable form; however any such costs which result in enhancing the value of the marketable oil, gas or other products to receive a better price may be deducted from Lessor's share of production so long as they are based on Lessee's actual cost of such enhancements.

92. After production was obtained from the gas wells in the drilling unit that includes the property covered by the Bittle 2/26/10C Lease, XTO or its predecessors in interest commenced payment of royalties to the plaintiffs for plaintiffs' one-fifth ($1/5^{th}$) share of the proceeds from the sale of gas from such wells. In the royalty payments made prior to January, 2016, XTO or its

predecessors in interest did not deduct from the plaintiffs' royalties any costs of production, gathering, storing, separating, treating, dehydration, compression, processing, transporting and marketing the gas.

93. However, commencing with the royalty payments made in or about January, 2016, XTO commenced deducting costs from the royalties paid to the Bittle Plaintiffs related to production, gathering, storing, separating, treating, dehydration, compression, processing, transporting and marketing the gas, contrary to the plain and express terms of the Bittle 2/26/10C Lease and said Exhibit A thereto.

### E. The Hunt Leases

94. The Plaintiffs, Ernest C. Hunt and Sherry L. Hunt, husband and wife ("the Hunt Plaintiffs"), are the owners of oil, gas and other mineral interests in real property located in Section 33, Township 12 North, Range 11 West, and Sections 23, 26 and 27 of Township 11 North, Range 11 West, Cleburne County, Arkansas, said real property hereinafter collectively referred to as "the Hunt Property."

### The First Hunt Lease Dated July 1, 2005 ("Hunt Lease No. 1)

95. On or before July 1, 2005, the Hunt Plaintiffs were approached by representatives of Chesapeake Exploration Limited Partnership, an Oklahoma limited partnership, regarding Chesapeake's leasing of the portion of the Hunt Property located in Section 33, Twp. 12 North, Range 11 West, Cleburne County, Arkansas, for purposes of conducting exploration and drilling for and production of oil, gas and other hydrocarbons in, on and under that portion of the Hunt Property.

96. Chesapeake prepared an Oil and Gas Lease covering the above-described portions of the Hunt Property dated July 1, 2005 ("the Hunt 7/01/05A Lease"), which Lease was signed by the Hunt Plaintiffs on or about said date. A copy of the Lease is attached to this Complaint as Exhibit No. 9.

97. Among other terms and provisions of the Hunt 7/01/05A Lease, Paragraph No. 3 of the main text of the Lease states, with regard to proceeds accruing to the Hunt Plaintiffs from such production, the following:

> 3.      Lessee shall pay or, if required by law, contribute to be paid to Lessor 1/8th of the net proceeds realized by Lessee for all gas (including all substances contained in such gas) produced from the leased premises and sold by Lessee, less Lessor's proportionate share of taxes and all costs incurred by Lessee in delivering, processing, compressing or otherwise making such gas or other substances merchantable or enhancing the marketing thereof. If so gas is used by Lessee off the leased premises or used by the Lessee for the manufacture of casinghead gasoline or other products, Lessee shall pay Lessor 1/8th of the prevailing market value at the well for the gas so used.

98. On November 13, 2009, Chesapeake and the Hunt Plaintiffs entered into an Agreement to Extend Oil and Gas Lease which Agreement, *inter alia*, extended the primary term of the original lease from five to ten years; increased the percentages of royalties payable to the Hunt Plaintiffs from 1/8th to 1/5th; and added the following paragraph relative to the deduction of costs from the royalty payments:

> It is agreed between the Lessor and Lessee that, notwithstanding any language herein to the contrary, all oil gas or other proceeds accruing to the Lessor under this lease or by state law shall be without deduction, directly or indirectly, for the cost of producing, gathering, storing, separating, treating, dehydrating, compressing, transporting, and marketing the oil, gas and other products produced hereunder to transform the product into marketable form; however any such costs which result in enhancing the value of the marketable oil, gas or other products to receive a better price may be deducted from Lessor's share of production so long as they are based on Lessee's actual cost of such enhancements.

> The Agreement to Extend Oil and Gas Lease is attached to this Complaint as Exhibit No. 10.

99. Subsequent to the execution of the said Lease, the rights and obligations of the Lessee in and to the Hunt 7/01/05A Lease, as amended by the Agreement dated November 13, 2009, were assigned by Chesapeake and the Lessee's rights and obligations in the Lease are now held by XTO.

100.    The Hunt Properties located in said Section 33, Twp. 12 North, Range 11 West were placed in a drilling unit by order of the Arkansas Oil and Gas Commission, and production has been and is currently being obtained from wells in the drilling unit including the Hunt Property by XTO.

101.    After production was obtained from the gas wells in the drilling unit that includes the property covered by the Hunt 7/01/05A Lease as amended, XTO or its predecessors in interest commenced payment of royalties to the Hunt Plaintiffs for their one-fifth (1/5th) share of the proceeds from the sale of gas from such wells. In the royalty payments made prior to January, 2016, XTO or its predecessors in interest did not deduct from the Hunt Plaintiffs' royalties any costs of production, gathering, storing, separating, treating, dehydration, compression, processing, transporting and marketing the gas.

102.    However, commencing with the royalty payments made in or about January, 2017, XTO commenced deducting costs from the royalties paid to the Hunt Plaintiffs related to production, gathering, storing, separating, treating, dehydration, compression, processing, transporting and marketing the gas, contrary to the plain and express terms of the Hunt 7/01/05A Lease, as amended.

### *The Second Hunt Lease Dated July 1, 2006 ("Hunt Lease No. 2)*

103.     On or before July 1, 2005, the Hunt Plaintiffs were approached by representatives

of Chesapeake Exploration Limited Partnership, an Oklahoma limited partnership, regarding

Chesapeake's leasing of the portion of the Hunt Property located in Section 23, Twp. 11 North,

Range 11 West, Cleburne County, Arkansas, for purposes of conducting exploration and drilling

for and production of oil, gas and other hydrocarbons in, on and under that portion of the Hunt

Property.

104.     Chesapeake prepared an Oil and Gas Lease covering the above-described portions

of the Hunt Property dated July 1, 2005 ("the Hunt 7/01/05B Lease"), which Lease was signed

by the Hunt Plaintiffs on or about said date. A copy of the Lease is attached to this Complaint as

Exhibit No. 11.

105.     Among other terms and provisions of the Hunt 7/01/05B Lease, Paragraph No. 3

of the main text of the Lease states, with regard to proceeds accruing to the Hunt Plaintiffs from

such production, the following:

> 3.     Lessee shall pay or, if required by law, contribute to be paid to Lessor $1/8^{th}$ of the
> net proceeds realized by Lessee for all gas (including all substances contained in such
> gas) produced from the leased premises and sold by Lessee, less Lessor's proportionate
> share of taxes and all costs incurred by Lessee in delivering, processing, compressing or
> otherwise making such gas or other substances merchantable or enhancing the marketing
> thereof. If so gas is used by Lessee off the leased premises or used by the Lessee for the
> manufacture of casinghead gasoline or other products, Lessee shall pay Lessor $1/8^{th}$ of
> the prevailing market value at the well for the gas so used.

106.     On November 13, 2009, Chesapeake and the Hunt Plaintiffs entered into an

Agreement to Extend Oil and Gas Lease which Agreement, inter alia, extended the primary term

of the original lease from five to ten years; increased the percentages of royalties payable to the

Hunt Plaintiffs from $1/8^{th}$ to $1/5^{th}$; and added the following paragraph relative to the deduction of

costs from the royalty payments:

27

It is agreed between the Lessor and Lessee that, notwithstanding any language herein to the contrary, all oil gas or other proceeds accruing to the Lessor under this lease or by state law shall be without deduction, directly or indirectly, for the cost of producing, gathering, storing, separating, treating, dehydrating, compressing, transporting, and marketing the oil, gas and other products produced hereunder to transform the product into marketable form; however any such costs which result in enhancing the value of the marketable oil, gas or other products to receive a better price may be deducted from Lessor's share of production so long as they are based on Lessee's actual cost of such enhancements.

The Agreement to Extend Oil and Gas Lease is attached to this Complaint as Exhibit No. 12.

107.     Subsequent to the execution of the said Lease, the rights and obligations of the Lessee in and to the Hunt 7/01/05B Lease, as amended by the Agreement dated November 13, 2009, were assigned by Chesapeake and the Lessee's rights and obligations in the Lease are now held by XTO.

108.     The Hunt Properties located in said Section 23, Twp. 11 North, Range 11 West were placed in a drilling unit by order of the Arkansas Oil and Gas Commission, and production has been and is currently being obtained from wells in the drilling unit including the Hunt Property by XTO.

109.     After production was obtained from the gas wells in the drilling unit that includes the property covered by the Hunt 7/01/05B Lease as amended, XTO or its predecessors in interest commenced payment of royalties to the Hunt Plaintiffs for their one-fifth (1/5th) share of the proceeds from the sale of gas from such wells. In the royalty payments made prior to January, 2016, XTO or its predecessors in interest did not deduct from the Hunt Plaintiffs' royalties any costs of production, gathering, storing, separating, treating, dehydration, compression, processing, transporting and marketing the gas.

28

110.    However, commencing with the royalty payments made in or about January, 2017, XTO commenced deducting costs from the royalties paid to the Hunt Plaintiffs related to production, gathering, storing, separating, treating, dehydration, compression, processing, transporting and marketing the gas, contrary to the plain and express terms of the Hunt 7/01/05B Lease, as amended.

### *The Third Hunt Lease Dated July 1, 2006 ("Hunt Lease No. 3)*

111.    On or before July 1, 2005, the Hunt Plaintiffs were approached by representatives of Chesapeake Exploration Limited Partnership, an Oklahoma limited partnership, regarding Chesapeake's leasing of the portion of the Hunt Property located in Section 26, Twp. 11 North, Range 11 West, Cleburne County, Arkansas, for purposes of conducting exploration and drilling for and production of oil, gas and other hydrocarbons in, on and under that portion of the Hunt Property.

112.    Chesapeake prepared an Oil and Gas Lease covering the above-described portions of the Hunt Property dated July 1, 2005 ("the Hunt 7/01/05C Lease"), which Lease was signed by the Hunt Plaintiffs on or about said date. A copy of the Lease is attached to this Complaint as Exhibit No. 13.

113.    Among other terms and provisions of the Hunt 7/01/05C Lease, Paragraph No. 3 of the main text of the Lease states, with regard to proceeds accruing to the Hunt Plaintiffs from such production, the following:

> 3.    Lessee shall pay or, if required by law, contribute to be paid to Lessor 1/8th of the net proceeds realized by Lessee for all gas (including all substances contained in such gas) produced from the leased premises and sold by Lessee, less Lessor's proportionate share of taxes and all costs incurred by Lessee in delivering, processing, compressing or otherwise making such gas or other substances merchantable or enhancing the marketing thereof. If so gas is used by Lessee off the leased premises or used by the Lessee for the

manufacture of casinghead gasoline or other products, Lessee shall pay Lessor 1/8th of
the prevailing market value at the well for the gas so used.

114.     On November 13, 2009, Chesapeake and the Hunt Plaintiffs entered into an

Agreement to Extend Oil and Gas Lease which Agreement, *inter alia*, extended the primary term

of the original lease from five to ten years; increased the percentages of royalties payable to the

Hunt Plaintiffs from 1/8th to 1/5th; and added the following paragraph relative to the deduction of

costs from the royalty payments:

> It is agreed between the Lessor and Lessee that, notwithstanding any language herein to
> the contrary, all oil gas or other proceeds accruing to the Lessor under this lease or by
> state law shall be without deduction, directly or indirectly, for the cost of producing,
> gathering, storing, separating, treating, dehydrating, compressing, transporting, and
> marketing the oil, gas and other products produced hereunder to transform the product
> into marketable form; however any such costs which result in enhancing the value of the
> marketable oil, gas or other products to receive a better price may be deducted from
> Lessor's share of production so long as they are based on Lessee's actual cost of such
> enhancements.

The Agreement to Extend Oil and Gas Lease is attached to this Complaint as Exhibit No.

14.

115.     Subsequent to the execution of the said Lease, the rights and obligations of the

Lessee in and to the Hunt 7/01/05C Lease, as amended by the Agreement dated November 13,

2009, were assigned by Chesapeake and the Lessee's rights and obligations in the Lease are now

held by XTO.

116.     The Hunt Properties located in said Section 26, Twp. 11 North, Range 11 West

were placed in a drilling unit by order of the Arkansas Oil and Gas Commission, and production

has been and is currently being obtained from wells in the drilling unit including the Hunt

Property by XTO.

30

117.    After production was obtained from the gas wells in the drilling unit that includes the property covered by the Hunt 7/01/05C Lease as amended, XTO or its predecessors in interest commenced payment of royalties to the Hunt Plaintiffs for their one-fifth (1/5th) share of the proceeds from the sale of gas from such wells. In the royalty payments made prior to January, 2016, XTO or its predecessors in interest did not deduct from the Hunt Plaintiffs' royalties any costs of production, gathering, storing, separating, treating, dehydration, compression, processing, transporting and marketing the gas.

118.    However, commencing with the royalty payments made in or about January, 2017, XTO commenced deducting costs from the royalties paid to the Hunt Plaintiffs related to production, gathering, storing, separating, treating, dehydration, compression, processing, transporting and marketing the gas, contrary to the plain and express terms of the Hunt 7/01/05C Lease, as amended.

### *The Fourth Hunt Lease Dated July 1, 2006 ("Hunt Lease No. 4)*

119.    On or before July 1, 2005, the Hunt Plaintiffs were approached by representatives of Chesapeake Exploration Limited Partnership, an Oklahoma limited partnership, regarding Chesapeake's leasing of the portion of the Hunt Property located in Section 27, Twp. 11 North, Range 11 West, Cleburne County, Arkansas, for purposes of conducting exploration and drilling for and production of oil, gas and other hydrocarbons in, on and under that portion of the Hunt Property.

31

120.     Chesapeake prepared an Oil and Gas Lease covering the above-described portions of the Hunt Property dated July 1, 2005 ("the Hunt 7/01/05D Lease"), which Lease was signed by the Hunt Plaintiffs on or about said date. A copy of the Lease is attached to this Complaint as Exhibit No. 15.

121.     Among other terms and provisions of the Hunt 7/01/05D Lease, Paragraph No. 3 of the main text of the Lease states, with regard to proceeds accruing to the Hunt Plaintiffs from such production, the following:

> 3.     Lessee shall pay or, if required by law, contribute to be paid to Lessor $1/8^{th}$ of the net proceeds realized by Lessee for all gas (including all substances contained in such gas) produced from the leased premises and sold by Lessee, less Lessor's proportionate share of taxes and all costs incurred by Lessee in delivering, processing, compressing or otherwise making such gas or other substances merchantable or enhancing the marketing thereof. If so gas is used by Lessee off the leased premises or used by the Lessee for the manufacture of casinghead gasoline or other products, Lessee shall pay Lessor $1/8^{th}$ of the prevailing market value at the well for the gas so used.

122.     On November 13, 2009, Chesapeake and the Hunt Plaintiffs entered into an Agreement to Extend Oil and Gas Lease which Agreement, inter alia, extended the primary term of the original lease from five to ten years; increased the percentages of royalties payable to the Hunt Plaintiffs from $1/8^{th}$ to $1/5^{th}$; and added the following paragraph relative to the deduction of costs from the royalty payments:

> It is agreed between the Lessor and Lessee that, notwithstanding any language herein to the contrary, all oil gas or other proceeds accruing to the Lessor under this lease or by state law shall be without deduction, directly or indirectly, for the cost of producing, gathering, storing, separating, treating, dehydrating, compressing, transporting, and marketing the oil, gas and other products produced hereunder to transform the product into marketable form; however any such costs which result in enhancing the value of the marketable oil, gas or other products to receive a better price may be deducted from Lessor's share of production so long as they are based on Lessee's actual cost of such enhancements.

The Agreement to Extend Oil and Gas Lease is attached to this Complaint as Exhibit No. 16.

32

123.     Subsequent to the execution of the said Lease, the rights and obligations of the

Lessee in and to the Hunt 7/01/05D Lease, as amended by the Agreement dated November 13,

2009, were assigned by Chesapeake and the Lessee's rights and obligations in the Lease are now

held by XTO.

124.     The Hunt Properties located in said Section 27, Twp. 11 North, Range 11 West

were placed in a drilling unit by order of the Arkansas Oil and Gas Commission, and production

has been and is currently being obtained from wells in the drilling unit including the Hunt

Property by XTO.

125.     After production was obtained from the gas wells in the drilling unit that includes

the property covered by the Hunt 7/01/05D Lease as amended, XTO or its predecessors in

interest commenced payment of royalties to the Hunt Plaintiffs for their one-fifth (1/5th) share of

the proceeds from the sale of gas from such wells. In the royalty payments made prior to

January, 2016, XTO or its predecessors in interest did not deduct from the Hunt Plaintiffs'

royalties any costs of production, gathering, storing, separating, treating, dehydration,

compression, processing, transporting and marketing the gas.

126.     However, commencing with the royalty payments made in or about January,

2017, XTO commenced deducting costs from the royalties paid to the Hunt Plaintiffs related to

production, gathering, storing, separating, treating, dehydration, compression, processing,

transporting and marketing the gas, contrary to the plain and express terms of the Hunt 7/01/05C

Lease, as amended.

*F. The Nelson Leases*

127.    The Plaintiff, William Dellain Nelson ("the Nelson Plaintiffs"), is the owner of oil, gas and other mineral interests in real property located in Section 26, Township 11 North, Range 12 West, and Section 4, Township 9 North, Range 11 West, Cleburne County, Arkansas, said real property hereinafter referred to as "the Nelson Property."

128.    Juanita Allen Nelson died on January 22, 2018.  The Nelson Properties are now owned solely by the Plaintiff, William Dellain Nelson.

### *The First Nelson Lease dated July 18, 2011 ("Nelson Lease No. 1")*

129.    On or before January 18, 2011, William Dellain Nelson and his wife, Juanita Allen Nelson, were approached by representatives of XTO Energy Inc. (XTO) regarding XTO's leasing of the portion of the Nelson Property located in Section 26, Twp. 11 North, Range 12 West, Cleburne County, Arkansas, for purposes of conducting exploration and drilling for and production of oil, gas and other hydrocarbons in, on and under that portion of the Nelson Property.

130.    XTO prepared an Oil and Gas Lease covering the above-described portions of the Nelson Property dated July 18, 2011 ("the Nelson Lease No. 1"), which Lease and Exhibit A was signed by the Nelson Plaintiffs on or about said date. A copy of the Lease is attached to this Complaint as Exhibit No. 17.

131.    The Nelson Properties located in said Section 26, Twp. 11 North, Range 12 West were placed in a drilling unit by order of the Arkansas Oil and Gas Commission, and production has been and is currently being obtained from wells in the drilling unit including the Nelson Property by XTO.

34

132.     Among other terms and provisions of the Nelson Lease No. 1, Paragraph No. 3

states, with regard to proceeds accruing to the Nelson Plaintiffs from such production, the

following:

> 3.     Lessee shall pay to Lessor a one-fifth (1/5th) gross payment of the royalties for gas produced from the leased premises and sold by Lessee or the manufacture of casinghead gasoline or other products, less Lessor's proportionate share of taxes. Lessor's one-fifth (1/5th) gross royalty shall not bear either directly or indirectly any part of the cost or expenses of production, separation, gathering, compression, dehydration, transportation, trucking, processing, blending, treatment, storage of the gas to make the gas marketable. Any post-production costs to enhance the value of the gas such as dehydration, blending, gathering, compression and transportation costs necessary to improve the already marketable gas shall be determined and shared in accordance with the provisions and guidelines set forth in **Mittelstaedt v. Santa Fe Minerals, Inc**, 954 P.2d 1203 **(Okla.1998).** (Bold and underlining in original)

133.     After production was obtained from the gas wells in the drilling unit that includes

the property covered by the Nelson Lease No. 1, XTO commenced payment of royalties to the

Nelson Plaintiffs for their one-fifth (1/5th) share of the proceeds from the sale of gas from such

wells. In the royalty payments made prior to January, 2016, XTO did not deduct from the Nelson

Plaintiffs' royalties any costs of production, gathering, storing, separating, treating, dehydration,

compression, processing, transporting and marketing the gas.

134.     However, commencing with the royalty payments made in or about January,

2017, XTO commenced deducting costs from the royalties paid to the Nelson Plaintiffs related to

production, gathering, storing, separating, treating, dehydration, compression, processing,

transporting and marketing the gas, contrary to the plain and express terms of the Nelson Lease

No.1.

*The Second Nelson Lease dated July 18, 2011 ("Nelson Lease No. 2)*

135.     On or before January 18, 2011, the Nelson Plaintiffs were approached by representatives of XTO Energy Inc. (XTO) regarding XTO's leasing of the portion of the Nelson Property located in Section 4, Twp. 9 North, Range 11 West, Cleburne County, Arkansas, for purposes of conducting exploration and drilling for and production of oil, gas and other hydrocarbons in, on and under that portion of the Nelson Property.

136.     XTO prepared an Oil and Gas Lease covering the above-described portions of the Nelson Property dated July 18, 2011 ("the Nelson Lease No. 2"), which Lease and Exhibit A was signed by the Nelson Plaintiffs on or about said date. A copy of the Lease is attached to this Complaint as Exhibit No. 18.

137.     The Nelson Properties located in said Section 4, Twp. 9 North, Range 11 West were placed in a drilling unit by order of the Arkansas Oil and Gas Commission, and production has been and is currently being obtained from the above-mentioned wells in the drilling unit including the Nelson Property by XTO.

138.     Among other terms and provisions of the Nelson Lease No. 2, Paragraph No. 3 states, with regard to proceeds accruing to the Nelson Plaintiffs from such production, the following:

> 3.     Lessee shall pay to Lessor a one-fifth ($1/5^{th}$) gross payment of the royalties for gas produced from the leased premises and sold by Lessee or the manufacture of casinghead gasoline or other products, less Lessor's proportionate share of taxes. Lessor's one-fifth ($1/5^{th}$) gross royalty shall not bear either directly or indirectly any part of the cost or expenses of production, separation, gathering, compression, dehydration, transportation, trucking, processing, blending, treatment, storage of the gas to make the gas marketable. Any post-production costs to enhance the value of the gas such as dehydration, blending, gathering, compression and transportation costs necessary to improve the already marketable gas shall be determined and shared in accordance with the provisions and guidelines set forth in **Mittelstaedt v. Santa Fe Minerals, Inc**, 954 P.2d 1203 **(Okla.1998).** (Bold and underlining in original)

36

139.    After production was obtained from the gas wells in the drilling unit that includes the property covered by the Nelson Lease No. 2, XTO commenced payment of royalties to the Nelson Plaintiffs for their one-fifth (1/5th) share of the proceeds from the sale of gas from such wells. In the royalty payments made prior to January, 2016, XTO did not deduct from the Nelson Plaintiffs' royalties any costs of production, gathering, storing, separating, treating, dehydration, compression, processing, transporting and marketing the gas.

140.    However, commencing with the royalty payments made in or about January, 2017, XTO commenced deducting costs from the royalties paid to the Nelson Plaintiffs related to production, gathering, storing, separating, treating, dehydration, compression, processing, transporting and marketing the gas, contrary to the plain and express terms of the Nelson Lease No.1.

### G. The Murphree Leases

142.    The Plaintiffs, Henry Keith Murphree and Evelyn Murphree, husband and wife ("the Murphree Plaintiffs"), are the owners of oil, gas and other mineral interests in real property located in Section18, Township 11 North, Range 10 West, and Section 27 of Township 11 North, Range 11 West, Cleburne County, Arkansas, said real property hereinafter collectively referred to as "the Murphree Property."

### The First Murphree Lease Dated July 1, 2005 ("Murphree Lease No. 1)

143.    On or before July 1, 2005, the Murphree Plaintiffs were approached by representatives of Chesapeake Exploration Limited Partnership, an Oklahoma limited partnership, regarding Chesapeake's leasing of the portion of the Murphree Property located in Section 18, Twp. 11 North, Range 10 West, Cleburne County, Arkansas, for purposes of

37

conducting exploration and drilling for and production of oil, gas and other hydrocarbons in, on and under that portion of the Murphree Property.

144.    Chesapeake prepared an Oil and Gas Lease covering the above-described portions of the Murphree Property dated July 1, 2005 ("the Murphree 7/01/05A Lease"), which Lease was signed by the Murphree Plaintiffs on or about said date. A copy of the Lease is attached to this Complaint as Exhibit No. 19.

145.    Among other terms and provisions of the Murphree 7/01/05A Lease, Paragraph No. 3 of the main text of the Lease states, with regard to proceeds accruing to the Murphree Plaintiffs from such production, the following:

> 3.    Lessee shall pay or, if required by law, contribute to be paid to Lessor $1/8^{th}$ of the net proceeds realized by Lessee for all gas (including all substances contained in such gas) produced from the leased premises and sold by Lessee, less Lessor's proportionate share of taxes and all costs incurred by Lessee in delivering, processing, compressing or otherwise making such gas or other substances merchantable or enhancing the marketing thereof. If so gas is used by Lessee off the leased premises or used by the Lessee for the manufacture of casinghead gasoline or other products, Lessee shall pay Lessor $1/8^{th}$ of the prevailing market value at the well for the gas so used.

146.    On November 24, 2009, Chesapeake and the Murphree Plaintiffs entered into an Agreement to Extend Oil and Gas Lease which Agreement, *inter alia*, extended the primary term of the original lease from five to ten years; increased the percentages of royalties payable to the Murphree Plaintiffs from $1/8^{th}$ to $1/5^{th}$; and added the following paragraph relative to the deduction of costs from the royalty payments:

> It is agreed between the Lessor and Lessee that, notwithstanding any language herein to the contrary, all oil gas or other proceeds accruing to the Lessor under this lease or by state law shall be without deduction, directly or indirectly, for the cost of producing, gathering, storing, separating, treating, dehydrating, compressing, transporting, and marketing the oil, gas and other products produced hereunder to transform the product into marketable form; however any such costs which result in enhancing the value of the marketable oil, gas or other products to receive a better price may be deducted from Lessor's share of production so long as they are based on Lessee's actual cost of such enhancements.

The Agreement to Extend Oil and Gas Lease is attached to this Complaint as Exhibit No. 20.

147.     Subsequent to the execution of the said Lease, the rights and obligations of the Lessee in and to the Murphree 7/01/05A Lease, as amended by the Agreement dated November 13, 2009, were assigned by Chesapeake and the Lessee's rights and obligations in the Lease are now held by XTO.

148.     The Murphree Properties located in said Section 18, Twp. 11 North, Range 10 West were placed in a drilling unit by order of the Arkansas Oil and Gas Commission, and production has been and is currently being obtained from wells in the drilling unit including the Murphree Property by XTO.

149.     After production was obtained from the gas wells in the drilling unit that includes the property covered by the Murphree 7/01/05A Lease as amended, XTO or its predecessors in interest commenced payment of royalties to the Murphree Plaintiffs for their one-fifth (1/5th) share of the proceeds from the sale of gas from such wells. In the royalty payments made prior to January, 2016, XTO or its predecessors in interest did not deduct from the Murphree Plaintiffs' royalties any costs of production, gathering, storing, separating, treating, dehydration, compression, processing, transporting and marketing the gas.

150.     However, commencing with the royalty payments made in or about January, 2017, XTO commenced deducting costs from the royalties paid to the Murphree Plaintiffs related to production, gathering, storing, separating, treating, dehydration, compression, processing, transporting and marketing the gas, contrary to the plain and express terms of the Murphree 7/01/05A Lease, as amended.

*The Murphree Lease dated November 24, 2009 ("Murphree 11/24/09 Lease)*

151.    On the same date of November 24, 2009, the Murphree Plaintiffs were also approached by representatives of Chesapeake Exploration LLC regarding Chesapeake's leasing of the portion of the Murphree Property located in Section 27, Twp. 11 North, Range 11 West, Cleburne County, Arkansas, for purposes of conducting exploration and drilling for and production of oil, gas and other hydrocarbons in, on and under that portion of the Murphree Property.

152.    Chesapeake prepared an Oil and Gas Lease covering the above-described portions of the Murphree Property dated November 24, 2009 ("the Murphree 11/24/09B Lease"), including Exhibit A thereto, which Lease and Exhibit A were signed by the Murphree Plaintiffs on or about said date. A copy of the Lease and Exhibit A are collectively attached to this Complaint as Exhibit No. 21.

153.    Subsequent to the execution of the said Lease, the rights and obligations of the Lessee in and to the Lease were assigned by Chesapeake and the Lessee's rights and obligations in the Murphree 11/24/09B Lease are now held by XTO.

154.    The Murphree Properties located in said Section 27-11-11 were placed in a drilling unit by order of the Arkansas Oil and Gas Commission, and production has been and is currently being obtained from wells in the drilling unit including the Murphree Property by XTO.

40

155.    Among other terms and provisions of the Lease, Paragraph No. 3 of

the main text of the Murphree 11/24/09B Lease states, with regard to proceeds accruing to the

Murphree Plaintiffs from such production, the following:

> 3.    Lessee shall pay or, if required by law, contribute to be paid to Lessor 1/5th of the net proceeds realized by Lessee for all gas (including all substances contained in such gas) produced from the leased premises and sold by Lessee, less Lessor's proportionate share of taxes and all costs incurred by Lessee in delivering, processing, compressing or otherwise making such gas or other substances merchantable or enhancing the marketing thereof. If so gas is used by Lessee off the leased premises or used by the Lessee for the manufacture of casinghead gasoline or other products, Lessee shall pay Lessor 1/5th of the prevailing market value at the well for the gas so used.

156.    Exhibit A to the Lease was prepared by Chesapeake to amend and modify the

main text of the Lease as a result of negotiations regarding the royalty to be paid by Lessee to

Lessors, and modifies Paragraph No. 3 of the Lease. Exhibit A to the Lease provides as follows:

> It is agreed between the Lessor and Lessee that, notwithstanding any language herein to the contrary, all oil gas or other proceeds accruing to the Lessor under this lease or by state law shall be without deduction, directly or indirectly, for the cost of producing, gathering, storing, separating, treating, dehydrating, compressing, transporting, and marketing the oil, gas and other products produced hereunder to transform the product into marketable form; however any such costs which result in enhancing the value of the marketable oil, gas or other products to receive a better price may be deducted from Lessor's share of production so long as they are based on Lessee's actual cost of such enhancements.

157.    After production was obtained from the gas wells in the drilling unit that includes

the property covered by the Murphree 11/24/09B Lease, XTO or its predecessors in interest

commenced payment of royalties to the plaintiffs for plaintiffs' one-fifth (1/5th) share of the

proceeds from the sale of gas from such wells. In the royalty payments made prior to January,

2016, XTO or its predecessors in interest did not deduct from the plaintiffs' royalties any costs of

production, gathering, storing, separating, treating, dehydration, compression, processing,

transporting and marketing the gas.

41

158.     However, commencing with the royalty payments made in or about January, 2017, XTO commenced deducting costs from the royalties paid to the Murphree Plaintiffs related to production, gathering, storing, separating, treating, dehydration, compression, processing, transporting and marketing the gas, contrary to the plain and express terms of the Murphree 2/26/10B Lease and said Exhibit A.

### Facts Applicable to All Plaintiffs

159.     By letter of November 13, 2018, counsel for Plaintiffs named above informed the Defendant, XTO, of the facts set forth above and the effective language of the Leases, as amended, as required by Arkansas Code Ann. §15-74-603, and made demand upon XTO for payment of all amounts withheld from the respective Plaintiffs' royalties as expenses of production, gathering, storing, separating, treating, dehydration compression, processing, transporting and marketing the gas produced, in violation of the express terms and conditions of said Leases, as amended. A copy of said letter dated November 7, 2018 is attached hereto as Exhibit No. 22.

160.     Plaintiffs' counsel also stated in that letter that, by withholding payment of gross royalties to Lessors (*i.e.*, without deduction of any costs), XTO has violated the requirements of Ark. Code Ann. §§15-74-601 to -604, and that Lessors gave notice to XTO as a first purchaser or as the owner of the right to produce under the aforementioned Oil and Gas Leases of Lessors' intent to file a judicial action against you as a result of the abovementioned violations and breach of the Oil and Gas Lease.

161.    Notwithstanding such notice, XTO has refused to pay or agree to pay the Plaintiffs the amounts heretofore withheld from the Plaintiffs' royalty payments, and continues to withhold such production/marketing costs from the Plaintiffs' royalty payments, nor has XTO provided a statement of the basis relied upon by it for the withholding of the costs described above, notwithstanding demand for such explanation by Plaintiffs.

### *Breach of Contract Claims Against XTO*

162.    Plaintiffs hereby ratify, affirm and reassert all facts and allegations in the foregoing paragraphs.

163.    XTO has deducted, and proposes to continue to deduct in the future from the Plaintiffs' royalties the costs of producing, gathering, storing, separating, treating, dehydrating, compressing, processing, and transporting the gas to transform the product into marketable form.

164.    The terms and conditions of XTO's Leases with the Plaintiffs expressly provide that XTO is not entitled to deduct such costs, nor has XTO provided a statement of the basis relied upon by it for the withholding of the costs described above, notwithstanding demand for such explanation by Plaintiffs.

165.    XTO has breached the terms and conditions of the Oil and Gas Leases between it and the Plaintiffs by failing to pay the Plaintiffs their share of the proceeds of the sale of gas without deduction for any costs of producing, gathering, storing, separating, treating, dehydrating, compressing, processing, and transporting the gas since December, 2016.

166.    XTO should be required to account to the plaintiffs all sums withheld by it from the royalty payments due to Plaintiffs for the costs of producing, gathering, storing, separating, treating, dehydrating, compressing, processing, and transporting the gas.

167.    Plaintiffs should be granted judgment of and from XTO for all amounts found to be owed to the Plaintiff in such accounting.

### *Plaintiffs' Claims for Statutory Interest and Penalty*

168.    Plaintiffs hereby ratify, affirm and reassert all facts and allegations in the foregoing paragraphs.

169.    Arkansas Code Anno. § 15-74-601 (Time for payments) provides:

(a) The proceeds derived from the sale of oil or gas production from any oil or gas well shall be paid to persons legally entitled thereto, commencing no later than six (6) months after the date of first sale and thereafter no later than sixty (60) days after the end of the calendar month within which subsequent production is sold or as provided for under subdivision (b)(2) of this section.

(b)(1) The payment of proceeds under subsection (a) of this section is to be made to persons entitled thereto by the first purchasers of the production.
...
(e) When payment has not been made within the time limits specified in this subchapter, the first purchaser shall pay interest to those legally entitled to the withheld proceeds commencing on the payment due date at the rate of twelve percent (12%) per annum on the nonpaid amounts unless a different rate of interest is specified in a written agreement between the payor and the payee.

(f) The first purchaser shall be exempt from the provisions of this subchapter, and the owner of the right to drill and to produce under an oil and gas lease or force pooling order shall be substituted for the first purchaser therein when the owner and purchaser have entered into arrangements in which the proceeds are paid by the purchaser to the owner, who assumes the responsibility of paying the proceeds to persons legally entitled thereto.

170.    As a result of not paying the Plaintiffs the amount of production/marketing costs wrongfully withheld from their royalty payments when due, Plaintiffs should have judgment of and from XTO for interest on the withheld proceeds commencing on the payment due date at the rate of twelve percent (12%) per annum on the nonpaid amounts pursuant to § 15-74-601

171.    Arkansas Code Anno. § 15-74-602 (Penalty for fraudulent activities), also provides:

> (a) If the first purchaser, or owner of the right to drill and produce substituted for the first commercial purchaser as provided in this subchapter, violates this subchapter by willfully withholding payments without just cause or through bad faith from persons legally entitled to the proceeds from production, the court may award, in addition to the unpaid amount of proceeds and interest as provided in § 15-74-601, a penalty in an amount not to exceed simple interest at a rate of fourteen percent (14%) per annum on the amount of the unpaid proceeds from the due date as provided in § 15-74-601 and a reasonable attorney's fee.

172.    XTO has acted in bad faith and willfully withheld payment of a portion of Plaintiffs' royalties by withholding the production/marketing costs describe above from such royalties in violation of the plain and express terms and conditions of Plaintiffs' leases with XTO, and by failing and refusing to respond to Plaintiffs' request for payment of such sums or an explanation of the legal basis on which they are being withheld.

173.    As a result of such bad faith and willful withholding of royalties on the part of XTO, Plaintiffs should be awarded a penalty of and from XTO in an amount not to exceed simple interest at a rate of fourteen percent (14%) per annum on the amount of the unpaid proceeds from the due date as provided in § 15-74-601, in addition to the unpaid amount of proceeds and interest provided in § 15-74-601.

### *Plaintiffs' Claim for First Lien On Production*

174.    Plaintiffs hereby ratify, affirm and reassert all facts and allegations in the

45

foregoing paragraphs.

175.     Arkansas Code Anno. § 15-74-604 (Nonpayment of royalties) also provides:

(a) An obligation arises under an oil and gas lease to pay or to deliver oil or gas royalties to the mineral owner or his or her assignee or to deliver oil or gas to a purchaser to the credit of the mineral owner or his or her assignee, …

(b) In the event the operator under an oil or gas lease fails to pay oil or gas royalties to the mineral owner or his or her assignee within one hundred eighty (180) days after oil or gas produced under the lease is marketed, the unpaid royalties shall bear interest thereafter at the rate of twelve percent (12%) per annum until paid. …

(c) A prior first lien is created to the extent of any unpaid royalty, together with any interest or penalty thereon, granted or reserved in any valid instrument to secure the owner of the royalty interest, his or her heirs, devisees, successors, or assigns.

(d) When payment has not been made upon any natural gas production within the time limits specified in § 15-74-601, the first purchaser shall, upon suit being filed, suspend all royalty payments the subject of the litigation due under the lease interest to the owner of the right to drill and produce, provided that the first purchaser is made a party to the suit, and thereafter shall pay the amounts due all such royalty interests, as the amounts become due, into the registry of the court in which the suit is pending and the first purchaser shall be relieved of all further burdens or obligations therefor.

176.     Plaintiffs hereby claim the benefits of the statutory first lien contained in § 15-74-604(c) on the proceeds of the sale of gas from the drilling units in which Plaintiffs' properties are located, and hereby demand the first purchaser of the gas produced from such properties to suspend all payments made by such first purchaser to XTO's for its share of the proceeds of the sale of such gas.

### *Plaintiffs Claim for Attorney's Fees*

177.     Plaintiffs hereby ratify, affirm and reassert all facts and allegations in the foregoing paragraphs.

178.     Pursuant to Arkansas Code Anno. § 15-74-602 and Arkansas Code Anno. §16-22-308, Plaintiffs should be awarded a reasonable attorney's fee.

### *Claims Asserted for Members of the Class*

179.     Plaintiffs hereby ratify, affirm and reassert all facts and allegations in the foregoing paragraphs.

180.     XTO should be required to account for and pay to the members of the proposed Class who are owners of minerals in the Fayetteville Shale area of the State of Arkansas who have entered into oil and gas leases containing provisions the same as or similar to those contained in the Plaintiffs' Leases with XTO, and from whose royalties XTO has withheld the costs of producing, gathering, storing, separating, treating, dehydrating, compressing, processing, and transporting the gas to market.

181.     All members of the class should have the same judgments of and from XTO for all sums wrongfully withheld from their royalty payments, for interest and penalty as provided by Arkansas Code Anno. § 15-74-601 and § 15-74-602 on all such sums from the date of the withholding of such payments to date of payment, and an award of a reasonable attorney fee and costs pursuant to Ark. Code Anno. § 15-74-602 and §16-22-308.

182.     All members of the class should also have a first lien on the proceeds of gas production from the drilling units in which the class members' leased properties are a part as provided by Arkansas Code Anno. § 15-74-604.

183.     Plaintiffs request a jury trial.

47

**WHEREFORE**, Plaintiffs pray for the following relief:

(i)     XTO should be ordered and directed to account to the named Plaintiffs for all sums wrongfully withheld by it from the royalty payments due to Plaintiffs and members of the proposed class from the commencement of production from the gas wells on the Property;

(ii)    Plaintiffs should have judgment of and from the Defendant, XTO, for the amounts wrongfully withheld from their royalty payments;

(iii)   This Court should certify that this case as a class action, and that it certify the class as all other owners of Minerals (as defined above) in the Fayetteville Shale area of the State of Arkansas who have entered into oil and gas leases now held by XTO containing provisions prohibiting the deduction from the owner's royalties, directly or indirectly, of costs of producing, gathering, storing, separating, treating, dehydrating, compressing, processing, transporting and marketing the oil or gas from the proceeds accruing to the lessors under the lease or by state law, but which costs have nevertheless been deducted and withheld from the lessors by XTO;

(iv)    All members of the class from whose royalty payments XTO has withheld the costs described above should have judgment of and from XTO for all sums wrongfully withheld from their royalty payments;

(v)     The named Plaintiffs and all members of the class should be granted judgments for interest and penalty as provided by Arkansas Code Anno. § 15-74-601 and § 15-74-602 on all sums wrongfully withheld from Plaintiffs'/class members' royalties from the date of the withholding of such payments to date of payment;

(vi)    Plaintiffs and class members should be awarded a reasonable attorney fee and costs

pursuant to Ark. Code Ann. § 15-74-602 and §16-22-308;

(vii)   Plaintiffs and class members should be awarded a first lien on the proceeds of gas

production from the drilling units in which the Plaintiffs' and class members' leased

properties are a part as provided by Arkansas Code Anno. § 15-74-604.

(viii)  Plaintiffs be granted a jury trial on all issues of fact and other issues that may properly

be submitted to a jury.

Respectfully submitted,

**WILLIAMS & ANDERSON PLC**

Richard H. Mays (Ark. Bar #61043)
Stephens Building – 22nd Floor
111 Center Street
Little Rock, AR 72201
501-372-0800
rmays@williamsanderson.com

49

# OIL AND GAS LEASE
(Arkansas — Paid-up)

This instrument was prepared by:
Chesapeake Energy Corporation
6100 N. Western Ave.
Oklahoma City, OK 73118

THIS AGREEMENT made and entered into this _____16th_____ day of _____December_____, 20 09 , by and between:

Jerry McCarty and Cassandra McCarty, husband and wife

150 McCarty Lane

Greers Ferry, AR 72067

hereinafter called Lessor and Chesapeake Exploration, L.L.C., an Oklahoma limited liability company, P.O. Box 18496, Oklahoma City, Oklahoma 73154-0496, hereinafter called Lessee.

WITNESSETH, that Lessor, for and in consideration of the sum of Ten and more Dollars ($10.00 & more) in hand paid, and of the covenants and agreements hereinafter contained and to be performed by the Lessee, does hereby grant, demise, lease and let unto said Lessee, exclusively, the hereinafter described land for the purpose of carrying on geological, geophysical, seismic, and other exploration work and drilling and operating for, producing and saving all of the oil, gas (including casinghead gas, coal seam gas, coal bed methane gas, helium and all other constituents), and other hydrocarbons and laying pipelines, together with any reversionary rights therein, situated in the County of _____Cleburne_____ , State of Arkansas, and described as follows:

## See Exhibit "A"

of Section _____28_____ , Township _____11 North_____ , Range _____11 West_____ , and containing _____49.92_____ acres, more or less, and also, in addition to the above-described land, any and all strips or parcels of land, other than those constituting regular governmental subdivisions, adjoining or contiguous to the above-described land and owned or claimed by Lessor, all of the foregoing land being hereinafter referred to as leased premises. It is the intention of the Lessor herein that the leased premises cover and include all lands owned or claimed by Lessor in the above-numbered governmental section or sections, together with any and all accretions thereto whether or not herein accurately and completely described.

1. This Lease shall remain in force for a primary term of **Five (5)** years from _____June 24, 2010_____ (herein called primary term) and so long thereafter as oil, gas or other hydrocarbons are produced from said leased premises or from lands pooled therewith.

2. Lessee shall deliver, free of cost, to Lessor at the wells, or to the credit of Lessor in the pipeline to which the wells may be connected, the equal 1/5th part of all oil and other liquid hydrocarbons produced and saved from the leased premises, or at Lessee's option, to pay Lessor for such 1/5th royalty the market price at the well for such oil and other liquid hydrocarbons of like grade and gravity prevailing on the day such oil and other liquid hydrocarbons are run from the lease stock tanks.

3. Lessee shall pay or, if required by law, contribute to be paid to Lessor 1/5th of the net proceeds realized by Lessee for all gas (including all substances contained in such gas) produced from the leased premises and sold by Lessee, less Lessor's proportionate share of taxes and all costs incurred by Lessee in delivering, processing, compressing or otherwise making such gas or other substances merchantable or enhancing the marketing thereof. If such gas is used by Lessee off the leased premises or used by Lessee for the manufacture of casinghead gasoline or other products, Lessee shall pay Lessor 1/5th of the prevailing market value at the well for the gas so used.

4. If a well capable of producing gas or gas and gas condensate in paying quantities located on the leased premises (or on acreage pooled or consolidated with all or portion of the leased premises into a unit for the drilling or operation of such well) is at any time shut in and no gas or gas condensate therefrom is sold or used off the premises or for the manufacture of gasoline or other products, nevertheless such shut-in well shall be deemed to be a well on the leased premises producing gas in paying quantities and this Lease will continue in force during all of the time or times while such shut-in well is so shut in, whether before or after the expiration of the primary term hereof. Lessee shall use reasonable diligence to market gas or gas condensate capable of being produced from such shut-in well but shall be under no obligation to market such products under terms, conditions or circumstances which, in Lessee's judgment exercised in good faith, are unsatisfactory. Lessee shall be obligated to pay or tender to Lessor within 45 days after the expiration of each period of one year length (annual period) during which such well is so shut in, a royalty of One Dollar ($1.00) per net royalty acre retained hereunder as of the end of such annual period; provided that, if gas or gas condensate from such well is sold or used as aforesaid before the end of any such annual period, or if, at the end of any such annual period, this Lease is being maintained in force and effect otherwise than by reason of such shut-in well, Lessee shall not be obligated to pay or tender, for that particular annual period, said sum of money. Such payment shall be deemed a royalty under all provisions of this Lease. Lessee's failure to pay or tender such payment, for any reason, shall render Lessee liable for the amount due, but shall not operate to terminate this lease. Such payment shall be made or tendered to Lessor at the above address or to his successors. Royalty ownership as of the last day of each such annual period as shown by Lessee's records shall govern the determination of the party or parties entitled to receive such payment.

5. Lessee hereby is given the right at its option, at any time and whether before or after production, to pool for development and operation purposes all or any part or parts of the leased premises or rights therein with any other land in the vicinity thereof, or with any leasehold, operating or other rights or interests in such other land so as to create units of such size and surface acreage as Lessee may desire but containing not more than forty-five (45) acres; provided, however, a unit may be established hereunder containing not more than 640 acres plus 10% acreage tolerance if unitized only as to gas rights or only as to gas and gas condensate, except that units pooled for oil or oil and gas for or in conjunction with repressuring, pressure maintenance, cycling and secondary recovery operations or any one or more of same, may be formed to include no more than 320 acres. If at any time larger units are required under any then applicable law, rule, regulations or order of any governmental authority for the drilling, completion or operation of a well, or for obtaining maximum allowable for any contemplated, drilling or completed well, any such unit may be established or enlarged to conform to the size specified by such law, rule, regulation or order.

Operations on any part of any lands so pooled shall, except for the payment of royalties, be considered operations on leased premises under this Lease, and, notwithstanding the status of a well at the time of pooling, such operations shall be deemed to be in connection with a well which is commenced on leased premises under this Lease. The term "operations" as used herein shall include, without limitation, the following: commencing, construction of roadways, preparation of drillsite, drilling, testing, completing, reworking, recompleting, deepening, plugging back, repressuring, pressuring maintenance, cycling, secondary recovery operations, or the production of oil or gas, or the existence of a shut-in well capable of producing oil or gas.

There shall be allocated to the portion of leased premises included in any such pooling such proportion of the actual production from all lands so pooled as such portion as leased premises, computed on an acreage basis, bears to the entire acreage of the lands so pooled. The production so allocated shall be considered for the purpose of payment or delivery or royalty to be the entire production for the portion of leased premises included in such pooling in the same manner as though produced from such portion of leased premises under the terms of this Lease.

6. If the Lessor owns a lesser interest in the above-described land than the entire and undivided mineral estate therein, then the royalties herein provided for shall be paid to the said Lessor only in the proportion which his interest bears to the whole and undivided mineral estate.

7. The estate of either party hereto is assigned, and the privilege of assigning in whole or in part is hereby expressly allowed, the covenants hereof shall extend to their heirs, executors, administrators, successors or assigns, but no change in the ownership of the land or the minerals in and under the same or assignment of royalties shall be binding on Lessee unless Lessee shall have been furnished ninety (90) days before payment hereunder of such royalties, with certified copies of recorded instruments showing evidence of title.





**EXHIBIT**

**1**

8. Lessee shall have the right to use, free of cost, gas, oil and water found on said land for its operations, except water from the wells of the Lessor. When required by the Lessor, the Lessee shall bury its pipelines below plow depth and shall pay reasonable damages for injury by reason of its operations to growing crops on said land. No well shall be drilled nearer than 200 feet to any house or barn or other structure on said premises as of the date of this Lease without the written consent of the Lessor. Lessee shall have the right at any time during, or after the expiration of this Lease to enter upon the property and to remove all machinery, fixtures, and other structures placed on said premises, including the right to draw and move all casing, but the Lessee shall be under no obligation to do so.

9. Notwithstanding anything contained in this Lease to the contrary, it is expressly agreed that if the Lessee shall commence operations as provided herein at any time while this Lease is in force, this Lease shall remain in force and its terms shall continue so long as such operations are prosecuted, and if production results therefrom, then as long as production is maintained.

10. If, after the expiration of the primary term of this Lease, production on the leased premises should cease from any cause, this Lease shall not terminate provided Lessee commences operations for additional drilling or reworking within sixty (60) days from such cessation, and this Lease shall remain in force during the prosecution of such operations and if production results therefrom, then as long as production is maintained.

11. Lessee may at any time surrender or cancel this Lease in whole or in part by delivering or mailing such release to the Lessor, or by placing such release of record in the proper County. In case this Lease is surrendered or cancelled as to only a portion of the acreage covered thereby, then all payments and liabilities thereafter accruing under the terms of this Lease as to the portion cancelled shall cease. As to the portion of the acreage not released, the terms and provisions of this Lease shall continue and remain in full force and effect for all purposes.

12. All provisions hereof, express or implied, shall be subject to all Federal and State Laws and the orders, rules, and regulations of all governmental agencies administering the same, and this Lease shall not in any way be terminated wholly or partially, nor shall the Lessee be liable in damages for failure to comply with any of the express or implied provisions hereof if such failure accords with any such laws, orders, rules or regulations. Should the Lessee be prevented during the last year of the primary term hereof from drilling a well hereunder by the order of any constituted authority having jurisdiction, or if Lessee shall be unable during said period to drill a well hereunder due to the equipment necessary in the drilling thereof not being available for any cause, the primary term of this Lease shall continue until one year after said order is suspended or said equipment is available.

13. Lessor hereby warrants and agrees to defend the title to the land herein described and agrees that the Lessee, at its option, may pay or discharge in whole or in part any taxes, encumbrances, or other liens existing, levied or assessed against the above-described lands, and in the event Lessee exercises such option, it shall be subrogated to the rights of any holder or holders thereof and may reimburse itself by applying any royalty accruing hereunder to the amount of any such encumbrance, tax or other lien paid by Lessee.

14. Lessee hereby is given the right to acquire for its own benefit deeds, leases, or assignments covering any interest or claim in leased premises which Lessee or any other party contends is outstanding and not covered hereby and even though such outstanding interest or claim be invalid or adverse to Lessor. In the event the validity of this Lease be disputed by Lessor or by any other person, then, for the period such dispute remains undisposed of, Lessee shall be relieved of all obligations hereunder to explore or develop leased premises; all royalties or other payments which would otherwise accrue shall be suspended for such period; and this Lease automatically shall be extended for an additional period equal to the duration of such period.

15. If, at any time within the primary term of this Lease and while the same remains in force and effect, Lessor receives any bona fide offer, acceptable to Lessor, to grant an additional Lease (top lease) covering all or part of the afore-described lands, Lessee shall have the continuing option by meeting any such offer to acquire such top lease. Any offer must be in writing, and must set forth the proposed Lessee's name, bonus consideration and royalty consideration to be paid for such Lease, and include a copy of the Lease form to be utilized which form should reflect all pertinent and relevant terms and conditions of the top lease. Lessee shall have fifteen (15) days after receipt, from Lessor, of a complete copy of any such offer to advise Lessor in writing of its election to enter into an oil and gas Lease with Lessor on equivalent terms and conditions. If Lessee fails to notify Lessor within the aforesaid fifteen (15) day period of its election to meet any such bona fide offer, Lessor shall have the right to accept said offer.

16. It is specifically understood that each wife and husband named herein and executing this Lease, for the consideration above set out, and the covenants and agreements contained in this Lease to be performed by the Lessee, does hereby release and relinquish unto said Lessee all right of dower, curtesy and homestead in and to the lands covered hereby for the purpose of this Lease.

17. This Lease and all its terms, conditions and stipulations shall extend to and be binding on all successors in title of said Lessor or Lessee.

18. It is the intent of the Lessor to lease all of Lessor's interest in and to the Section described herein, whether or not the tracts recited hereon are properly described, and further it is understood that this Lease includes all rights owned by the Lessor in this Section whether or not correctly described and any other properties owned by the Lessor in the drilling and spacing unit for this well, including without limitation, strips, gores, alleyways, roadways, accretions and avulsions.

19. Lessor agrees not to execute any instrument extending or renewing the present existing lease. This lease covers the reversionary interest of Lessor in the minerals underlying the leased premises and is vested in interest, but it will not vest in possession until the expiration of any prior oil and gas lease which is currently in force and effect covering the leased premises, to any of which current leases this lease is specifically subject and subordinate.

See exhibit "B" attached hereto and made a part hereof.

IN WITNESS WHEREOF, this Lease is executed as of date first set out herein above.

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
_____
Tax ID/SS#:

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
_____
Tax ID/SS#:

Lessor: Jerry McCarty

Lessor: Cassandra McCarty

**ACKNOWLEDGEMENT**

STATE OF _Arkansas_

COUNTY OF _Cleburne_

Before me, the undersigned Notary Public in and for the above county and state, on this day personally appeared Jerry McCarty and Cassandra McCarty, husband and wife known to me to be the person(s) whose name(s) is/are subscribed to the foregoing instrument, and acknowledged that he/she/they executed the same as his/her/their free and voluntary act and deed for the purposes and consideration therein expressed, including the relinquishment of curtesy, dower, and homestead.

Given under my hand and seal of office this 21st day of December 2009.

My Commission Expires:

2/25/13
_____
SEAL

_____
Notary Public



OFFICIAL SEAL
CRYSTAL FOUSE
NOTARY PUBLIC - ARKANSAS
LONOKE COUNTY
My Commission Expires FEBRUARY 25, 2013

**Exhibit "A"**

Attached hereto and made a part of that certain Oil and Gas Lease dated <u>December 16, 2009</u>, by and between <u>Jerry McCarty and Cassandra McCarty, husband and wife</u>, as Lessor, and Chesapeake Exploration, L.L.C., an Oklahoma limited liability company, as Lessee.

## Section 28, Township 11 North, Range 11 West

NE/4 NE/4,

LESS AND EXCEPT Part of the NE/4 NE/4:  Beginning at the NE corner of the NE/4, thence West 420 feet, thence South 210 feet, thence East 420 feet, thence North 210 feet to the point of beginning.

AND LESS AND EXCEPT Part of the NE/4 NE/4:  Beginning at the NW corner of the NE/4 NE/4, thence East 210 feet, thence South 210 feet, thence West 210 feet, thence North 210 feet to the beginning.

AND Part of the NW/4 NE/4:  Beginning at the SE corner of the NW/4 NE/4, thence N62°33'54"W to a point 816 feet West of the East line of NW/4 NE/4, thence North 502 feet to a point approximately 410 feet South of the North line of the NW/4 NE/4, thence Southeast to a point on the East line of the NW/4 NE/4, thence South approximately 875 feet to the point of beginning, containing 12.92 acres.

Signed for identification: _____
Jerry McCarty

Signed for identification: _____
Cassandra McCarty

**Exhibit "B"**

Attached hereto and made a part of that certain Oil and Gas Lease dated <u>December 16, 2009</u>, by and between <u>Jerry McCarty and Cassandra McCarty, husband and wife</u>, as Lessor, and Chesapeake Exploration, L.L.C., an Oklahoma limited liability company, as Lessee.

It is agreed between the Lessor and Lessee that, notwithstanding any language herein to the contrary, all oil, gas or other proceeds accruing to the Lessor under this lease or by state law shall be without deduction for the cost of producing, gathering, storing, separating, treating, dehydrating, compressing, processing, transporting, and marketing the oil, gas and other products produced hereunder to transform the product into marketable form; however, any such costs which result in enhancing the value of the marketable oil, gas or other products to receive a better price may be deducted from Lessor's share of production so long as they are based on Lessee's actual cost of such enhancements.  However, in no event shall Lessor receive a price that is less than, or more than, the price received by Lessee.

Signed for Identification: _____
                            Jerry McCarty

Signed for Identification: _____
                            Cassandra McCarty





Certficate of Record
State of Arkansas, County of Cleburne
KAREN GILES, CIRCUIT CLERK
Filed & Recorded in Cleburne County
Date 03/01/2010,03:43:37 PM
Fees $38.00
DOC # 201001853
Karen Giles, Clerk

_Karen Giles_ D.C.

## OIL AND GAS LEASE
### (Arkansas — Paid-up)

This instrument was prepared by:
Chesapeake Energy Corporation
6100 N. Western Ave.
Oklahoma City, OK 73118

THIS AGREEMENT made and entered into this _____16th_____ day of _____December_____, 20 09, by and between:

Patricia Thomas a/k/a Patricia A. Thomas and Larry Thomas, a/k/a Larry L. Thomas, wife and husband

150 Central Avenue

Green Ferry, AR 72067

hereinafter called Lessor and Chesapeake Exploration, L.L.C., an Oklahoma limited liability company, P.O. Box 18496, Oklahoma City, Oklahoma 73154-0496, hereinafter called Lessee.

WITNESSETH, that Lessor, for and in consideration of the sum of Ten and more Dollars ($10.00 & more) in hand paid, and of the covenants and agreements hereinafter contained and to be performed by the Lessee, does hereby grant, demise, lease and let unto said Lessee, exclusively, the hereinafter described land for the purpose of carrying on geological, geophysical, seismic, and other exploration work and drilling and operating for, producing and saving all of the oil, gas (including casinghead gas, coal seam gas, coal bed methane gas, helium and all other constituents), and other hydrocarbons and laying pipelines, together with any reversionary rights therein, situated in the County of _____Cleburne_____, State of Arkansas, and described as follows:

### See Exhibit "A"

of Section ____28____, Township ___11 North___, Range ___11 West___, and containing ___46.98600___ acres, more or less, and also, in addition to the above-described land, any and all strips or parcels of land, other than those constituting regular governmental subdivisions, adjoining or contiguous to the above-described land and owned or claimed by Lessor, all of the foregoing land being hereinafter referred to as leased premises. It is the intention of the Lessor herein that the leased premises cover and include all lands owned or claimed by Lessor in the above-numbered governmental section or sections, together with any and all accretions thereto whether or not herein accurately and completely described.

1. This Lease shall remain in force for a primary term of _Five (5)_ years from ___June 29, 2010___ (herein called primary term) and so long thereafter as oil, gas or other hydrocarbons are produced from said leased premises or from lands pooled therewith.

2. Lessee shall deliver, free of cost, to Lessor at the wells, or to the credit of Lessor in the pipeline to which the wells may be connected, the equal 1/8th part of all oil and other liquid hydrocarbons produced and saved from the leased premises, or at Lessee's option, to pay Lessor for such 1/8th royalty the market price at the well for such oil and other liquid hydrocarbons of like grade and gravity prevailing on the day such oil and other liquid hydrocarbons are run from the lease stock tanks.

3. Lessee shall pay or, if required by law, contribute to be paid to Lessor 1/8th of the net proceeds realized by Lessee for all gas (including all substances contained in such gas) produced from the leased premises and sold by Lessee, less Lessor's proportionate share of taxes and all costs incurred by Lessee in delivering, processing, compressing or otherwise making such gas or other substances merchantable or marketing the marketing thereof. If such gas is used by Lessee off the leased premises or used by Lessee for the manufacture of casinghead gasoline or other products, Lessee shall pay Lessor 1/8th of the prevailing market value at the well for the gas so used.

4. If a well capable of producing gas or gas and gas condensate when located on the leased premises (or on acreage pooled or consolidated with all or a portion of the leased premises into a unit for the drilling or operation of such well) is at any time shut in and no gas or gas condensate therefrom is sold or used off the premises or for the manufacture of gasoline or other products, nevertheless such shut-in well shall be deemed to be a well on the leased premises producing gas in paying quantities and this Lease will continue in force during all of the time or times while such shut-in well is so shut in, whether before or after the expiration of the primary term hereof. Lessee shall use reasonable diligence to market gas or gas condensate capable of being produced from such shut-in well but shall be under no obligation to market such products under terms, conditions or circumstances which, in Lessee's judgment exercised in good faith, are unsatisfactory. Lessee shall be obligated to pay or tender to Lessor within 45 days after the expiration of each period of one year length (annual period) during which such well is so shut in, a royalty of One Dollar ($1.00) per net royalty acre retained hereunder as of the end of such annual period; provided that, if gas or gas condensate from such well is sold or used as aforesaid before the end of any such annual period, or if, at the end of any annual period, this Lease is being maintained in force and effect otherwise than by reason of such shut-in well, Lessee shall not be obligated to pay or tender, for that particular annual period, said sum of money. Such payment shall be deemed a royalty under all provisions of this Lease. Lessee's failure to pay or tender such payment, for any reason, shall render Lessee liable for the amount due, but shall not operate to terminate this lease. Such payment shall be made or tendered to Lessor at the above address or to his successors. Royalty ownership as of the last day of each such annual period as shown by Lessee's records shall govern the determination of the party or parties entitled to receive such payment.

5. Lessee hereby is given the right at its option, at any time and whether before or after production, to pool for development and operation purposes all or any part of the leased premises or rights therein with any other land in the vicinity thereof, or with any leasehold, operating or other rights or interests in such other land so as to create units of such size and surface acreage as Lessee may desire but containing not more than forty-five (45) acres; provided, however, a unit may be established hereunder containing not more than 640 acres plus 10% acreage tolerance if unitized only as to gas rights or only as to gas and gas condensate, except that units pooled for oil or oil and gas for or in conjunction with repressuring, pressure maintenance, cycling and secondary recovery operations or any one or more of same, may be formed to include not more than 320 acres. If at any time larger units are required under any then applicable law, rule, regulations or order of any governmental authority for the drilling, completion or operation of a well, or for obtaining maximum allowable for any contemplated, drilling or completed well, any such unit may be established or enlarged to conform to the size specified by such law, rule, regulation or order.

Operations on any part of any lands so pooled shall, except for the payment of royalties, be considered operations under this Lease, and notwithstanding the status of a well at the time of pooling, such operations shall be deemed to be in connection with a well which is commenced on leased premises under this Lease. The term "operations" as used herein shall include, without limitation, the following: commencing, construction of roadways, preparation of drillsite, drilling, testing, completing, reworking, recompleting, deepening, plugging back, repressuring, pressuring maintenance, cycling, secondary recovery operations, or the production of oil or gas, or the existence of a shut-in well capable of producing oil or gas.

There shall be allocated to the portion of leased premises included in any such pooling such proportion of the actual production from all lands so pooled as such portion as leased premises, computed on an acreage basis, bears to the entire acreage of the lands so pooled. The production so allocated shall be considered for the purpose of payment or delivery or royalty to be the entire production for the portion of leased premises included in such pooling in the same manner as though produced from such portion of leased premises under the terms of this Lease.

6. If the Lessor owns a lesser interest in the above-described land than the entire and undivided mineral estate therein, then the royalties herein provided for shall be paid to the said Lessor only in the proportion which his interest bears to the whole and undivided mineral estate.

7. If the estate of either party hereto is assigned, and the privilege of assigning in whole or in part is hereby expressly allowed, the covenants hereof shall extend to their heirs, executors, administrators, successors or assigns, but no change in the ownership of the land or the minerals in and under the same or assignment of royalties shall be binding on Lessee unless Lessee shall have been furnished ninety (90) days before payment hereunder of such royalties, with certified copies of recorded instruments showing evidence of title.



**EXHIBIT**

2



8. Lessee shall have the right to use, free of cost, gas, oil and water found on said land for its operations, except water from the wells of the Lessor. When required by the Lessor, the Lessee shall bury its pipelines below plow depth and shall pay reasonable damages for injury by reason of its operations to growing crops on said land. No well shall be drilled nearer than 200 feet to any house or barn or other structure on said premises as of the date of this Lease without the written consent of the Lessor. Lessee shall have the right at any time during, or after the expiration of this Lease to enter upon the property and to remove all machinery, fixtures, and other structures placed on said premises, including the right to draw and move all casing, but the Lessee shall be under no obligation to do so.

9. Notwithstanding anything contained in this Lease to the contrary, it is expressly agreed that if the Lessee shall commence operations as provided herein at any time while this Lease is in force, this Lease shall continue so long as such operations are prosecuted, and if production results therefrom, then as long as production is maintained.

10. If, after the expiration of the primary term of this Lease, production on the leased premises should cease from any cause, this Lease shall not terminate provided Lessee commences operations for additional drilling or reworking within sixty (60) days from such cessation, and this Lease shall remain in force during the prosecution of such operations and if production results therefrom, then as long as production is maintained.

11. Lessee may at any time surrender or cancel this Lease in whole or in part by delivering or mailing such release to the Lessor, or by placing such release of record in the proper County. In case this Lease is surrendered or cancelled as to only a portion of the acreage covered thereby, then all payments and liabilities thereafter accruing under the terms of this Lease as to the portion cancelled shall cease. As to the portion of the acreage not released, the terms and provisions of this Lease shall continue and remain in full force and effect for all purposes.

12. All provisions hereof, express or implied, shall be subject to all Federal and State Laws and the orders, rules, and regulations of all governmental agencies administering the same, and this Lease shall not in any way be terminated wholly or partially, nor shall the Lessee be liable in damages for failure to comply with any of the express or implied provisions hereof if such failure accords with any such laws, orders, rules or regulations. Should the Lessee be prevented during the last year of the primary term hereof from drilling a well hereunder by the order of any constituted authority having jurisdiction, or if Lessee shall be unable during said period to drill a well hereunder due to the equipment necessary in the drilling thereof not being available for any cause, the primary term of this Lease shall continue until one year after said order is suspended or said equipment is available.

13. Lessor hereby warrants and agrees to defend the title to the land herein described and agrees that the Lessee, at its option, may pay or discharge in whole or in part any taxes, encumbrances, or other liens existing, levied or assessed against the above-described lands, and in the event Lessee exercises such option, it shall be subrogated to the rights of any holder or holders thereof and may reimburse itself by applying any royalty accruing hereunder to the amount of any such encumbrance, tax or other lien paid by Lessee.

14. Lessee hereby is given the right to acquire for its own benefit deeds, leases, or assignments covering any interest or claim in leased premises which Lessee or any other party contends is outstanding and not covered hereby and even though such outstanding interest or claim be invalid or adverse to Lessor. In the event the validity of this Lease be disputed by Lessor or by any other person, then, for the period such dispute remains undisposed of, Lessee shall be relieved of all obligations hereunder to explore or develop leased premises; all royalties or other payments which would otherwise accrue shall be suspended for such period; and this Lease automatically shall be extended for an additional period equal to the duration of such period.

15. If, at any time within the primary term of this Lease and while the same remains in force and effect, Lessor receives any bona fide offer, acceptable to Lessor, to grant an additional Lease (top lease) covering all or part of the afore-described lands, Lessee shall have the continuing option by meeting any such offer to acquire such top lease. Any offer must be in writing, and must set forth the proposed Lessee's name, bonus consideration and royalty consideration to be paid for such Lease, and include a copy of the Lease form to be utilized which form should reflect all pertinent and relevant terms and conditions of the top lease. Lessee shall have fifteen (15) days after receipt from Lessor, of a complete copy of any such offer to advise Lessor in writing of its election to enter into an oil and gas Lease with Lessor on equivalent terms and conditions. If Lessee fails to notify Lessor within the aforesaid fifteen (15) day period of its election to meet any such bona fide offer, Lessor shall have the right to accept said offer.

16. It is specifically understood that each wife and husband named herein and executing this Lease, for the consideration above set out, and the covenants and agreements contained in this Lease to be performed by the Lessee, does hereby release and relinquish unto said Lessee all right of dower, curtesy and homestead in and to the lands covered hereby for the purpose of this Lease.

17. This Lease and all its terms, conditions and stipulations shall extend to and be binding on all successors in title of said Lessor or Lessee.

18. It is the intent of the Lessor to lease all of Lessor's interest in and to the Section described herein, whether or not the tracts recited hereon are properly described, and further it is understood that this Lease includes all rights owned by the Lessor in this Section whether or not correctly described and any other properties owned by the Lessor in the drilling and spacing unit for this well, including without limitation, strips, gores, alleyways, roadways, accretions and avulsions.

19. Lessor agrees not to execute any instrument extending or renewing the present existing lease. This Lease covers the reversionary interest of Lessor in the Minerals underlying the leased premises and is vested in interest, but it will not vest in possession until the expiration of any prior oil and gas lease which is currently in force and effect covering the leased premises, to any of which current lessee this lease is specifically subject and subordinate.

See exhibit "B" attached hereto and made a part hereof.

IN WITNESS WHEREOF, this Lease is executed as of date first set out herein above.

Tax ID/SS#: _____                          *Patricia Thomas*
                                                             Lessor: Patricia Thomas

                                                             *Larry Thomas*
Tax ID/SS#: _____                          Lessor: Larry Thomas

STATE OF Arkansas                          **ACKNOWLEDGEMENT**

COUNTY OF Cleburne

Before me, the undersigned Notary Public in and for the above county and state, on this day personally appeared Patricia Thomas a/k/a Patricia A. Thomas and Larry Thomas, a/k/a Larry L. Thomas, wife and husband known to me to be the person(s) whose name(s) is/are subscribed to the foregoing instrument, and acknowledged that he/she/they executed the same as his/her/their free and voluntary act and deed for the purpose and consideration therein expressed, including the relinquishment of curtesy, dower, and homestead.

Given under my hand and seal of office this 21st day of December 2009.

My Commission Expires:

2/25/13                                     *Crystal Fouse*
                                            Notary Public

SEAL          OFFICIAL SEAL
              CRYSTAL FOUSE
           NOTARY PUBLIC - ARKANSAS
               LONOKE COUNTY
        My Commission Expires FEBRUARY 25, 2013



**Exhibit "A"**

Attached hereto and made a part of that certain Oil and Gas Lease dated December 16, 2009, by and between Patricia Thomas a/k/a Patricia A. Thomas and Larry Thomas, a/k/a Larry L. Thomas, wife and husband, as Lessor, and Chesapeake Exploration, L.L.C., an Oklahoma limited liability company, as Lessee.

## Section 28, Township 11 North, Range 11 West

Part of the NW/4 NE/4: Beginning at the SW corner of the N/2 NW/4 NE/4, thence North 660 feet, thence East 504 feet, thence South 912 feet, thence Northwesterly to the point of beginning, containing 9.09 acres,

AND All that part of the NE/4 NW/4 lying West of Hurricane Branch,

LESS AND EXEPT 6 acres of even width across the North side thereof. Also, all that part of the N/2 NE/4 NW/4 lying East of Hurricane Creek. All that part of the NW/4 NW/4 lying East and North of Hwy 18

AND LESS AND EXCEPT Tracts 9,10,13,14,18 and 19 of this report,


Signed for Identification: _Patricia Thomas_
                              Patricia Thomas


Signed for Identification: _Larry Thomas_
                              Larry Thomas



**Exhibit "B"**

Attached hereto and made a part of that certain Oil and Gas Lease dated <u>December 16, 2008</u>, by and between <u>Patricia Thomas a/k/a Patricia A. Thomas and Larry Thomas, a/k/a Larry L. Thomas, wife and husband</u>, as Lessor, and Chesapeake Exploration, L.L.C., an Oklahoma limited liability company, as Lessee.

It is agreed between the Lessor and Lessee that, notwithstanding any language herein to the contrary, all oil, gas or other proceeds accruing to the Lessor under this lease or by state law shall be without deduction for the cost of producing, gathering, storing, separating, treating, dehydrating, compressing, processing, transporting, and marketing the oil, gas and other products produced hereunder to transform the product into marketable form; however, any such costs which result in enhancing the value of the marketable oil, gas or other products to receive a better price may be deducted from Lessor's share of production so long as they are based on Lessee's actual cost of such enhancements. However, in no event shall Lessor receive a price that is less than, or more than, the price received by Lessee.

Signed for Identification:  _____
                                        Patricia Thomas

Signed for Identification:  _____
                                        Larry Thomas



PREPARED BY:
Petrohawk Properties, L.P.
6100 South Yale, Ste 500
Tulsa, OK 74136

OIL AND GAS LEASE
(Paid-up Lease – No Delay Rentals)

THIS AGREEMENT, made and entered into this 10th day of December, 2008, by and between DORISA A. MOORE and RAY MOORE, wife and husband of 49 Moore Drive, Greers Ferry, AR 72067, hereinafter called "Lessor" (whether one or more), and PETROHAWK PROPERTIES, LP, of 6100 South Yale Ave., Suite 500, Tulsa, OK 74136, hereinafter called "Lessee".

WITNESSETH, Lessor, for and in consideration of TEN AND MORE Dollars ($10.00) and other good and valuable consideration in hand paid, receipt of which is hereby acknowledged, and of the agreements of Lessee hereinafter set forth, hereby grants, demises, leases and lets exclusively unto said Lessee the lands hereinafter described for the purpose of prospecting, exploring by geophysical and other methods, drilling, mining, operating for and producing oil or gas or both, including, but not as a limitation, casing head gas, casing head gasoline, gas condensate (i.e. stillate) and any substance, whether similar or dissimilar, produced in a gaseous state, together with the right to construct and maintain pipe lines, telephone and electric lines, tanks, power stations, ponds, roadways, plants, equipment, and structures thereon to produce, save and take care of said oil and gas, and the exclusive right to inject air, gas, water, brine and other fluids from any source into the subsurface strata and any and all other rights and privileges necessary, incident to, or convenient for the economical operation of said land, alone or conjointly with neighboring land, for the production, saving and taking care of oil and gas and the injection of air, gas, water, brine and other fluids into the subsurface strata, said lands being situated in the County of Cleburne, State of Arkansas, and being described as follows, to-wit:

TOWNSHIP 11 NORTH, RANGE 11 WEST

Section 28: That certain tract or parcel of land containing 5.000 acres, more or less.
Located in the Southeast Quarter of the Southeast Quarter (PT SE 4 SE 4)

The above tract being the same tract described in that certain Warranty Deed, dated February 27, 2006, from EWING BAILY, as Grantor and DORISA MOORE and PHOEBE HARRIS, as Grantee, being duly recorded at Document Number: 200701622 in the Circuit/County Clerk Records, Cleburne County, Arkansas

of Section 28, Township 11 North, Range 11 West, it being the purpose and intent of Lessor to lease and Lessor does hereby lease all of the lands or interests in lands owned by Lessor which adjoin the lands above described or which lie in the section or sections herein specified whether or not herein completely and accurately described together with and including any accretions thereto which may have formed, may now be forming or may hereafter form. For all purposes of this lease, said lands shall be deemed to contain 5.000 gross acres.

Subject to the other provisions herein contained, this lease shall remain in force for a term of five (5) years from this date (herein called "primary term") and as long thereafter as oil and gas or either of them is produced from the above described land or drilling operations are continuously prosecuted as hereafter provided. "Drilling operations" includes operations for the drilling of a new well, the reworking, deepening or plugging back of a well or hole or other operations conducted in an effort to obtain or re-establish production of oil or gas, and drilling operations shall be considered to be continuously prosecuted if not more than 180 days shall elapse between the completion or abandonment of one well or hole and the commencement of drilling operations on another well or hole. If at the expiration of the primary term of this lease, oil or gas is not being produced from the above described land but Lessee is then engaged in drilling operations,

this lease shall continue in force so long as drilling operations are continuously prosecuted, and if production of oil or gas results from any such drilling operations, this lease shall continue in force so long as oil or gas shall be produced. If after the expiration of the primary term of this lease, production from the above described land should cease, this lease shall not terminate if Lessee is then prosecuting drilling operations, or within 180 days after each such cessation of production commences drilling operations, and this lease shall remain in force so long as such operations are continuously prosecuted, and if production results therefrom, then as long thereafter as oil or gas is produced from the above described land.

In consideration of the premises Lessee covenants and agrees:

1. To deliver, free of cost, to Lessor at the wells, or to the credit of Lessor in the pipeline to which the wells may be connected, the equal one-eighth (1/8) part of all oil and other liquid hydrocarbons produced and saved from the leased premises, or, at Lessee's option, to pay to Lessor for such one-eighth (1/8) royalty the market price at the well for such oil and other liquid hydrocarbons of like grade and gravity prevailing on the day such oil and other liquid hydrocarbons are run from the lease.

2. Lessee shall pay Lessor one-eighth (1/8) of the proceeds derived from the sale of all gas (including substances contained in such gas) produced, saved, and sold by Lessee. Proceeds are defined as the actual amount received by the Lessee for the sale of said gas. In calculating the proceeds derived from the sale of gas produced, saved and sold by Lessee, Lessee shall be entitled to deduct all reasonable gatherings, transportation, treatment, compression, processing and marketing costs that are incurred by Lessee in connection with the sale of such gas.

3. The consideration paid to Lessor for this lease includes consideration in lieu of delay rental provisions and the rights and obligations of the parties hereunder shall be the same as if this lease contained provisions for the payment of periodic delay rentals throughout the primary term hereof and each such delay rental had been timely paid and accepted Lessor.

4. If a well capable of producing gas or gas and gas-condensate in paying quantities located on the leased premises (or on acreage pooled or consolidated with all or a portion of the leased premises, into a unit for the drilling or operation of such well) is at any time shut in and no gas or gas-condensate therefrom is sold or used off the premises or for the manufacture of gasoline or other products, nevertheless such shut-in well shall be deemed to be a well or the leased premises producing gas in paying quantities and this lease will continue in force during all of the time of mines while such well is so shut in, whether before or after the expiration of the primary term hereof. Lessee shall use reasonable diligence to market gas or gas-condensate capable of being produced from such shut-in well but shall be under no obligation to market such products under terms, conditions or circumstances which in Lessee's judgment exercised in good faith, are unsatisfactory. Lessee shall be obligated to pay or tender to Lessor within 45 days after the expiration of each period of one year in length (annual period) during which such well is so shut in, as royalty, an amount equal to $1.00 per acre for the acreage covered by this lease as to which the leasehold rights are, at the end of such annual period, owned by the Lessee making such payment: provided that, if Lessor owns less than the full and entire royalty interest in such acreage, such payments shall be such part (calculated on a royalty-acre basis) of said amount as Lessor's royalty interest bears to the full and entire royalty interest in such acreage, and provided further that, if gas or gas-condensate from such well is sold or used as aforesaid before the end of any such annual period, or if, at the end of any such annual period, this lease is being maintained in force and effect otherwise than by reason of such shut-in well, Lessee shall not be obligated to pay or tender for that particular annual period, said sum of money. Such payment shall be deemed a royalty under all provisions of this lease. Such payment may be made or tendered to Lessor or to Lessor's credit in the ___ DIRECT TO LESSOR Bank at ABOVE ADDRESS which bank and its successors shall continue as the depository, regardless of changes in the ownership of said land or the right to receive royalty hereunder. Royalty ownership as of the last day of each such annual period as shown by Lessee's records shall govern the determination of the party or parties entitled to receive such payment.

5. If Lessor owns a less interest in the land covered by this lease than the entire and undivided fee simple mineral estate therein, then whether or not such less interest is referred to or described herein, bonus consideration for this lease and all royalties herein provided shall be paid Lessor only in the proportion (calculated on a net mineral and/or royalty

acre basis) which the net mineral and/or royalty interest owned by him in said land bears to the full and entire mineral and/or royalty interest in said land.

6.   If the estate of either party hereto is assigned or sublet, and the privilege of assigning or subletting in whole or in part is expressly allowed, the express and implied covenants hereof shall extend to the Sub Lessees successors and assigns of the parties, and in the event of an assignment or subletting by Lessee, Lessee shall be relieved and discharged as to the leasehold rights so assigned or sublet from any liability to Lessor thereafter accruing upon any of the covenants or conditions of this lease, either express or implied. No change in the ownership of the land or royalties, however accomplished, shall operate to enlarge the obligations or diminish the rights of Lessee or require separate measuring or installation of separate tanks by Lessee. Notwithstanding any actual or constructive knowledge of or notice to Lessee, no change in the ownership of said land or of the right to receive royalties hereunder, or of any interest therein, whether by reason of death, conveyance or any other matter, shall be binding on Lessee (except at Lessee's option in any particular case) until 90 days after Lessee has been furnished written notice thereof, and the supporting information hereinafter referred to, by the party claiming as a result of such change in ownership or interest. Such notice shall be supported by original or certified copies of all documents and other instruments or proceedings necessary, in Lessee's opinion to establish the ownership of the claiming party.

7.   Lessee may, at any time, execute and deliver to Lessor or place of record a release covering all or any part of the acreage embraced in the leased premises or covering any one or more zones, formations or depths underlying all or any part of such acreage, and thereupon shall be relieved of all obligations thereafter to accrue with respect to the acreage, zones, formations or depths covered by such release.

8.   Lessee is granted the right, from time to time while this lease is in force, to pool into a separate drilling operating unit or units all or any part of the land covered by this lease with other land, lease or leases, or interests therein, whether such other interests are pooled by a voluntary agreement on the part of the owners therefore by the exercise of a right to pool by the Lessees thereof), when in Lessee's judgment it is necessary or advisable in order to promote conservation, to properly develop or operate the land and interest to be pooled, or to obtain a multiple production allowable from any government agency having control over such matters. Moreover, if any governmental regulation or order shall permit or prescribe a spacing pattern for the development of a field wherein the above described land, or a portion thereof, is located, or allocate a producing allowable based on acreage per well, then any such unit may embrace such additional or lesser amount of acreage as may be so permitted or prescribed or as may be permitted such allocation of allowable, in lieu of the royalties elsewhere herein specified, except shut-in gas well royalties, Lessor shall receive on production from an area so pooled only such portion of the royalties which, in the absence of such pooling, would be payable hereunder to Lessor on production from the land covered by this lease which is placed in the pooled area bears to the amount of the surface acreage in the land covered by this lease which is placed in the pooled area bears to the amount of the surface acreage in the entire pooled area. Nothing herein contained shall authorize or affect any transfer of any title to any leasehold, royalty or other interest pooled pursuant hereto. The commencement of a well, the conduct of other drilling operations, the completion of a well or of a dry hole, or the operation of a producing well on the pooled area, shall be considered for all purposes (except for royalty purposes) the same as if said well were located upon, or such drilling operations were conducted upon the lands covered by this lease whether or not such well is located upon, or such drilling operations are conducted upon said lands. Lessee may terminate any pooling effected pursuant hereto at any time the pooled unit is not producing and no drilling operations are being conducted thereupon by executing and filing of record in the county or counties in which the pooled area is located a written declaration of the termination of such pooling, provided that the pooling of all interests not covered by this lease which comprise a part of such pooled unit be also terminated in some effective manner.

9.   Lessee shall have the right to use, free of cost, gas, oil and water found on said land for its operations, except water from the wells of the Lessor. When required by the Lessor, the Lessee shall bury its pipelines below plow depth and more than 200 feet to any house or barn or other structure on said premises as of the date of this lease without the written consent of the Lessor. Lessee shall have the right at any time during, or after the expiration of this lease to enter

upon the property and to remove all machinery, fixtures, and other structures placed on said premises, including the right to draw and remove all casing, but the Lessee shall be under no obligation to do so.

10.    Lessor hereby warrants and agrees to defend the title to the lands herein described, but if the interest of Lessor covered by this lease is expressly stated to be less than the entire fee or mineral estate, Lessor's warranty shall be limited to the interest so stated. Lessee may purchase or lease the rights of any party claiming any interest in said land and exercise such rights as may be obtained thereby but Lessee shall not suffer any forfeiture nor incur any liability to Lessor by reason thereof. Lessee shall have the right at any time to pay for Lessor, any mortgage, taxes or other lien on said lands, in the event of default of payment of Lessor, and be subrogated to the rights of the holder thereof, and any such payments made by Lessee for Lessor may be deducted from any amounts of money which may become due Lessor under this lease.

11.    In the event Lessor considers that Lessee is in breach of any of its obligations hereunder, Lessor shall notify Lessee in writing of the facts relied upon as constituting a breach hereof, and Lessee, if in breach hereof, shall have sixty days after receipt of such notice in which to commence the compliance with the obligations imposed by virtue of this lease. Until such time as Lessee has been given the above-described written notice and opportunity to cure the asserted breach, Lessee shall not be considered in default under the terms of this lease.

12.    Should Lessee be prevented from complying with any express or implied covenant of this lease, from conducting drilling or reworking operations thereon or from producing oil or gas therefrom by reason of scarcity of or inability to obtain or to use equipment or material by operation of force majeure, by any Federal or State law or any order, rule or regulation of government authority, or by any other cause beyond the reasonable control of Lessee, then while so prevented, Lessee's obligation to comply with such covenant shall be suspended, and Lessee shall not be liable in damages for failure to comply therewith; and this lease shall be extended while and so long as Lessee is so prevented by any such cause from conducting drilling or reworking operations on or from producing oil or gas from the leased premises, and the time while Lessee is so prevented shall not be counted against Lessee, anything in this lease to the contrary notwithstanding.

13.    This lease and all provisions thereof shall be applicable to, binding upon and enforceable by the parties thereto and their respective successors and assigns. Reference herein to Lessor and Lessee shall include reference to their respective successors and assigns, it being expressly agreed that Lessor and Lessee shall have the right to assign. Should anyone or more of the parties named above as Lessors not execute this lease, it shall nevertheless be binding upon the party or parties executing the same.

14.    Each wife/husband above named hereby joins in the execution and delivery of this lease for the purpose of conveying, releasing and relinquishing unto Lessee for the purpose and consideration aforesaid, all of his/her right, title, interest and estate in said land, including any rights of dower/curtsey and homestead which he/she may have therein.

EXHIBIT "A"

Attached to and made a part of that certain Oil and Gas lease dated December 10, 2008, by and between DORIS A. MOORE and RAY MOORE, Lessor and PETROHAWK PROPERTIES, LP, Lessee.

16.     Lessee, its assigns and subcontractors agree to comply with all applicable rules and regulations of the Arkansas Department of Environmental Quality and the Arkansas Oil & Gas Commission regarding the construction, operation, and closure of all slush, reserve, and other pits located upon the Lease Premises.

17.     (Arkansas Statutory Pugh Clause) The term of this oil and gas lease may be extended by production in quantities in land in one section or pooling unit in which there is production but shall not be extended in lands or sections or pooling units under the lease where there has been no production or exploration. This shall not apply when drilling operations have commenced on any part of lands in sections or pooling units under the lease within one year after the expiration of the primary term, or within one year after the completion of a well on any part of lands in sections or pooling units under the lease. (Arkansas Code 15-73-201).

18.     The Lessee agrees to pay the surface owner of the herein described lands a one-time damage payment of $2,500.00 per acre actually utilized for each well drilled on said lands. Lessee will also pay to Lessor $2.00 per lineal "running" foot for gathering lines constructed by Lessee for marketing gas.

19.     Lessor's royalty under this lease shall be one-fifth (1/5), rather than the stated one-eighth (1/8), and wherever the fraction one-eighth (1/8) is shown in the attached lease it shall be replaced by one-fifth (1/5).

20.     Lessee shall indemnify and hold Lessor harmless from any and all liability, liens, claims and environmental liability directly arising out of Lessees operations on said land conducted under the terms of this lease.

21.     Lessee's activities hereunder shall be conducted in a manner expected of a reasonably prudent operator. Lessee shall endeavor to limit the area of surface disturbance to said land affected by its operations and activities to the minimum area reasonably necessary and practical to conduct its operations.

22.     As soon as is reasonably practical following completion of its operations, Lessee shall restore the surface of said lands utilized for its well site(s) to as nearly as practical its original condition and land contour.

23.     It is the intention of Lessor herein to lease any and all mineral interest that they may own in the aforementioned Section(s), and to any and all streets, alleys, roadways, highways, ditches, creeks, canals, bayous, railroad easements, easements and/or rights-of-way, strips and/or parcels of land not described above, which are situate within and/or adjacent to the above described leased premises.

24.     Royalty shall be free of costs or deductions.

25.     Notwithstanding any provision herein to the contrary, no well shall be drilled nearer than 500 feet to any house or barn or other structure on said premises as of the date of this lease without the written consent of the Lessor.

26.     At the expiration of the primary term of this lease, if the lease is not otherwise perpetuated, Lessor agrees that they will consider an offer by Lessee to lease the lands covered hereby to Lessee in the event Lessee desires to again lease said lands.

SIGNED FOR IDENTIFICATION

_____
DORIS A. MOORE

_____
RAY MOORE

RETURN TO:
Petrohawk Energy Corporation
1100 South Yale, Ste 500
Tulsa, OK 74136
Attn: Bill Fisher

26.     At the expiration of the primary term of this Lease, if the lease is not otherwise perpetuated, Lessor agrees that they will consider an offer by Lessee to lease the lands covered hereby to Lessee in the event Lessee desires to again lease said lands.

SIGNED FOR IDENTIFICATION:

_____
DORIS A. MOORE

_____
RAY MOORE

_____
EWING BAILEY
BY DORIS MOORE, ATTORNEY IN FACT

RETURN TO:
Tomahawk Energy Corporation
6100 South Yale, Ste. 500
Tulsa, OK 74136
Attn: Tim Wilson

IN WITNESS WHEREOF, this lease is executed as of the day and year first above written.

_____
DORIS A. MOORE

_____
RAY MOORE

_____
EWING BAILEY,
By DORIS MOORE, ATTORNEY IN FACT

ACKNOWLEDGEMENT

(Individual or Joint Acknowledgement - Arkansas)

STATE OF ARKANSAS         §
                          §
COUNTY OF CLEBURNE         §

BE IT REMEMBERED that on this day came before me, the undersigned, a Notary Public within and for the County and State aforesaid, duly commissioned and acting EWING BAILEY, BY DORIS MOORE, ATTORNEY IN FACT, DORIS A. MOORE and RAY MOORE to me well known as LESSOR in the foregoing instrument, and acknowledged that he/she/they had executed the same for the consideration and purposes therein mentioned and set forth. Given under my hand and seal this _____ day of _____ 2008.

_____
Notary Public

My Commission Expires:

_____
(SEAL)

RETURN TO:
Petrohawk Energy Corporation
6100 South Yale, Ste 500
Tulsa, OK  74136
Attn:  Jim Wilson

http://greersferryrealestate.com

gfrec@greersferryrealestate.com

## The Real Estate Center, Inc.

**BOB VIERREGGER**
CRS, GRI
REALTOR - BROKER
Member, Arkansas State Million Dollar
Sales & Listing Club Since 1977



Greers Ferry Office
7962 Edgemont Road
Greers Ferry, AR 72067

Area Code 501
Bus: 825-6222
Res: 723-4347

# TOWNSHIP 11N • RANGE 11W



29

**OIL AND GAS LEASE**
(Arkansas — Paid-up)

This instrument was prepared by
Chesapeake Energy Corporation
6100 N. Western Ave.
Oklahoma City, OK 73118

Prepared By
Chesapeake Explo...ion, L.L.C.
P.O. Box 18496
Oklahoma City, OK 73154

L 0 5 2 5 9 7 3

Certificate of Record
State of Arkansas, County of Cleburne
KAREN GILES, CIRCUIT CLERK
Filed & Recorded in Cleburne County
Date 04/26/2010,09:29:29 AM
Fees $25.00
DOC # 201003822
Karen Giles, Clerk
_____ D.C.

THIS AGREEMENT made and entered into this ____9th____ day of ____March____, 20 10 , by and between:

**Harold Ray Moore and Doris A. Moore, Husband and Wife**

**49 Moore Drive**

**Greers Ferry, AR 72067**

hereinafter called Lessor and Chesapeake Exploration, L.L.C., an Oklahoma limited liability company, P.O. Box 18496, Oklahoma City, Oklahoma 73154-0496, hereinafter called Lessee.

WITNESSETH, that Lessor, for and in consideration of the sum of Ten and more Dollars ($10.00 & more) in hand paid, and of the covenants and agreements hereinafter contained and to be performed by the Lessee, does hereby grant, demise, lease and let unto said Lessee, exclusively, the hereinafter described land for the purpose of carrying on geological, geophysical, seismic, and other exploration work and drilling and operating for, producing and saving all of the oil, gas (including extinguished gas, coal seam gas, coal bed methane gas, helium and all other constituents), and other hydrocarbons and laying pipelines, together with any reversionary rights therein, situated in the County of ____Cleburne____ , State of Arkansas, and described as follows:

The East 6.00 Acres of N/2 N/2 SW/4 NE/4 and S/2 N/2 SW/4 NE/4 and S/2 SW/4 NE/4 and the NE/4 SW/4, Less and Except a 6.00 acre tract described as beginning at the Northwest Corner of the NE/4 SW/4, thence South 626.00 feet, thence East 417.50 feet, thence North 626.00 feet, thence West 417.50 feet to the point of the beginning.

of Section ____27____ , Township ____11 North____ , Range ____11 West____ , and containing ____70.000000____ acres, more or less,

and also, in addition to the above-described land, any and all strips or parcels of land, other than those constituting regular governmental subdivisions, adjoining or contiguous to the above-described land and owned or claimed by Lessor, all of the foregoing land being hereinafter referred to as leased premises. It is the intention of the Lessor herein that the leased premises cover and include all lands owned or claimed by Lessor in the above-numbered governmental section or sections, together with any and all accretions thereto whether or not herein accurately and completely described. ......

1. This Lease shall remain in force for a primary term of **Five (5)** years from ____August 31, 2010____ (herein called primary term) and so long thereafter as oil, gas or other hydrocarbons are produced from said leased premises or from lands pooled therewith.

2. Lessee shall deliver, free of cost, to Lessor at the wells, or to the credit of Lessor in the pipeline to which the wells may be connected, the equal 1/6th part of all oil and other liquid hydrocarbons produced and saved from the leased premises, or at Lessor's option, to pay Lessor for such 1/6th royalty the market price at the well for such oil and other liquid hydrocarbons of like grade and gravity prevailing on the day such oil and other liquid hydrocarbons are run from the lease stock tanks.

3. Lessee shall pay or, if required by law, contribute to be paid to Lessor 1/6th of the net proceeds realized by Lessee for all gas (including all substances contained in such gas) produced from the leased premises and sold by Lessee, less Lessor's proportionate share of taxes and all costs incurred by Lessee in delivering, processing, compressing or otherwise making such gas or other substances merchantable or enhancing the marketing thereof. If such gas is used by Lessee off the leased premises or used by Lessee for the manufacture of casinghead gasoline or other products, Lessee shall pay Lessor 1/6th of the prevailing market value at the well for the gas so used.

4. If a well capable of producing gas or gas and gas condensate in paying quantities located on the leased premises (or on acreage pooled or consolidated with all or a portion of the leased premises into a unit for the drilling or operation of such well) is at any time shut in and so gas or gas condensate therefrom is sold or used off the premises or for the manufacture of gasoline or other products, nevertheless such shut-in well shall be deemed to be a well on the leased premises producing gas in paying quantities and this Lease will continue in force during all of the time or times while such shut-in well is so shut in, whether before or after the expiration of the primary term hereof. Lessee shall use reasonable diligence to market gas or gas condensate capable of being produced from such shut-in well but shall be under no obligation to market such products under terms, conditions or circumstances which, in Lessee's judgment exercised in good faith, are unsatisfactory. If gas or gas condensate from such well is not sold or used, after the expiration of each period of one year length (annual period) during which such well is so shut in, a royalty of One Dollar ($1.00) per net royalty acre retained hereunder as of the end of such annual period; provided that, if gas or gas condensate from such well is not sold or used as aforesaid before the end of any such annual period, or if, at the end of any such annual period, this Lease is being maintained in force and effect otherwise than by reason of such shut-in well, Lessee shall not be obligated to pay or tender, for that particular annual period, said sum of money. Such payment shall be deemed a royalty under all provisions of this Lease. Lessee's failure to pay or tender such payment, for any reason, shall render Lessee liable for the amount due, but shall not operate to terminate this Lease. Such payment shall be made or tendered to Lessor at the above address or to his successors. Royalty ownership as of the last day of each such annual period as shown by Lessee's records shall govern the determination of the party or parties entitled to receive such payment.

5. Lessee hereby is given the right at its option, at any time and whether before or after production, to pool for development and operation purposes all or any part of parts of the leased premises or rights therein with any other land in the vicinity thereof, or with any leasehold, operating or other rights or interests in such other land so as to create units of such size and surface acreage as Lessee may desire but containing not more than forty-five (45) acres; provided, however, a unit may be established hereunder containing not more than 640 acres plus 10% acreage tolerance if unitized only as to gas rights or only as to gas and gas condensate, except that units pooled for oil or oil and gas for or in conjunction with representing pressure maintenance, cycling and secondary recovery operations or any one or more of same, may be formed to include no more than 320 acres. If at any time larger units are required under any then applicable law, rule, regulations or order of any governmental authority for the drilling, completion or operation of a well, or for obtaining maximum allowable for any contemplated, drilling or completed well, any such unit may be established or enlarged to conform to the size specified by such law, rule, regulation or order.

Operations on any part of any lands so pooled shall, except for the payment of royalties, be considered operations on leased premises under this Lease, and, notwithstanding the status of a well at the time of pooling, such operations shall be deemed to be in connection with a well which is commenced on leased premises under this Lease. The term "operations" as used herein shall include, without limitation, the following: commencing, construction of roadways, preparation of drillsite, drilling, testing, completing, reworking, recompleting, deepening, plugging back, repressuring, pressuring maintenance, cycling, secondary recovery operations, or the production of oil or gas, or the existence of a shut-in well capable of producing oil or gas.

There shall be allocated to the portion of leased premises included in any such pooling such proportion of the actual production from all lands so pooled as such portion as leased premises, computed on an acreage basis, bears to the entire acreage of the lands so pooled. The production so allocated shall be considered for the purposes of payment or delivery of royalty to be the entire production for the portion of leased premises included in such pooling in the same manner as though produced from such portion of leased premises under the terms of this Lease.

6. If the Lessor owns a lesser interest in the above-described land than the entire and undivided mineral estate therein, then the royalties herein provided for shall be paid to the said Lessor only in the proportion which his interest bears to the whole and undivided mineral estate.

7. If the estate of either party hereto is assigned, and the privilege of assigning in whole or in part is hereby expressly allowed, the covenants hereof shall extend to their heirs, executors, administrators, successors or assigns, but no change in the ownership of the land or the minerals in and under the same or assignment of royalties shall be binding on Lessee unless Lessee shall have been furnished ninety (90) days before payment hereunder of such royalties, with certified copies of recorded instruments showing evidence of title.



EXHIBIT
4

8. *Lessee shall have the right to use, free of cost, gas, oil and water found on said land for its operations, except water from the wells of the Lessor. When required by the Lessor, the Lessee shall bury its pipelines below plow depth and shall pay reasonable damages for injury by reason of its operations to growing crops on said land. No well shall be drilled nearer than 200 feet to any house or barn or other structure on said premises as of the date of this Lease without the written consent of the Lessor. Lessee shall have the right at any time during, or after the expiration of this Lease to enter upon the property and to remove all machinery, fixtures, and other structures placed on said premises, including the right to draw and move all casing, but the Lessee shall be under no obligation to do so.*

9. *Notwithstanding anything contained in this Lease to the contrary, it is expressly agreed that if the Lessee shall commence operations as provided herein at any time while this Lease is in force, this Lease shall remain in force and its terms shall continue so long as such operations are continued, and if production results therefrom, then as long as production is maintained.*

10. *If, after the expiration of the primary term of this Lease, production on the leased premises should cease from any cause, this Lease shall not terminate provided Lessee commences operations for additional drilling or reworking within sixty (60) days from such cessation, and this Lease shall remain in force during the prosecution of such operations and if production results therefrom, then as long as production is maintained.*

11. *Lessee may at any time surrender or cancel this Lease in whole or in part by delivering or mailing such release to the Lessor, or by placing such release of record in the proper County. In case this Lease is surrendered or cancelled as to only a portion of the acreage covered thereby, then all payments and liabilities thereafter accruing under the terms of this Lease as to the portion cancelled shall cease. As to the portion of the acreage not released, the terms and provisions of this Lease shall continue and remain in full force and effect for all purposes.*

12. *All provisions hereof, express or implied, shall be subject to all Federal and State Laws and the orders, rules, and regulations of all governmental agencies administering the same, and this Lease shall not be terminated wholly or partially, nor shall the Lessee be liable in damages for failure to comply with any of the express or implied provisions hereof if such failure accords with any such laws, orders, rules or regulations. Should the Lessee be prevented during the last year of the primary term hereof from drilling a well hereunder by the order of any constituted authority having jurisdiction, or if Lessee shall be unable during said period to drill a well hereunder due to the equipment necessary in the drilling thereof not being available for any cause, the primary term of this Lease shall continue until one year after said order is suspended or said equipment is available.*

13. *Lessor hereby warrants and agrees to defend the title to the land herein described and agrees that the Lessee, at its option, may pay or discharge in whole or in part any taxes, encumbrances, or other liens existing, levied or assessed against the above-described lands, and in the event Lessee exercises such option, it shall be subrogated to the rights of any holder or holders thereof and may reimburse itself by applying any royalty accruing hereunder to the amount of any such encumbrance, tax or other lien paid by Lessee.*

14. *Lessee hereby is given the right to acquire for its own benefit deeds, leases, or assignments covering any interest or claim in leased premises which Lessee or any other party contends is outstanding and not covered hereby and even though such outstanding interest or claim be invalid or adverse to Lessor. In the event the validity of this Lease be disputed by Lessor or by any other person, then, for the period such dispute remains undisposed of, Lessee shall be relieved of all obligations hereunder to explore or develop leased premises; all royalties or other payments which would otherwise accrue shall be suspended for such period; and this Lease automatically shall be extended for an additional period equal to the duration of such period.*

15. *If, at any time within the primary term of this Lease and while the same remains in force and effect, Lessor receives any bona fide offer, acceptable to Lessor, to grant an additional Lease (top lease) covering all or part of the afore-described lands, Lessee shall have the continuing option by meeting any such offer to acquire such top lease. Any offer must be in writing, and must set forth the proposed Lessee's name, bonus consideration and royalty consideration to be paid for such Lease, and include a copy of the Lease form to be utilized which form should reflect all pertinent and relevant terms and conditions of the top lease. Lessee shall have fifteen (15) days after receipt, from Lessor, of a complete copy of any such offer to advise Lessor in writing of its election to enter into an oil and gas Lease with Lessor on equivalent terms and conditions. If Lessee fails to notify Lessor within the aforesaid fifteen (15) day period of its election to meet any such bona fide offer, Lessor shall have the right to accept said offer.*

16. *It is specifically understood that each wife and husband named herein and executing this Lease, for the consideration above set out, and the covenants and agreements contained in this Lease to be performed by the Lessor, does hereby release and relinquish unto said Lessee all right of dower, curtesy and homestead in and to the lands covered hereby for the purpose of this Lease.*

17. *This Lease and all its terms, conditions and stipulations shall extend to and be binding on all successors in title of said Lessor or Lessee.*

18. *It is the intent of the Lessor to lease all of Lessor's interest in and to the Section described herein, whether or not the tracts recited hereon are properly described, and further it is understood that this Lease includes all rights owned by the Lessor in this Section whether or not correctly described and any other properties owned by the Lessor in the drilling and spacing unit for this well, including without limitation, strips, gores, alleyways, roadways, accretions and avulsions.*

19. *Lessor agrees not to execute any instrument extending or renewing the present existing lease. This lease covers the reversionary interest of Lessor in the Minerals underlying the leased premises and is vested in interest, but it will not vest in possession until the expiration of any prior oil and gas lease which is currently in force and effect covering the leased premises, to any of which current leases this lease is specifically subject and subordinate.*

See exhibit "A" attached hereto and made a part hereof.

IN WITNESS WHEREOF, this Lease is executed as of date first set out herein above.

---

Tax ID /SS#: _____

Tax ID /SS#: _____

*Harold Ray Moore*
Lessor: Harold Ray Moore

*Doris A. Moore*
Lessor: Doris A. Moore

STATE OF **Arkansas**

COUNTY OF **Cleburne**

ACKNOWLEDGEMENT

Before me, the undersigned Notary Public in and for the above county and state, on this day personally appeared **Harold Ray Moore and Doris A. Moore, Husband and Wife,** known to me to be the person(s) whose name(s) is/are subscribed to the foregoing instrument, and acknowledged that he/she/they executed the same as his/her/their free and voluntary act and deed for the purposes and consideration therein expressed, including the relinquishment of curtesy, dower, and homestead.

Given under my hand and seal of office this **16** day of **March** 2010.

My Commission Expires

**3-30-2018**

_____
Notary Public

SEAL

ELIZABETH K. SIMS
OFFICIAL SEAL - NOTARY PUBLIC
LONOKE COUNTY, ARKANSAS
COMMISSION # 12369027
MY COMMISSION EXPIRES 3-30-2018

Exhibit "A"
Attached hereto and made a part of that certain Oil and Gas Lease dated March 9, 2010, by and between Harold Ray Moore and Doris A. Moore, Husband and Wife as Lessor, and Chesapeake Exploration, L.L.C., an Oklahoma limited liability company, as Lessee.

It is agreed between the Lessor and Lessee that, notwithstanding any language herein to the contrary, all oil, gas or other proceeds accruing to the Lessor under this lease or by state law shall be without deduction for the cost of producing, gathering, storing, separating, treating, dehydrating, compressing, processing, transporting, and marketing the oil, gas and other products produced hereunder to transform the product into marketable form; however, any such costs which result in enhancing the value of the marketable oil, gas or other products to receive a better price may be deducted from Lessor's share of production so long as they are based on Lessee's actual cost of such enhancements. However, in no event shall Lessor receive a price that is less than, or more than, the price received by Lessee.

Signed for Identification: _____
                            Harold Ray Moore

Signed for Identification: _____
                            Doris A. Moore



## OIL AND GAS LEASE
(Arkansas — Paid-up)

This instrument was prepared by:
Chesapeake Energy Corporation
6100 N. Western Ave.
Oklahoma City, OK 73118

Prepared By:
Chesapeake Exploration, L.L.C.
P.O. Box 18496
Oklahoma City, OK 73154

Certificate of Record
State of Arkansas, County of Cleburne
KAREN GILES, CIRCUIT CLERK
Filed & Recorded in Cleburne County
Filed 04/22/2010,02:28:16 PM
Fees $25.00
DOC # 2010003754
Karen Giles, Clerk

L0519936

THIS AGREEMENT made and entered into this _____ 26th _____ day of _____ February _____ , 20 10 , by and between:

Johnny Bittle, a/k/a Johnny W. Bittle, and Linda Bittle, a/k/a Melinda Bittle, a/k/a Melinda L. Bittle, a/k/a Linda Hunt Bittle, a/k/a Linda L. Bittle, husband and wife

149 Section Line Road

Greers Ferry, AR 72067

hereinafter called Lessor and Chesapeake Exploration, L.L.C., an Oklahoma limited liability company, P.O. Box 18496, Oklahoma City, Oklahoma 73154-0496, hereinafter called Lessee.

WITNESSETH, that Lessor, for and in consideration of the sum of Ten and more Dollars ($10.00 & more) in hand paid, and of the covenants and agreements hereinafter contained and to be performed by the Lessee, does hereby grant, demise, lease and let unto said Lessee, exclusively, the hereinafter described land for the purpose of carrying on geological, geophysical, seismic, and other exploration work and drilling and operating for, producing and saving all of the oil, gas (including casinghead gas, coal seam gas, coal bed methane gas, helium and all other constituents), and other hydrocarbons and laying pipelines, together with any reversionary rights therein, situated in the County of _____ Cleburne _____ , State of Arkansas, and described as follows:

### The North 62.00 rods of the NW/4 SE/4

of Section _____ 9 _____ , Township _____ 11 North _____ , Range _____ 10 West _____ , and containing _____ 31.00 _____ acres, more or less,

and also, in addition to the above-described land, any and all strips or parcels of land, other than those constituting regular governmental subdivisions, adjoining or contiguous to the above-described land and owned or claimed by Lessor, all of the foregoing land being hereinafter referred to as leased premises. It is the intention of the Lessor herein that the leased premises cover and include all lands owned or claimed by Lessor in the above-numbered governmental section or sections, together with any and all accretions thereto whether or not herein accurately and correctly described.

1. This Lease shall remain in force for a primary term of Five (5) years from _____ October 25, 2010 _____ (herein called primary term) and so long thereafter as oil, gas or other hydrocarbons are produced from said leased premises or from lands pooled therewith.

2. Lessee shall deliver, free of cost, to Lessor at the wells, or to the credit of Lessor in the pipeline to which the wells may be connected, the equal 1/8th part of all oil and other liquid hydrocarbons produced and saved from the leased premises, or at Lessee's option, to pay Lessor for such 1/8th royalty the market price at the well for such oil and other liquid hydrocarbons of like grade and gravity prevailing on the day such oil and other liquid hydrocarbons are run from the lease stock tanks.

3. Lessee shall pay or, if required by law, contribute to be paid to Lessor 1/8th of the net proceeds realized by Lessee for all gas (including all substances contained in such gas) produced from the leased premises and sold by Lessee, less Lessor's proportionate share of taxes and all costs incurred by Lessee in delivering, processing, compressing or otherwise making such gas or other substances merchantable or enhancing the marketing thereof. If such gas is used by Lessee off the leased premises or used by Lessee for the manufacture of casinghead gasoline or other products, Lessee shall pay Lessor 1/8th of the prevailing market value at the well for the gas so used.

4. If a well capable of producing gas or gas and gas condensate in paying quantities located on the leased premises (or on acreage pooled or consolidated with all or a portion of the leased premises into a unit for the drilling or operation of such well) is at any time shut in and no gas or gas condensate therefrom is sold or used off the premises or for the manufacture of gasoline or other products, nevertheless such shut-in well shall be deemed to be a well on the leased premises producing gas in paying quantities and this Lease will continue in force during all of the time or times while such shut-in well is so shut in, whether before or after the expiration of the primary term hereof. Lessee shall use reasonable diligence to market gas or gas condensate capable of being produced from such shut-in well but shall be under no obligation to market such products under terms, conditions or circumstances which, in Lessee's judgment exercised in good faith, are unsatisfactory. Lessee shall be obligated to pay or tender to Lessor within 45 days after the expiration of each period of one year length (annual period) during which such well is so shut in, a royalty of One Dollar ($1.00) per net royalty acre retained hereunder as of the end of such annual period; provided that, if gas or gas condensate from such well is sold or used as aforesaid before the end of any such annual period, or if, at the end of any such annual period, this Lease is being maintained in force and effect otherwise than by reason of such shut-in well, Lessee shall not be obligated to pay or tender, for that particular annual period, said sum of money. Such payment shall be deemed a royalty under all provisions of this Lease. Lessee's failure to pay or tender such payment, for any reason, shall render Lessee liable for the amount due, but shall not operate to terminate this lease. Such payment shall be made or tendered to Lessor at the above address or to his successors. Royalty ownership as of the last day of each such annual period as shown by Lessee's records shall govern the determination of the party or parties entitled to receive such payment.

5. Lessee hereby is given the right at its option, at any time and whether before or after production, to pool for development and operation purposes all or any part or parts of the leased premises or rights therein with any other land in the vicinity thereof, or with any leasehold, operating or other rights or interests in such other land to create units of such size and surface acreage as Lessee may desire but containing not more than forty-five (45) acres; provided, however, a unit may be established hereunder containing not more than 640 acres plus 10% acreage tolerance if unitized only as to gas rights or only as to gas and gas condensate, except that units pooled for oil or oil and gas for or in conjunction with repressuring, pressure maintenance, cycling and secondary recovery operations or any one or more of same, may be formed to include no more than 320 acres. If at any time larger units are required under any then applicable law, rule, regulations or order of any governmental authority for the drilling, completion or operation of a well, or for obtaining maximum allowable for any contemplated, drilling or completed well, any such unit may be established or enlarged to conform to the size specified by such law, rule, regulation or order.

Operations on any part of any lands so pooled shall, except for the payment of royalties, be considered operations on leased premises under this Lease, and, notwithstanding the status of a well at the time of pooling, such operations shall be deemed to be in connection with a well which is commenced on leased premises under this Lease. The term "operations" as used herein shall include, without limitation, the following: commencing, construction of roadways, preparation of drillsite, drilling, testing, completing, reworking, recompleting, deepening, plugging back, repressuring, pressuring maintenance, cycling, secondary recovery operations, or the production of oil or gas, or the existence of a shut-in well capable of producing oil or gas.

There shall be allocated to the portion of leased premises included in any such pooling such proportion of the actual production from all lands so pooled as such portion as leased premises, computed on an acreage basis, bears to the entire acreage of the lands so pooled. The production so allocated shall be considered for the purpose of payment or delivery or royalty to be the entire production for the portion of leased premises included in such pooling in the same manner as though produced from such portion of leased premises under the terms of this Lease.

6. If the Lessor owns a lesser interest in the above-described land than the entire and undivided mineral estate therein, then the royalties herein provided for shall be paid to the said Lessor only in the proportion which his interest bears to the whole and undivided mineral estate.

7. If the estate of either party hereto is assigned, and the privilege of assigning in whole or in part is hereby expressly allowed, the covenants hereof shall extend to their heirs, executors, administrators, successors or assigns, but no change in the ownership of the land or in the minerals in and under the same or assignment of royalties shall be binding on Lessee unless Lessee shall have been furnished ninety (90) days before payment hereunder of such royalties, with certified copies of recorded instruments evidence of title.



EXHIBIT
5

8. Lessee shall have the right to use, free of cost, gas, oil and water found on said land for its operations, except water from the wells of the Lessor. When required by the Lessor, the Lessee shall bury its pipelines below plow depth and shall pay reasonable damages for injury by reason of its operations to growing crops on said land. No well shall be drilled nearer than 200 feet to any house or barn or other structure on said premises as of the date of this Lease without the written consent of the Lessor. Lessee shall have the right at any time during, or after the expiration of this Lease to enter upon the property and to remove all machinery, fixtures, and other structures placed on said premises, including the right to draw and move all casing, but the Lessee shall be under no obligation to do so.

9. Notwithstanding anything contained in this Lease to the contrary, it is expressly agreed that if the Lessee shall commence operations as provided herein at any time while this Lease is in force, this Lease shall remain in force and its terms shall continue so long as such operations are prosecuted, and if production results therefrom, then as long as production is maintained.

10. If, after the expiration of the primary term of this Lease, production on the leased premises should cease from any cause, this Lease shall not terminate provided Lessee commences operations for additional drilling or reworking within sixty (60) days from such cessation, and this Lease shall remain in force during the prosecution of such operations and if production results therefrom, then as long as production is maintained.

11. Lessee may at any time surrender or cancel this Lease in whole or in part by delivering or mailing such release to the Lessor, or by placing such release of record in the proper County. In case this Lease is surrendered or cancelled as to only a portion of the acreage covered thereby, then all payments and liabilities thereafter accruing under this Lease as to the portion cancelled shall cease. As to the portion of the acreage not released, the terms and provisions of this Lease shall continue and remain in full force and effect for all purposes.

12. All provisions hereof, express or implied, shall be subject to all Federal and State Laws and the orders, rules, and regulations of all governmental agencies administering the same, and this Lease shall not in any way be terminated wholly or partially, nor shall the Lessee be liable in damages for failure to comply with any of the express or implied provisions hereof if such failure accords with any such laws, orders, rules or regulations. Should the Lessee be prevented during the last year of the primary term hereof from drilling a well hereunder by the order of any constituted authority having jurisdiction, or if Lessee shall be unable during said period to drill a well hereunder due to the equipment necessary in the drilling thereof not being available for any cause, the primary term of this Lease shall continue until one year after said order is suspended or said equipment is available.

13. Lessor hereby warrants and agrees to defend the title to the land herein described and agrees that the Lessee, at its option, may pay or discharge in whole or in part any taxes, encumbrances, or other liens existing, levied or assessed against the above-described lands, and in the event Lessee exercises such option, it shall be subrogated to the rights of any holder or holders thereof and may reimburse itself by applying any royalty accruing hereunder to the amount of any such encumbrance, tax or other lien paid by Lessee.

14. Lessee hereby is given the right to acquire for its own benefit deeds, leases, or assignments covering any interest or claim in leased premises which Lessee or any other party contends is outstanding and not covered hereby and even though such outstanding interest or claim be invalid or adverse to Lessor. In the event the validity of this Lease is disputed by Lessor or by any other person, then, for the period such dispute remains undisposed of, Lessee shall be relieved of all obligations hereunder to explore or develop leased premises; all royalties or other payments which would otherwise accrue shall be suspended for such period; and this Lease automatically shall be extended for an additional period equal to the duration of such period.

15. If, at any time within the primary term of this Lease and while the same remains in force and effect, Lessor receives any bona fide offer, acceptable to Lessor, to grant an additional Lease (top lease) covering all or part of the afore-described lands, Lessee shall have the continuing option by meeting any such offer to acquire such top lease. Any offer must be in writing, and must set forth the proposed Lessee's name, bonus consideration and royalty consideration to be paid for such Lease, and include a copy of the Lease form to be utilized which form should reflect all pertinent and relevant terms and conditions of the top lease. Lessee shall have fifteen (15) days after receipt, from Lessor, of a complete copy of any such offer to advise Lessor in writing of its election to enter into an oil and gas Lease with Lessor on equivalent terms and conditions. If Lessee fails to notify Lessor within the aforesaid fifteen (15) day period of its election to meet any such bona fide offer, Lessor shall have the right to accept said offer.

16. It is specifically understood that each wife and husband named herein and executing this Lease, for the consideration above set out, and the covenants and agreements contained in this Lease to be performed by the Lessee, does hereby release and relinquish unto said Lessee all right of dower, curtesy and homestead in and to the lands covered hereby for the purpose of this Lease.

17. This Lease and all its terms, conditions and stipulations shall extend to and be binding on all successors in title of said Lessor or Lessee.

18. It is the intent of the Lessor to lease all of Lessor's interest in and to the Section described herein, whether or not the tracts recited hereon are properly described, and further it is understood that this Lease includes all rights owned by the Lessor in this Section whether or not correctly described and any other properties owned by the Lessor in the drilling and spacing unit for this well, including without limitation, strips, gores, alleyways, roadways, accretions and avulsions.

19. Lessor agrees not to execute any instrument extending or renewing the present existing lease. This lease covers the reversionary interest of Lessor in the Minerals underlying the leased premises and is vested in interest, but it will not vest in possession until the expiration of any prior oil and gas lease which is currently in force and effect covering the leased premises, to any of which current leases this lease is specifically subject and subordinate.

See Exhibit "A" attached hereto and made a part hereof.

IN WITNESS WHEREOF, this Lease is executed as of date first set out herein above.

Tax ID/SS#: _____

*Johnny Bittle*
Lessor: Johnny Bittle, a/k/a Johnny W. Bittle

*Linda Bittle*
Lessor: Linda Bittle, a/k/a Melinda Bittle, a/k/a Melinda L. Bittle, a/k/a Linda Hunt Bittle, a/k/a Linda L. Bittle

Tax ID/SS#: _____

STATE OF **Arkansas**
COUNTY OF **Cleburne**

**ACKNOWLEDGEMENT**

Before me, the undersigned Notary Public in and for the above county and state, on this day personally appeared Johnny Bittle, a/k/a Johnny W. Bittle, and Linda Bittle, a/k/a Melinda Bittle, a/k/a Melinda L. Bittle, a/k/a Linda Hunt Bittle, a/k/a Linda L. Bittle, husband and wife, known to me to be the person(s) whose name(s) is/are subscribed to the foregoing instrument, and acknowledged that he/she/they executed the same as his/her/their free and voluntary act and deed for the purposes and consideration therein expressed, including the relinquishment of curtesy, dower, and homestead.

Given under my hand and seal of office this _____2_____ day of _____March_____ 2010.

My Commission Expires: _____

*Vicki Miller*
Notary Public



**Exhibit "A"**

Attached hereto and made a part of that certain Oil and Gas Lease dated **February 26, 2010**, by and between <u>Johnny Bittle, a/k/a Johnny W. Bittle, and  Linda Bittle,</u> <u>a/k/a Melinda Bittle, a/k/a Melinda L. Bittle, a/k/a Linda Hunt Bittle, a/k/a Linda L. Bittle, husband and wife</u>, as Lessor, and Chesapeake Exploration, L.L.C., an Oklahoma limited liability company, as Lessee.

It is agreed between the Lessor and Lessee that, notwithstanding any language herein to the contrary, all oil, gas or other proceeds accruing to the Lessor under this lease or by state law shall be without deduction for the cost of producing, gathering, storing, separating, treating, dehydrating, compressing, processing, transporting, and marketing the oil, gas and other products produced hereunder to transform the product into marketable form; however, any such costs which result in enhancing the value of the marketable oil, gas or other products to receive a better price may be deducted from Lessor's share of production so long as they are based on Lessee's actual cost of such enhancements. However, in no event shall Lessor receive a price that is less than, or more than, the price received by Lessee.



Signed for Identification: _____
Johnny Bittle, a/k/a Johnny W. Bittle

Signed for Identification: _____
Linda Bittle, a/k/a Melinda Bittle, a/k/a Melinda L. Bittle, a/k/a Linda Hunt Bittle, a/k/a Linda L. Bittle





Certificate of Record
State of Arkansas, County of Cleburne
KAREN GILES, CIRCUIT CLERK
Filed & Recorded in Cleburne County
Date 08/03/2010,03:20:17 PM
Fees $30.00
DUC # 201007840
Karen Giles, Clerk
_____ D.C.

## OIL AND GAS LEASE
(Arkansas — Paid-up)

This instrument was prepared by:
Gateway Land Services, LLC
7100 N. Classen, Suite 400
Oklahoma City, OK 73116

L0539690

THIS AGREEMENT made and entered into this _____27th_____ day of _____May_____, 20 10 , by and between:

Johnny Bittle, a/k/a Johnny W. Bittle and Linda Bittle, a/k/a Melinda Bittle, a/k/a Melinda L. Bittle, a/k/a Linda Hunt Bittle, k/a/a Linda L. Bittle, Husband and Wife

149 Section Line Road

Green Ferry, AR. 72067

hereinafter called Lessor and Chesapeake Exploration, L.L.C., an Oklahoma limited liability company, P.O. Box 18496, Oklahoma City, Oklahoma  73154-0496, hereinafter called Lessee.

WITNESSETH, that Lessor, for and in consideration of the sum of Ten and more Dollars ($10.00 & more) in hand paid, and of the covenants and agreements, hereinafter contained and to be performed by the Lessee, does hereby grant, demise, lease and let unto said Lessee, exclusively, the hereinafter described land for the purpose of carrying on geological, geophysical, seismic, and other exploration work and drilling and operating for, producing and saving all of the oil, gas (including casinghead gas, coal seam gas, coal bed methane gas, helium and all other constituents), and other hydrocarbons and laying pipelines, together with any reversionary rights therein, situated in the County of _____Cleburne_____ , State of Arkansas, and described as follows:

**See Exhibit "A"**

of Section _____21_____ , Township _____11 North_____ , Range _____11 West_____ , and containing _____1.660000_____ acres, more or less, and also, in addition to the above-described land, any and all strips or parcels of land, other than those constituting regular governmental subdivisions, adjoining or contiguous to the above-described land and owned or claimed by Lessor, all of his foregoing land being hereinafter referred to as leased premises. It is the intention of the Lessor herein that the leased premises cover and include all lands owned or claimed by Lessor in the above-numbered governmental section or sections, together with any and all accretions thereto whether or not herein accurately and completely described.

1. This Lease shall remain in force for a primary term of Five (5) years from _____October 25, 2010_____ (herein called primary term) and so long thereafter as oil, gas or other hydrocarbons are produced from said leased premises or from lands pooled therewith.

2. Lessee shall deliver, free of cost, to Lessor at the wells, or to the credit of Lessor in the pipeline to which the wells may be connected, the equal 1/8th part of all oil and other liquid hydrocarbons produced and saved from the leased premises, or at Lessee's option, to pay Lessor for such 1/8th royalty the market price at the well for such oil and other liquid hydrocarbons of like grade and gravity prevailing on the day such oil and other liquid hydrocarbons are run from the lease stock tanks.

3. Lessee shall pay or, if required by law, contribute to be paid to Lessor 1/8th of the net proceeds realized by Lessee for all gas (including all substances contained in such gas) produced therefrom the leased premises and sold by Lessee, less Lessee's proportionate share of taxes and all costs incurred by Lessee in delivering, processing, compressing or otherwise making such gas or other substances merchantable or enhancing the marketing thereof. If such gas is used by Lessee off the leased premises or used by Lessee for the manufacture of casinghead gasoline or other products, Lessee shall pay Lessor 1/8th of the prevailing market value at the well for the gas so used.

4. If a well capable of producing gas or gas and gas condensate in paying quantities located on the leased premises (or on acreage pooled or consolidated with all or a portion of the leased premises into a unit for the drilling or operation of such well) is at any time shut in and no gas or gas condensate therefrom is sold or used off the premises or for the manufacture of gasoline or other products, nevertheless such shut-in well shall be deemed to be a well on the leased premises producing gas in paying quantities and this Lease will continue in force during all of the time or times while such shut-in well is so shut in, whether before or after the expiration of the primary term hereof. Lessee shall use reasonable diligence to market gas or gas condensate capable of being produced from such shut-in well but shall be under no obligation to market such products under terms, conditions or circumstances which, in Lessee's judgment exercised in good faith, are unsatisfactory. Lessee shall be obligated to pay or tender to Lessor within 45 days after the expiration of each period of one year length (annual period) during which such well is so shut in, a royalty of One Dollar ($1.00) per net royalty acre retained hereunder as of the end of such annual period; provided that, if gas or gas condensate from such well is sold or used as aforesaid before the end of any such annual period, or if, at the end of any such annual period, this Lease is being maintained in force and effect otherwise than by reason of such shut-in well, Lessee shall not be obligated to pay or tender, for that particular annual period, said sum of money. Such payment shall be deemed a royalty under all provisions of this Lease. Lessee's failure to pay or tender such payment, for any reason, shall render Lessee liable for the amount due, but shall not operate to terminate this Lease. Such payment shall be made or tendered to Lessor at the above address or to his successors. Royalty ownership as of the last day of each such annual period as shown by Lessee's records shall govern the determination of the party or parties entitled to receive such payment.

5. Lessee hereby is given the right at its option, at any time and whether before or after production, to pool for development and operation purposes all or any part or parts of the leased premises or rights therein with any other land in the vicinity thereof, or with any leasehold, operating or other rights or interests in such other land so as to create units of such size and surface acreage as Lessee may desire but containing not more than forty-five (45) acres; provided, however, a unit may be established hereunder containing not more than 640 acres plus 10% acreage tolerance if unitized only as to gas rights or only as to gas and gas condensate, except that units pooled for oil or oil and gas for or in conjunction with repressuring, pressure maintenance, cycling and secondary recovery operations or any one or more of same, may be formed to include no more than 320 acres. If at any time larger units are required under any then applicable law, rule, regulations or order of any governmental authority for the drilling, completion or operation of a well, or for obtaining maximum allowable for any contemplated, drilling or completed well, any such unit may be established or enlarged to conform to the size specified by such law, rule, regulation or order.

Operations on any part of any lands so pooled shall, except for the payment of royalties, be considered operations on leased premises under this Lease, and, notwithstanding the status of a well at the time of pooling, such operations shall be deemed to be in connection with a well which is commenced on leased premises under this Lease. The term "operations" as used herein shall include, without limitation, the following: commencing, construction of roadways, preparation of drillsite, drilling, testing, completing, reworking, recompleting, deepening, plugging back, repressuring, pressuring maintenance, cycling, secondary recovery operations, or the production of oil or gas, or the existence of a shut-in well capable of producing oil or gas.

There shall be allocated to the portion of leased premises included in any such pooling such proportion of the actual production from all lands so pooled as such portion as leased premises, computed on an acreage basis, bears to the entire acreage of the lands so pooled. The production so allocated shall be considered for the purpose of payment or delivery or royalty to be the entire production for the portion of leased premises included in such pooling in the same manner as though produced from such portion of leased premises under the terms of this Lease.

6. If the Lessor owns a lesser interest in the above-described land than the entire and undivided mineral estate therein, then the royalties herein provided for shall be paid to the said Lessor only in the proportion which his interest bears to the whole and undivided mineral estate.

7. If the estate of either party hereto is assigned, and the privilege of assigning in whole or in part is hereby expressly allowed, the covenants hereof shall extend to their heirs, executors, administrators, successors or assigns, but no change in the ownership of the land or the minerals in and under the same or assignment of royalties shall be binding on Lessee unless Lessee shall have been furnished ninety (90) days before payment hereunder of such royalties, with certified copies of recorded instruments showing evidence of title.





EXHIBIT
6

8. Lessee shall have the right to use, free of cost, gas, oil and water found on said land for its operations, except water from the wells of the Lessor. When required by the Lessor, the Lessee shall bury its pipelines below plow depth and shall pay reasonable damages for injury by reason of its operations to growing crops on said land. No well shall be drilled nearer than 200 feet to any house or barn or other structure on said premises as of the date of this Lease without the written consent of the Lessor. Lessee shall have the right at any time during, or after the expiration of this Lease to enter upon the property and to remove all machinery, fixtures, and other structures placed on said premises, including the right to draw and move all casing, but the Lessee shall be under no obligation to do so.

9. Notwithstanding anything contained in this Lease to the contrary, it is expressly agreed that if the Lessee shall commence operations as provided herein at any time while this Lease is in force, this Lease shall remain in force and its terms shall continue so long as such operations are prosecuted, and if production results therefrom, then as long as production is maintained.

10. If, after the expiration of the primary term of this Lease, production on the leased premises should cease from any cause, this Lease shall not terminate provided Lessee commences operations for additional drilling or reworking within sixty (60) days from such cessation, and this Lease shall remain in force during the prosecution of such operations and if production results therefrom, then as long as production is maintained.

11. Lessee may at any time surrender or cancel this Lease in whole or in part by delivering or mailing such release to the Lessor, or by placing such release of record in the proper County. In case this Lease is surrendered or cancelled as to only a portion of the acreage covered thereby, then all payments and liabilities thereafter accruing under the terms of this Lease as to the portion cancelled shall cease. As to the portion of the acreage not released, the terms and provisions of this Lease shall continue and remain in full force and effect for all purposes.

12. All provisions hereof, express or implied, shall be subject to all Federal and State Laws and the orders, rules, and regulations of all governmental agencies administering the same, and this Lease shall not be terminated wholly or partially, nor shall the Lessee be liable in damages for failure to comply with any of the express or implied provisions hereof if such failure accords with any such laws, orders, rules or regulations. Should the Lessee be prevented during the last year of the primary term hereof from drilling a well hereunder by the order of any constituted authority having jurisdiction, or if Lessee shall be unable during said period to drill a well hereunder due to the equipment necessary in the drilling thereof not being available for any cause, the primary term of this Lease shall continue until one year after said order is suspended or said equipment is available.

13. Lessor hereby warrants and agrees to defend the title to the land herein described and agrees that the Lessee, at its option, may pay or discharge in whole or in part any taxes, encumbrances, or other liens existing, levied or assessed against the above-described lands, and in the event Lessee exercises such option, it shall be subrogated to the rights of any holder or holders thereof and may reimburse itself by applying any royalty accruing hereunder to the amount of any such encumbrance, tax or other lien paid by Lessee.

14. Lessee hereby is given the right to acquire for its own benefit deeds, leases, or assignments covering any interest or claim in leased premises which Lessee or any other party contends is outstanding and not covered hereby and even though such outstanding interest or claim be invalid or adverse to Lessor. In the event the validity of this Lease be disputed by Lessor or by any other person, then, for the period such dispute remains undisposed of, Lessee shall be relieved of all obligations hereunder to explore or develop leased premises; all royalties or other payments which would otherwise accrue shall be suspended for such period; and this Lease automatically shall be extended for an additional period equal to the duration of such period.

15. If, at any time within the primary term of this Lease and while the same remains in force and effect, Lessor receives any bona fide offer, acceptable to Lessor, to grant an additional Lease (top lease) covering all or part of the afore-described lands, Lessee shall have the continuing option by meeting any such offer to acquire such top lease. Any offer must be in writing, and must set forth the proposed Lessee's name, bonus consideration and royalty consideration to be paid for such Lease, and include a copy of the Lease form to be utilized which form should reflect all pertinent and relevant terms and conditions of the top lease. Lessee shall have fifteen (15) days after receipt, from Lessor, of a complete copy of any such offer to advise Lessor in writing of its election to enter into an oil and gas Lease with Lessor on equivalent terms and conditions. If Lessee fails to notify Lessor within the aforesaid fifteen (15) day period of its election to meet any such bona fide offer, Lessor shall have the right to accept said offer.

16. It is specifically understood that each wife and husband herein and executing this Lease, for the consideration above set out, and the covenants and agreements contained in this Lease to be performed by the Lessee, does hereby release and relinquish unto said Lessee all right of dower, curtesy and homestead in and to the lands covered hereby for the purpose of this Lease.

17. This Lease and all its terms, conditions and stipulations shall extend to and be binding on all successors in title of said Lessor or Lessee.

18. It is the intent of the Lessor to lease all of Lessor's interest in and to the Section described herein, whether or not the tracts recited hereon are properly described, and other it is understood that this Lease includes all rights owned by the Lessor in this Section whether or not correctly described and any other properties owned by the Lessor in the drilling and spacing unit for this well, including without limitation, strips, gores, alleyways, roadways, accretions and avulsions.

19. Lessor agrees not to execute any instrument extending or renewing the present existing lease. This Lease covers the reversionary interest of Lessor in the Minerals underlying the leased premises and is vested in interest, but it will not vest in possession until the expiration of any prior oil and gas lease which is currently in force and effect covering the leased premises, to any of which current leases this lease is specifically subject and subordinate.

**See exhibit "B" attached hereto and made a part hereof.**

IN WITNESS WHEREOF, this Lease is executed as of date first set out herein above.

Tax ID/SS#: _____

_Johnny W. Bittle_
Lessor: Johnny Bittle, a/k/a Johnny W. Bittle

_Melinda L. Bittle_
Lessor: Linda Bittle, a/k/a Melinda Bittle, a/k/a Melinda L. Bittle, a/k/a Linda Hunt Bittle, a/k/a Linda L. Bittle

Tax ID/SS#: _____

STATE OF **Arkansas**

COUNTY OF **Lonoke**

**ACKNOWLEDGEMENT**

Before me, the undersigned Notary Public in and for the above county and state, on this day personally appeared Johnny Bittle, a/k/a Johnny W. Bittle and Linda Bittle, a/k/a Melinda Bittle, a/k/a Melinda L. Bittle, a/k/a Linda Hunt Bittle, a/k/a Linda L. Bittle, Husband and Wife, known to me to be the person(s) whose name(s) is/are subscribed to the foregoing instrument, and acknowledged that he/she/they executed the same as his/her/their free and voluntary act and deed for the purposes and consideration therein expressed, including the relinquishment of curtesy, dower, and homestead.

Given under my hand and seal of office this **11th** day of **June**, 2010.

My Commission Expires:

**3-30-2018**

_Notary Public_

SEAL

ELIZABETH K. SIMS
OFFICIAL SEAL - NOTARY PUBLIC
LONOKE COUNTY, ARKANSAS
COMMISSION # 12365027
MY COMMISSION EXPIRES 3-30-2018



**Exhibit "A"**

Attached hereto and made a part of that certain Oil and Gas Lease dated <u>May 27, 2019</u>, by and between <u>Johnny Bittle, a/k/a Johnny W. Bittle and Linda Bittle, a/k/a Melinda Bittle, a/k/a Melinda L. Bittle, a/k/a Linda Hunt Bittle, a/k/a Linda L. Bittle, Husband and Wife</u>, as Lessor, and Chesapeake Exploration, L.L.C., an Oklahoma limited liability company, as Lessee.

<u>Section 21, Township 11 North, Range 11 West:</u>

A part of the Northwest Quarter of the Northwest Quarter (NW/4 NW/4), of Section Twenty-one (21), Township Eleven (11) North, Range Eleven (11) West, Cleburne County, Arkansas, described as proceeding from a 1/2" iron rod found for the Northwest corner of Section 21, Township 11 North Range 11 West, then S87°54'48"E a distance of 355.63 feet to a 1/2" iron rod with plastic cap stamped PLS 1090; then S87°54'48"E a distance of 303.89 feet to a 3/8" iron rod with plastic cap stamped PLS 1242; then S87°54'08"E a distance of 344.66 feet to a 1/2" iron rod with plastic cap stamped PLS 1090; then S01°09'49"W a distance of 323.52 feet to a 1/2" iron rod with plastic cap stamped PLS 1090, on the Northerly Right-of-Way of Arkansas State Highway No. 92; then S54°41'44"W said right-of-way a distance of 382.37 feet to a 1/2" iron rod with plastic cap stamped PLS 1090 this being the POINT OF BEGINNING; then continue S54°41'44"W along said right-of-way a distance of 80.00 feet to a 1/2" iron rod with plastic cap stamped PLS 1090,  then leaving said right-of-way a distance N53°20'25"W along the eastern most line of said Bittle tract a distance of 200.47 feet to a 3/8" iron rod; then S55°22'32"W along the Northern line of said Bittle tract a distance of 120.08 feet to a 3/8" iron rod; then a chord bearing of N56°34'22"W a chord distance of 72.7 feet along a curve having a radius of 1,661.74 feet to a 1/2" iron rod with plastic cap stamped PLS 1090, then N09°17'06"E along said Eastern line of the Davis tract a distance of 210.72 feet to a 1/2" iron rod with plastic cap stamped PLS 1090, then leaving said line S54°14'15"E a distance of 433.30 feet to the point of beginning;

AND

A tract of land in part of the NW/4 NW/4 of Sec 21 described as follows, Beginning at the NW corner of Sec 21, thence S16°13'30"E 488.63 feet to a point on the East side of Arkansas Highway # 16 right-of-way, thence S58°53'E on a cord distance 445.55 feet to the true point of beginning, said point being on the north right-of-way line of Arkansas State Highway #92, thence N56°29'E and with said Highway right-of-way line 120 feet, thence N51°59'15"W cord distance and leave said right-of-way 200 feet, thence S56°29'W 120 feet to a point on PL Arc of Davis, thence S51°59'15"E 200 feet on a cord distance to the point of beginning.



Signed for Identification: _____
                          Johnny Bittle, a/k/a Johnny W. Bittle

Signed for Identification: _____
                          Linda Bittle, a/k/a Melinda Bittle, a/k/a Melinda L. Bittle,
                          a/k/a Linda Hunt Bittle, a/k/a Linda L. Bittle

Copy
prop
desc.



**Exhibit "B"**

Attached hereto and made a part of that certain Oil and Gas Lease dated May 27, 2010, by and between Johnny Bittle, a/k/a Johnny W. Bittle and Linda Bittle, a/k/a Melinda Bittle, a/k/a Melinda L. Bittle, a/k/a Linda Hunt Bittle, a/k/a Linda L. Bittle, Husband and Wife, as Lessor, and Chesapeake Exploration, L.L.C., an Oklahoma limited liability company, as Lessee.

It is agreed between the Lessor and Lessee that, notwithstanding any language herein to the contrary, all oil, gas or other proceeds accruing to the Lessor under this lease or by state law shall be without deduction for the cost of producing, gathering, storing, separating, treating, dehydrating, compressing, processing, transporting, and marketing the oil, gas and other products produced hereunder to transform the product into marketable form; however, any such costs which result in enhancing the value of the marketable oil, gas or other products to receive a better price may be deducted from Lessor's share of production so long as they are based on Lessee's actual cost of such enhancements.  However, in no event shall Lessor receive a price that is less than, or more than, the price received by Lessee.

Signed for Identification: _____

Johnny Bittle, a/k/a Johnny W. Bittle

Prepared By:
Chesapeake Exploration, L.L.C.
P.O. Box 18496
Oklahoma City, OK 73154

Signed for Identification: _____

Linda Bittle, a/k/a Melinda Bittle, a/k/a Melinda L. Bittle,
a/k/a Linda Hunt Bittle, a/k/a Linda L. Bittle



**OIL AND GAS LEASE**
(Arkansas — Paid-up)

This instrument was prepared by:
Gateway Land Services, LLC
7100 N. Classen, Suite 400
Oklahoma City, OK 73116

**L0539691**

Certificate of Record
State of Arkansas, County of Cleburne
KAREN GILES, CIRCUIT CLERK
Filed & Recorded in Cleburne County
Date 08/03/2010,03:20:22 PM
Fees $25.00
DOC: # 201007845
Karen Giles, Clerk
_____ D.C.

THIS AGREEMENT made and entered into this ___27th___ day of ___May___ , 20 10 , by and between:

Johnny Bittle, a/k/a Johnny W. Bittle and Linda Bittle, a/k/a Melinda Bittle, a/k/a Melinda L. Bittle, a/k/a Linda Hunt Bittle, a/k/a Linda L. Bittle, Husband and Wife

149 Section Line Road
Greers Ferry, AR. 72067

hereinafter called Lessor and Chesapeake Exploration, L.L.C., an Oklahoma limited liability company, P.O. Box 18496, Oklahoma City, Oklahoma 73154-0496, hereinafter called Lessee.

WITNESSETH, that Lessor, for and in consideration of the sum of Ten and more Dollars ($10.00 & more) in hand paid, and of the covenants and agreements hereinafter contained and to be performed by Lessee, does hereby grant, demise, lease and let unto said Lessee, exclusively, the hereinafter described land for the purpose of carrying on geological, geophysical, seismic, and other exploration work and drilling and operating for, producing and saving all of the oil, gas (including casinghead gas, coal seam gas, coal bed methane gas, helium and all other constituents), and other constituents, and laying pipelines, together with any reversionary rights therein, situated in the County of ___Cleburne___ , State of Arkansas, and described as follows:

Part of the SE/4 SE/4 more particularly described as beginning at the NW corner of the SE/4 SE/4 and thence running S 87°18'27" E 17.26 feet to the true point of beginning; thence S47°18'27" E 730.49 feet; thence S01°14'16" W 333.67 feet to the centerline of the Arkansas State Highway No. 92; thence S 73°36'14" W343.74 feet; thence N 16°17'31" W 40.50 feet; thence S 75°14'16" W 310.46 feet; thence S 78°47'46" W 96.26 feet; thence N 01°14'16" E 827.81 feet to the point of beginning.

of Section ___18___ , Township ___11 North___ , Range ___11 West___ , and containing ___7.250000___ acres, more or less, and also, in addition to the above-described land, any and all strips or parcels of land, other than those constituting regular governmental subdivisions, adjoining or contiguous to the above-described land and owned or claimed by Lessor, all of the foregoing land being hereinafter referred to as leased premises. It is the intention of the Lessor herein that the leased premises cover and include all lands owned or claimed by Lessor in the above-numbered governmental section or sections, together with any and all accretions thereto whether or not herein accurately and completely described.

1. This Lease shall remain in force for a primary term of ___Five (5)___ years from ___October 25, 2010___ (herein called primary term) and so long thereafter as oil, gas or other hydrocarbons are produced from said leased premises or from lands pooled therewith.

2. Lessee shall deliver, free of cost, to Lessor at its wells, or to the credit of Lessor in the pipeline to which the wells may be connected, the equal 1/8th part of all oil other liquid hydrocarbons produced and saved from the leased premises, or at Lessee's option, to pay Lessor for such 1/8th royalty the market price at the well for such oil other liquid hydrocarbons of like grade and gravity prevailing on the day such oil and other liquid hydrocarbons are run from the lease stock tanks.

3. Lessee shall pay or, if required by law, contribute to be paid to Lessor 1/8th of the net proceeds realized by Lessee for all gas (including all substances contained in such gas) produced from the leased premises and sold by Lessee, less Lessor's proportionate share of taxes and all costs incurred by Lessee in delivering, processing, compressing or otherwise making such gas or other substances merchantable or enhancing the marketing thereof. If such gas is used by Lessee off the leased premises or used by Lessee for the manufacture of casinghead gasoline or other products, Lessee shall pay Lessor 1/8th of the prevailing market value at the well for the gas so used.

4. If a well capable of producing gas or gas and gas condensate in paying quantities located on the leased premises (or on acreage pooled or consolidated with all or a portion of the leased premises into a unit for the drilling or operation of such well) is at any time shut in and no gas or gas condensate therefrom is sold or used off the premises or for the manufacture of gasoline or other products, nevertheless such shut-in well shall be deemed to be a well on the leased premises producing gas in paying quantities and this Lease will continue in force during all of the time or times while such shut-in well is so shut in, whether before or after the expiration of the primary term hereof. Lessee shall use reasonable diligence to market gas or gas condensate capable of being produced from such shut-in well but shall be under no obligation to market such products under terms, conditions or circumstances which, in Lessee's judgment exercised in good faith, are unsatisfactory. Lessee shall be obligated to pay or tender to Lessor within 45 days after the expiration of each period of one year length (annual period) during which such well is so shut in, a royalty of One Dollar ($1.00) per net royalty acre retained hereunder as of the end of such annual period; provided that, if gas or gas condensate from such well is sold or used as aforesaid before the end of any such annual period, or if, at the end of any such annual period, this Lease is being maintained in force and effect otherwise than by reason of such shut-in well, Lessee shall not be obligated to pay or tender, for that particular annual period, said sum of money. Such payment shall be deemed a royalty under all provisions of this Lease. Lessee's failure to pay or tender such payment, for any reason, shall render Lessee liable for the amount due, but shall not operate to terminate this Lease. Such payment shall be made or tendered to Lessor at the above address or to his successors. Royalty ownership as of the last day of each such annual period as shown by Lessee's records shall govern the determination of the party or parties entitled to receive such payment.

5. Lessee hereby is given the right at its option, at any time and whether before or after production, to pool for development and operation purposes all or any part or parts of the leased premises or rights therein with any other land or lands in the vicinity thereof, or with any leasehold, operating or other rights or interests in such other land so as to create units of such size and surface acreage as Lessee may desire but containing not more than forty-five (45) acres; provided, however, a unit may be established hereunder containing not more than 640 acres plus 10% acreage tolerance if unitized only as to gas rights or only as to gas and gas condensate, except that units pooled for oil or oil and gas for or in conjunction with repressuring, pressure maintenance, cycling and secondary recovery operations or any one or more of same, may be formed to include no more than 320 acres. If at any time larger units are required under any then applicable law, rule, regulations or order of any governmental authority for the drilling, completion or operation of a well, or for obtaining maximum allowable for any contemplated, drilling or completed well, any such unit may be established or enlarged to conform to the size specified by such law, rule, regulation or order.

Operations on any part of any lands so pooled shall, except for the payment of royalties, be considered operations on leased premises under this Lease, and, notwithstanding the status of a well at the time of pooling, such operations shall be deemed to be in connection with a well which is commenced on leased premises under this Lease. The term "operations" as used herein shall include, without limitation, the following: commencing, construction of roadways, preparation of drillsite, drilling, testing, completing, reworking, recompleting, deepening, plugging back, repressuring, pressuring maintenance, cycling, secondary recovery operations, or the production of oil or gas, or the existence of a shut-in well capable of producing oil or gas.

There shall be allocated to the portion of leased premises included in any such pooling such proportion of the actual production from all lands so pooled as such portion as leased premises, computed on an acreage basis, bears to the entire acreage of the lands so pooled. The production so allocated shall be considered for the purpose of payment or delivery or royalty to be the entire production from the leased premises for the portion of leased premises included in such pooling in the same manner as though produced from such portion of leased premises under the terms of this Lease.

6. If the Lessor owns a lesser interest in the above-described land than the entire and undivided mineral estate therein, then the royalties herein provided for shall be paid to the said Lessor only in the proportion which his interest bears to the whole and undivided mineral estate.

7. If the estate of either party hereto is assigned, and the privilege of assigning in whole or in part is hereby expressly allowed, the covenants hereof shall extend to their heirs, executors, administrators, successors or assigns, but no change in the ownership of the land or the minerals in and under the same or assignment of royalties shall be binding on Lessee unless Lessee shall have been furnished ninety (90) days before payment hereunder of such royalties, with certified copies of recorded instruments evidencing title.



EXHIBIT
7

8. Lessee shall have the right to use, free of coal, gas, oil and water found on said land for its operations, except water from the wells of the Lessor. When required by the Lessor, the Lessee shall bury its pipelines below plow depth and shall pay reasonable damages for injury by reason of its operations to growing crops on said land. No well shall be drilled nearer than 200 feet to any house or barn or other structure on said premises as of the date of this Lease without the written consent of the Lessor. Lessee shall have the right at any time during, or after the expiration of this Lease to enter upon the property and to remove all machinery, fixtures, and other structures placed on said premises, including the right to draw and move all casing, but the Lessee shall be under no obligation to do so.

9. Notwithstanding anything contained in this Lease to the contrary, it is expressly agreed that if the Lessee shall commence operations as provided herein at any time while this Lease is in force, this Lease shall remain in force and its terms shall continue so long as such operations are prosecuted, and if production results therefrom, then as long as production is maintained.

10. If, after the expiration of the primary term of this Lease, production on the leased premises should cease from any cause, this Lease shall not terminate provided Lessee commences operations for additional drilling or reworking within sixty (60) days from such cessation, and this Lease shall remain in force during the prosecution of such operations and if production results therefrom, then as long as production is maintained.

11. Lessee may at any time surrender or cancel this Lease in whole or in part by delivering or mailing such release to the Lessor, or by placing such release of record in the proper County. In case this Lease is surrendered or cancelled as to only a portion of the acreage covered thereby, then all payments and liabilities thereafter accruing under the terms of this Lease as to the portion cancelled shall cease. As to the portion of the acreage not released, the terms and provisions of this Lease shall continue and remain in full force and effect for all purposes.

12. All provisions hereof, express or implied, shall be subject to all Federal and State Laws and the orders, rules, and regulations of all governmental agencies administering the same, and this Lease shall not in any way be terminated wholly or partially, nor shall the Lessee be liable in damages for failure to comply with any of the express or implied provisions hereof if such failure results wholly or in part from any laws, orders, rules or regulations. Should the Lessee be prevented during the last year of the primary term hereof from drilling a well hereunder by the order of any constituted authority having jurisdiction, or if Lessee shall be unable during said period to drill a well hereunder due to the equipment necessary in the drilling thereof not being available for any cause, the primary term of this Lease shall continue until one year after said order is suspended or said equipment is available.

13. Lessor hereby warrants and agrees to defend the title to the land herein described and agrees that the Lessee, at its option, may pay or discharge in whole or in part any taxes, encumbrances, or other liens existing, levied or assessed against the above-described lands, and in the event Lessee exercises such option, it shall be subrogated to the rights of any holder or holders thereof and may reimburse itself by applying any royalty accruing hereunder to the amount of any such encumbrance, tax or other lien paid by Lessee.

14. Lessee hereby is given the right to acquire for its own benefit deeds, leases, or assignments covering any interest or claim in leased premises which Lessee or any other party contends is outstanding and not covered hereby and even though such outstanding interest or claim be invalid or adverse to Lessor. In the event the validity of this Lease be disputed by Lessor or by any other person, then, for the period such dispute remains undisposed of, Lessee shall be relieved of all obligations hereunder to explore or develop leased premises; all royalties or other payments which would otherwise accrue shall be suspended for such period; and this Lease automatically shall be extended for an additional period equal to the duration of such period.

15. If, at any time within the primary term of this Lease and while the same remains in force and effect, Lessor receives any bona fide offer, acceptable to Lessor, to grant an additional Lease (top lease) covering all or part of the afore-described lands, Lessee shall have the continuing option by meeting any such offer to acquire such top lease. Any offer must be in writing, and must set forth the proposed Lessee's name, bonus consideration and royalty consideration to be paid for such Lease, and include a copy of the Lease form to be utilized which form should reflect all pertinent and relevant terms and conditions of the top lease. Lessee shall have fifteen (15) days after receipt from Lessor, of a complete copy of any such offer to advise Lessor in writing of its election to enter into an oil and gas Lease with Lessor on equivalent terms and conditions. If Lessee fails to notify Lessor within the aforesaid fifteen (15) day period of its election to meet any such bona fide offer, Lessor shall have the right to accept said offer.

16. It is specifically understood that each wife and husband named herein and executing this Lease, for the consideration above set out, and the covenants and agreements contained in this Lease to be performed by the Lessee, does hereby release and relinquish unto said Lessee all right of dower, curtesy and homestead in and to the lands covered hereby for the purpose of this Lease.

17. This Lease and all its terms, conditions and stipulations shall extend to and be binding on all successors in title of said Lessor or Lessee.

18. It is the intent of the Lessor to lease all of Lessor's interest in and to the Section described herein, whether or not the tracts recited hereon are properly described, and whether it is understood that this Lease includes all rights owned by the Lessor in this Section whether or not correctly described and any other properties owned by the Lessor for the drilling and spacing unit for this well, including without limitation, strips, gores, alleyways, roadways, accretions and avulsions.

19. Lessor agrees not to execute any instrument extending or renewing the present existing lease. This lease covers the reversionary interest of Lessor in the Minerals underlying the leased premises and is vested in interest, but it will not vest in possession until the expiration of any prior oil and gas lease which is currently in force and effect covering the leased premises, to any of which current leases this lease is specifically subject and subordinate.

See exhibit "A" attached hereto and made a part hereof.

IN WITNESS WHEREOF, this Lease is executed as of date first set out herein above.

Tax E___.

_Johnny W. Bittle_
Lessor: Johnny Bittle, a/k/a Johnny W. Bittle

_Melinda L. Bittle_
Lessor: Linda Bittle, a/k/a Melinda Bittle, a/k/a Linda Hunt Bittle, a/k/a Linda L. Bittle

Tax ID/SS#:

## ACKNOWLEDGEMENT

STATE OF _Arkansas_

COUNTY OF _Lonoke_

Before me, the undersigned Notary Public in and for the above county and state, on this day personally appeared Johnny Bittle, a/k/a Johnny W. Bittle and Linda Bittle, a/k/a Melinda Bittle, a/k/a Melinda L. Bittle, a/k/a Linda Hunt Bittle, a/k/a Linda L. Bittle, Husband and Wife, known to me to be the person(s) whose name(s) is/are subscribed to the foregoing instrument, and acknowledged that he/she/they executed the same as his/her/their free and voluntary act and deed for the purposes and consideration therein expressed, including the relinquishment of curtesy, dower, and homestead.

Given under my hand and seal of office this _11th_ day of _June_, 2010.

My Commission Expires:

3-30-2018

SEAL

ELIZABETH K. SIMS
OFFICIAL SEAL - NOTARY PUBLIC
LONOKE COUNTY, ARKANSAS
COMMISSION # 12365027
MY COMMISSION EXPIRES 3-30-2018



**Exhibit "A"**

Attached hereto and made a part of that certain Oil and Gas Lease dated <u>May 27, 2010</u>, by and between <u>Johnny Bittle, a/k/a Johnny W. Bittle and Linda Bittle, a/k/a Melinda Bittle, a/k/a Melinda L. Bittle, a/k/a Linda Hunt Bittle, a/k/a Linda L. Bittle, Husband and Wife</u>, as Lessor, and Chesapeake Exploration, L.L.C., an Oklahoma limited liability company, as Lessee.

It is agreed between the Lessor and Lessee that, notwithstanding any language herein to the contrary, all oil, gas or other proceeds accruing to the Lessor under this lease or by state law shall be without deduction for the cost of producing, gathering, storing, separating, treating, dehydrating, compressing, processing, transporting, and marketing the oil, gas and other products produced hereunder to transform the product into marketable form; however, any such costs which result in enhancing the value of the marketable oil, gas or other products to receive a better price may be deducted from Lessor's share of production so long as they are based on Lessee's actual cost of such enhancements.  However, in no event shall Lessor receive a price that is less than, or more than, the price received by Lessee.

Signed for Identification: _____
Johnny Bittle, a/k/a Johnny W. Bittle

Signed for Identification: _____
Linda Bittle, a/k/a Melinde Bittle, a/k/a Melinda L. Bittle,
a/k/a Linda Hunt Bittle, a/k/a Linda L. Bittle

Prepared By:
Chesapeake Exploration, L.L.C.
P.O. Box 18496
Oklahoma City, OK  73154



Certificate of Record
State of Arkansas, County of Cleburne
KAREN GILES, CIRCUIT CLERK
Filed & Recorded in Cleburne County
Date 08/03/2010,03:20:21 PM
Fees $25.00
DOC: # 201007844
Karen Giles, Clerk

_____ D.C.

**OIL AND GAS LEASE**
(Arkansas — Paid-up)

This instrument was prepared by:
Gateway Land Services, LLC
7100 N. Classen, Suite 400
Oklahoma City, OK 73116

**L 0539692**

THIS AGREEMENT made and entered into this _____27th____ day of _____May____, 20 10 , by and between:

Johnny Bittle, a/k/a Johnny W. Bittle and Linda Bittle, a/k/a Melinda Bittle, a/k/a Melinda L. Bittle, a/k/a Linda Hunt Bittle, a/k/a Linda L. Bittle, Husband and Wife
149 Section Line Road
Greers Ferry, AR. 72067

hereinafter called Lessor and Chesapeake Exploration, L.L.C., an Oklahoma limited liability company, P.O. Box 18496, Oklahoma City, Oklahoma 73154-0496, hereinafter called Lessee.

WITNESSETH, that Lessor, for and in consideration of the sum of Ten and more Dollars ($10.00 & more) in hand paid, and of the covenants and agreements hereinafter contained and to be performed by the Lessee, does hereby grant, demise, lease and let unto said Lessee, the hereinafter described land for the purpose of carrying on geological, geophysical, seismic, and other exploration work and drilling and operating for, producing and saving all of the oil, gas (including casinghead gas, coal seem gas, coal bed methane gas, helium and all other constituents), and other hydrocarbons and laying pipelines, together with any reversionary rights therein, situated in the County of _____Cleburne_____ , State of Arkansas, and described as follows:

**N/2 NW/4**

of Section _____22_____ , Township _____11 North____ , Range _____11 West____ , and containing _____80.000000_____ acres, more or less, and also, in addition to the above-described land, any and all strips or parcels of land, other than those constituting regular governmental subdivisions, adjoining or contiguous to the above-described land and owned or claimed by Lessor, all of the foregoing land being hereinafter referred to as leased premises. It is the intention of the Lessor herein that the leased premises cover and include all lands owned or claimed by Lessor in the above-numbered governmental section or sections, together with any and all accretions thereto whether or not herein accurately and completely described.

1. This Lease shall remain in force for a primary term of Five (5) years from _____October 25, 2010_____ (herein called primary term) and so long thereafter as oil, gas or other hydrocarbons are produced from said premises or from lands pooled therewith.

2. Lessee shall deliver, free of cost, to Lessor at the wells, or to the credit of Lessor in the pipeline to which the wells may be connected, the equal 1/8th part of all oil and other liquid hydrocarbons produced and saved from the leased premises, or at Lessee's option, to pay Lessor for such 1/8th royalty the market price at the well for such oil and other liquid hydrocarbons of like grade and gravity prevailing on the day such oil and other liquid hydrocarbons are run from the lease stock tanks.

3. Lessee shall pay or, if required by law, contribute to be paid to Lessor 1/8th of the net proceeds realized by Lessee for all gas (including all substances contained in such gas) produced from the leased premises and sold by Lessee, less Lessor's proportionate share of taxes and all costs incurred by Lessee in delivering, processing, compressing or otherwise making such gas or other substances merchantable or enhancing the marketing thereof. If such gas is used by Lessee off the leased premises or used by Lessee for the manufacture of casinghead gasoline or other products, Lessee shall pay Lessor 1/8th of the prevailing market value at the well for the gas so used.

4. If a well capable of producing gas or gas and gas condensate in paying quantities located on the leased premises (or on acreage pooled or consolidated with all or a portion of the leased premises into a unit for the drilling or operation of such well) is at any time shut in and no gas or gas condensate therefrom is sold or used off the premises or for the manufacture of gasoline or other products, nevertheless such shut-in well shall be deemed to be a well on the leased premises producing gas in paying quantities and this Lease will continue in force during all of the time or times while such shut-in well is so shut in, whether before or after the expiration of the primary term hereof. Lessee shall use reasonable diligence to market gas or gas condensate capable of being produced from such shut-in well but shall be under no obligation to market such products under terms, conditions or circumstances which, in Lessee's judgment exercised in good faith, are unsatisfactory. Lessee shall be obligated to pay or tender to Lessor within 45 days after the expiration of each period of one year length (annual period) during which such well is so shut in, a royalty of One Dollar ($1.00) per net royalty acre retained hereunder as of the end of such annual period; provided that, if gas or gas condensate from such well is sold or used as aforesaid before the end of any such annual period, or if, at the end of any such annual period, this Lease is being maintained in force and effect otherwise than by reason of such shut-in well, Lessee shall not be obligated to pay or tender, for that particular annual period, said sum of money. Such payment shall be deemed a royalty under all provisions of this Lease. Lessee's failure to pay or tender such payment, for any reason, shall render Lessee liable for the amount due, but shall not operate to terminate this Lease. Such payment shall be made or tendered to Lessor at the above address or to his successors. Royalty ownership as of the last day of each such annual period as shown by Lessee's records shall govern the determination of the party or parties entitled to receive such payment.

5. Lessee hereby is given the right at its option, at any time and whether before or after production, to pool for development and operation purposes all or any part or parts of the leased premises or rights therein with any other land in the vicinity thereof, or with any leasehold, operating or other rights or interests in such other land so as to create units of such size and surface acreage as Lessee may desire but containing not more than forty-five (45) acres; provided, however, a unit may be established hereunder containing not more than 640 acres plus 10% acreage tolerance if utilized only as to gas rights or only as to gas and gas condensate, except that units pooled for oil or oil and gas for or in conjunction with repressuring, pressure maintenance, cycling and secondary recovery operations or any one or more of same, may be formed to include no more than 320 acres. If at any time larger units are required under any then applicable law, rule, regulations or order of any governmental authority for the drilling, completion or operation of a well, or for obtaining maximum allowable for any contemplated, drilling or completed well, any such unit may be established or enlarged to conform to the size specified by such law, rule, regulation or order.

Operations on any part of any lands so pooled shall, except for the payment of royalties, be considered operations on leased premises under this Lease, and, notwithstanding the status of a well at the time of pooling, such operations shall be deemed to be in connection with a well which is commenced on leased premises under this Lease. The term "operations" as used herein shall include, without limitation, the following: commencing, construction of roadways, preparation of drillsite, drilling, testing, completing, reworking, recompleting, deepening, plugging back, repressuring, pressuring maintenance, cycling, secondary recovery operations, or the production of oil or gas, or the existence of a shut-in well capable of producing oil or gas.

There shall be allocated to the portion of leased premises included in any such pooling such proportion of the actual production from all lands so pooled as such portion of leased premises, computed on an acreage basis, bears to the entire acreage of the lands so pooled. The production so allocated shall be considered for the purpose of payment or delivery or royalty to be the entire production for the portion of leased premises included in such pooling in the same manner as though produced from such portion of leased premises under the terms of this Lease.

6. If the Lessor owns a lesser interest in the above-described land than the entire and undivided mineral estate therein, then the royalties herein provided for shall be paid to the said Lessor only in the proportion which his interest bears to the whole and undivided mineral estate.

7. If the estate of either party hereto is assigned, and the privilege of assigning in whole or in part is hereby expressly allowed, the covenants hereof shall extend to their heirs, executors, administrators, successors or assigns, but no change in the ownership of the land or the minerals in and under the same or assignment of royalties shall be binding on Lessee unless Lessee shall have been furnished ninety (90) days before hereunder of such royalties, with certified copies of recorded instruments showing evidence of title.



EXHIBIT
8

8. Lessee shall have the right to use, free of cost, gas, oil and water found on said land for its operations, except water from the wells of the Lessor. When required by the Lessor, the Lessee shall bury its pipelines below plow depth and shall pay reasonable damages for injury by reason of its operations to growing crops on said land. No well shall be drilled nearer than 200 feet to any house or barn or other structure on said premises as of the date of this Lease without the written consent of the Lessor. Lessee shall have the right at any time during, or after the expiration of this Lease to enter upon the property and to remove all machinery, fixtures, and other structures placed on said premises, including the right to draw and move all casing, but the Lessee shall be under no obligation to do so.

9. Notwithstanding anything contained in this Lease to the contrary, it is expressly agreed that if the Lessee shall commence operations as provided herein at any time while this Lease is in force, this Lease shall remain in force and its terms shall continue so long as such operations are prosecuted, and if production results therefrom, then as long as production is maintained.

10. If, after the expiration of the primary term of this Lease, production on the leased premises should cease from any cause, this Lease shall not terminate provided Lessee commences operations for additional drilling or reworking within sixty (60) days from such cessation, and this Lease shall remain in force during the prosecution of such operations and if production results therefrom, then as long as production is maintained.

11. Lessee may at any time surrender or cancel this Lease in whole or in part by delivering or mailing such release to the Lessor, or by placing such release of record in the proper County. In case this Lease is surrendered or cancelled as to only a portion of the acreage covered thereby, then all payments and liabilities thereafter accruing under the terms of this Lease as to the portion cancelled shall cease. As to the portion of the acreage not released, the terms and provisions of this Lease shall continue and remain in full force and effect for all purposes.

12. All provisions hereof, express or implied, shall be subject to all Federal and State Laws and the orders, rules, and regulations of all governmental agencies administering the same, and this Lease shall not in any way be terminated wholly or partially, nor shall the Lessee be liable in damages for failure to comply with any of the express or implied provisions hereof if such failure accords with any such laws, orders, rules or regulations. Should the Lessee be prevented during the last year of the primary term hereof from drilling a well hereunder by the order of any constituted authority having jurisdiction, or if Lessee shall be unable during said period to drill a well hereunder due to the equipment necessary in the drilling thereof not being available for any cause, the primary term of this Lease shall continue until one year after said order is suspended or said equipment is available.

13. Lessor hereby warrants and agrees to defend the title to the land herein described and agrees that the Lessee, at its option, may pay or discharge in whole or in part any taxes, encumbrances, or other liens existing, levied or assessed against the above-described lands, and in the event Lessee exercises such option, it shall be subrogated to the rights of any holder or holders thereof and may reimburse itself by applying any royalty accruing hereunder to the amount of any such encumbrance, tax or other lien paid by Lessee.

14. Lessee hereby is given the right to acquire for its own benefit deeds, leases, or assignments covering any interest or claim in leased premises which Lessee or any other party contends is outstanding and not covered hereby and even though such adverse interest or claim be invalid or adverse to Lessor. In the event the validity of this Lease is disputed by Lessor or by any other person, then, for the period such dispute remains undisposed of, Lessee shall be relieved of all obligations hereunder to explore or develop leased premises; all royalties or other payments which would otherwise accrue shall be suspended for such period; and this Lease shall be extended for an additional period equal to the duration of such period.

15. If, at any time within the primary term of this Lease and while the same remains in force and effect, Lessor receives any bona fide offer, acceptable to Lessor, to grant an additional Lease (top lease) covering all or part of the afore-described lands, Lessee shall have the continuing option by meeting any such offer to acquire such top lease. Any offer must be in writing, and must set forth the proposed Lessee's name, bonus consideration and royalty consideration to be paid for such Lease, and include a copy of the Lease form to be utilized which form should reflect all pertinent and relevant terms and conditions of the top lease. Lessee shall have fifteen (15) days after receipt, from Lessor, of a complete copy of any such offer to advise Lessor in writing of its election to enter into an oil and gas Lease with Lessor on equivalent terms and conditions. If Lessee fails to notify Lessor within the aforesaid fifteen (15) day period of its election to meet any such bona fide offer, Lessor shall have the right to accept said offer.

16. It is specifically understood that each wife and husband named herein and executing this Lease, for the consideration above set out, and the covenants and agreements contained in this Lease to be performed by the Lessee, does hereby release and relinquish unto said Lessee all right of dower, curtesy and homestead in and to the lands covered hereby for the purpose of this Lease.

17. This Lease and all its terms, conditions and stipulations shall extend to and be binding on all successors in title of said Lessor or Lease.

18. It is the intent of the Lessor to lease all of Lessor's interest in and to the Section described herein, whether or not the tracts recited hereon are properly described, and further it is understood that this Lease includes all rights owned by Lessor in this Section whether or not correctly described and any other properties owned by the Lessor in the drilling and spacing unit for this well, including without limitation, strips, gores, alleyways, roadways, accretions and avulsions.

19. Lessor agrees not to execute any instrument extending or renewing the present existing lease. This Lease covers the reversionary interest of Lessor in the Minerals underlying the leased premises and is vested in interest, but it will not vest in possession until the expiration of any prior oil and gas lease which is currently in force and effect covering the leased premises, to any of which current leases this lease is specifically subject and subordinate.

**See exhibit "A" attached hereto and made a part hereof.**

IN WITNESS WHEREOF, this Lease is executed as of date first set out herein above.

Tax ID/SS#: _____

_Johnny W Bittle_
Lessor Johnny Bittle, a/k/a Johnny W. Bittle

Tax ID/SS#: _____

_Melinda L Bittle_
Lessor: Linda Bittle, a/k/a Melinda Bittle, a/k/a Melinda L. Bittle, a/k/a Linda Hunt Bittle, a/k/a Linda L. Bittle

**ACKNOWLEDGEMENT**

STATE OF Arkansas

COUNTY OF Lonoke

Before me, the undersigned Notary Public in and for the above county and state, on this day personally appeared Johnny Bittle, a/k/a Johnny W. Bittle and Linda Bittle, a/k/a Melinda Bittle, a/k/a Melinda L. Bittle, a/k/a Linda Hunt Bittle, a/k/a Linda L. Bittle, Husband and Wife, known to me to be the person(s) whose name(s) is/are subscribed to the foregoing instrument, and acknowledged that he/she/they executed the same as his/her/their free and voluntary act and deed for the purposes and consideration therein expressed, including the relinquishment of curtesy, dower, and homestead.

Given under my hand and seal of office this ___11___ day of ___June___, 2010.

My Commission Expires:

3-30-2018

SEAL

ELIZABETH K. SIMS
OFFICIAL SEAL - NOTARY PUBLIC
LONOKE COUNTY, ARKANSAS
COMMISSION # 12355027
MY COMMISSION EXPIRES 3-30-2018

_____
Notary Public



**Exhibit "A"**

Attached hereto and made a part of that certain Oil and Gas Lease dated May 27, 2010, by and between <u>Johnny Bittle, a/k/a Johnny W. Bittle and Linda Bittle, a/k/a Melinda Bittle, a/k/a Melinda L. Bittle, a/k/a Linda Hunt Bittle, a/k/a Linda L. Bittle, Husband and Wife</u>, as Lessor, and Chesapeake Exploration, L.L.C., are Oklahoma limited liability company, as Lessee.

It is agreed between the Lessor and Lessee that, notwithstanding any language herein to the contrary, all oil, gas or other proceeds accruing to the Lessor under this lease or by state law shall be without deduction for the cost of producing, gathering, storing, separating, treating, dehydrating, compressing, processing, transporting, and marketing the oil, gas and other products produced hereunder to transform the product into marketable form; however, any such costs which result in enhancing the value of the marketable oil, gas or other products to receive a better price may be deducted from Lessor's share of production so long as they are based on Lessee's actual cost of such enhancements.  However, in no event shall Lessor receive a price that is less than, or more than, the price received by Lessee.

Signed for Identification: _____
Johnny Bittle a/k/a Johnny W. Bittle

Prepared By:
Chesapeake Exploration, L.L.C.
P.O. Box 18496
Oklahoma City, OK  73154

Signed for Identification: _____
Linda Bittle, a/k/a Melinda Bittle, a/k/a Melinda L. Bittle,
a/k/a Linda Hunt Bittle, a/k/a Linda L. Bittle





Certificate of Record
State of Arkansas, County of Cleburne
KAREN GILES, CIRCUIT CLERK
Filed & Recorded in Cleburne County
Date 10/21/2005,02:19:09 PM
Pages 1,Fees $14.00
Book 635 Page 742-744
Karen Giles, Clerk

_____ D.C.

## OIL AND GAS LEASE
(Arkansas — Paid-up)

This instrument was prepared by:
Vernon L. Smith and Associates, Inc.
P.O. Box 720053
Norman, OK 73070

THIS AGREEMENT made and entered into this _____ 1st _____ day of _____ July _____ , 20 05 , by and between:

Earnest C. Hunt and Sherry L. Hunt, husband and wife

34 M & M Drive

Greers Ferry, AR 72067

hereinafter called Lessor and Chesapeake Exploration Limited Partnership, an Oklahoma limited partnership, P.O. Box 18496, Oklahoma City, Oklahoma 73154-0496, hereinafter called Lessee.

WITNESSETH, that Lessor, for and in consideration of the sum of Ten and more Dollars ($10.00 & more) in hand paid, and of the covenants and agreements hereinafter contained to be performed by the Lessee, does hereby grant, demise, lease and let unto said Lessee exclusively the hereinafter described land, for the purpose of carrying on geological, geophysical, seismic, and other exploration work, and drilling and operating for, producing and saving all of the oil, gas, (including casinghead gas, coal steam gas, coalbed methane gas, helium and all other constituents) and other hydrocarbons, all that certain tract of land, together with any reversionary rights therein situated in the County of _____ Cleburne _____ , State of Arkansas, and described as follows:

**ALL**

of Section _____ 33 _____ , Township _____ 12 North _____ , Range _____ 11 West _____ , and containing _____ 640.00 _____ acres, more or less, and also, in addition to the above described land, any and all strips or parcels of land, other than those constituting regular governmental subdivisions, adjoining or contiguous to the above described land and owned or claimed by Lessor, all of the foregoing land being hereinafter referred to as leased premises. It is the intention of the Lessor herein that the leased premises cover and include all lands owned or claimed by Lessor in the above numbered governmental section or sections together with any and all accretions thereto whether or not herein accurately and completely described.

1. This lease shall remain in force for a primary term of _____ Five (5) _____ years and as long thereafter as oil, gas or other hydrocarbons are produced from said leased premises or from lands pooled therewith.

2. Lessee shall deliver, free of cost, to Lessor at the wells, or to the credit of Lessor in the pipeline to which the wells may be connected, the equal 1/8th part of all oil and other liquid hydrocarbons produced and saved from the leased premises, or at Lessee's option, to pay Lessor for such 1/8th royalty the market price at the well for such oil and other liquid hydrocarbons of like grade and gravity prevailing on the day such oil and other liquid hydrocarbons are run from the lease stock tanks.

3. Lessee shall pay or, if required by law, contribute to be paid to Lessor 1/8th of the net proceeds realized by Lessee for all gas (including all substances contained in such gas) produced from the leased premises and sold by Lessee, less Lessor's proportionate share of taxes and all costs incurred by Lessee in delivering, processing, compressing or otherwise making such gas or other substances merchantable or enhancing the marketing thereof. If such gas is used by Lessee off the leased premises or used by Lessee for the manufacture of casinghead gasoline or other products, Lessee shall pay Lessor 1/8th of the prevailing market value at the well for the gas so used.

4. If a well capable of producing gas or gas and gas-condensate in paying quantities located on the leased premises (or on acreage pooled or consolidated with all or a portion of the leased premises into a unit for the drilling or operation of such well) is at any time shut in and no gas or gas-condensate therefrom, is sold or used off the premises or for the manufacture of gasoline or other products, nevertheless such shut-in well shall be deemed to be a well on the leased premises producing gas in paying quantities and this Lease will continue in force during all of the time or times while such shut-in well is so shut in, whether before or after the expiration of the primary term hereof. Lessee shall use reasonable diligence to market gas or gas-condensate capable of being produced from such shut-in well but shall be under no obligation to market such products under terms, conditions or circumstances which, in Lessee's judgment exercised in good faith, are unsatisfactory. Lessee shall be obligated to pay or tender to Lessor within 45 days after the expiration of each period of one year length (annual period) during which such well is so shut in, a royalty of One Dollar ($1.00) per net royalty acre retained hereunder as of the end of such annual period; provided that, if gas or gas-condensate from such well is sold or used as aforesaid before the end of any such annual period, or if, at the end of any such annual period, this Lease is being maintained in force and effect otherwise than by reason of such shut-in well, Lessee shall not be obligated to pay or tender, for that particular annual period, said sum of money. Such payment shall be deemed a royalty under all provisions of this Lease. Lessee's failure to pay or tender such payment, for any reason, shall render Lessee liable for the amount due, but shall not operate to terminate this lease. Such payment shall be made or tendered to Lessor at the above address or to their successors. Royalty ownership as of the last day of each such annual period as shown by Lessee's records shall govern the determination of the party or parties entitled to receive such payment.

5. Lessee is hereby given the right at its option, at any time and whether before or after production, to pool for development and operation purposes all or any part or parts of the leased premises or rights therein with any other land in the vicinity thereof, or with any leasehold, operating or other rights or interests in such other land so as to create units of such size and surface acreage as Lessee may desire but containing not more than forty-five (45) acres; provided, however, a unit may be established hereunder containing not more than 640 acres plus 10% acreage tolerance if utilized only as to gas rights or only as to gas and gas-condensate, except that units pooled for oil or oil and gas for or in conjunction with repressuring, pressure maintenance, cycling and secondary recovery operations or any one or more of same, may be formed to include no more than 320 acres. If at any time larger units are required under any then applicable law, rule, regulations or order of any governmental authority for the drilling, completion or operation of a well, or for obtaining maximum allowable for any contemplated, drilling or completed well, any such unit may be established or enlarged to conform to the size specified by such law, rule, regulation or order.

Operations on any part of any lands so pooled shall, except for the payment of royalties, be considered operations on leased premises under this Lease, and, notwithstanding the status of a well at the time of pooling, such operations shall be deemed to be in connection with a well which is commenced on leased premises under this Lease. The term "operations" as used herein shall include, without limitation, the following: Commencing, construction of roadways, preparation of drillsite, drilling, testing, completing, reworking, recompleting, deepening, plugging back, repressuring, pressuring maintenance, cycling, secondary recovery operations, or the production of oil or gas, or the existence of a shut-in well capable of producing oil or gas.

There shall be allocated to the portion of leased premises included in any such pooling such proportion of the actual production from all lands so pooled as such portion as leased premises, computed on an acreage basis, bears to the entire acreage of the lands so pooled. The production as allocated shall be considered for the purpose of payment or delivery of royalty to be the entire production from the portion of leased premises included in such pooling in the same manner as though produced from such portion of leased premises under the terms of this Lease.

6. If the Lessor owns a lesser interest in the above-described land than the entire and undivided mineral estate therein, then the royalties herein provided for shall be paid the said Lessor only in the proportion which his interest bears than the whole and undivided mineral estate.

7. If the estate of either party hereto is assigned, and the privilege of assigning in whole or in part is hereby expressly allowed, the covenants hereof shall extend to their heirs, executors, administrators, successors or assigns, but no change in the ownership of the land or assignment of rentals or royalties shall be binding on Lessee until after Lessee shall have been furnished ninety (90) days and under the same or assignment of royalties shall be binding on Lessee unless Lessee shall have been furnished ninety (90) days after Lessees, with certified copies of recorded instruments showing evidence of title.

**EXHIBIT**
**9**

This instrument was prepared by:
Gateway Land Services, LLC
7100 N. Classen, Suite 400
Oklahoma City, OK 73116

## AGREEMENT TO EXTEND OIL AND GAS LEASE

STATE OF _____ARKANSAS_____ )
)
COUNTY OF _____CLEBURNE_____ )

    WHEREAS, on the 1st day of July, 2005, Ernie C. Hunt, a/k/a Earnest C. Hunt, a/k/a Earnie Hunt, and Sherry L. Hunt, husband and wife, as Lessor, executed an oil and gas lease in favor of Chesapeake Exploration Limited Partnership, an Oklahoma limited partnership, as Lessee, recorded in Book 35, Page 742, of the County Records of Cleburne County, Arkansas, covering and describing the following lands to wit:

    **SW/4 NW/4 of Section 33-T12N-R11W**

    WHEREAS, it is the desire of the parties hereto that the primary term of said lease be extended;

    NOW, THEREFORE, the undersigned, the present owner(s) of the oil, gas and other minerals in, on and under said land, in consideration of the sum of Ten Dollars ($10.00) and other valuable consideration, the receipt of which is hereby acknowledged, do hereby agree as follows:

(1) That the primary term stipulated in said lease is hereby changed from five (5) years to ten (10) years from the date of said lease. It being the intent of the parties hereto to extend the primary term of said lease for an additional five (5) years.

(2) That the royalty payable to Lessor under clauses 2 and 3 of said lease is hereby changed from 1/8th to 1/5th.

(3) It is agreed between the Lessor and Lessee that, notwithstanding any language herein to the contrary, all oil, gas or other proceeds accruing to the Lessor under this lease or by state law shall be without deduction for the cost of producing, gathering, storing, separating, treating, dehydrating, compressing, processing, transporting, and marketing the oil, gas and other products produced hereunder to transform the product into marketable form; however, any such costs which result in enhancing the value of the marketable oil, gas or other products to receive a better price may be deducted from Lessor's share of production so long as they are based on Lessee's actual cost of such enhancements. However, in no event shall Lessor receive a price that is less than, or more than, the price received by Lessee.

(4) Lessor agrees and obligates itself to conduct its operations upon the leased premises as a reasonable and prudent operator and in such a way as to cause a minimum of damage to the land and improvements thereon, including fences; and that should it become necessary to make any opening in the fences, Lessee will properly brace the fence on each side of the opening to prevent slackening of the wires and shall place substantial metal gates in such openings. Said gates and cattle guards shall be installed before drilling operations commence and said gates shall remain on said property unless otherwise directed by Lessors. Lessee agrees that within 120 days after any operation hereunder, weather permitting, Lessee shall repair the damaged land to the fullest practical extent, including the filling and leveling of all of the holes, pits, ruts, roads or excavations in the areas to no longer be used by Lessee; and upon termination hereof, to fully repair all damaged land not already repaired to the end commencement of such operations. Lessee shall pay for all actual injury or damage done or caused by Lessee in its operations hereunder to any building, fences, roads, roadway easements, culverts, merchantable timber, growing crops or other improvements on said land which is not replaced or repaired by Lessee according to the terms of this lease.

(5) The right to maintain this lease in force by paying shut-in royalty as set out herein is a recurring right, which may be exercised by Lessee from time to time, but in no event shall any shut-in period exceed more then two (2) consecutive years. In the event any shut-in period exceeds more than two (2) consecutive years, Lessee shall not be required to relinquish its rights in and to the wellbore(s) of well(s) drilled theretofore.

    To effectuate the purposes and intent of the parties hereto, the undersigned does hereby grant, bargain, sell, convey, lease and let exclusively unto Chesapeake Exploration, L.L.C., an Oklahoma limited liability company, as successor in interest to Chesapeake Exploration Limited Partnership, an Oklahoma limited partnership, all the oil, gas and other minerals in, on and under said land for and during the term of said lease as herein amended and extended, and subject to the provisions thereof. Except as herein changed, the provisions of said lease and any recorded amendment thereto shall remain in full force and effect, and are hereby ratified, adopted and confirmed the same as if incorporated herein.

**EXHIBIT**

10

IN WITNESS WHEREOF this instrument is executed on this *13th* day of *November*, 2009.

*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*

Tax ID/SS#:

Lessor:  Ernie C. Hunt, a/k/a Earnest C. Hunt,  a/k/a Earnie Hunt

*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*

Tax ID/SS#:

Lessor:  Sherry L. Hunt

**ACKNOWLEDGEMENT**

STATE OF *Arkansas*

COUNTY OF *Cleburne*

Before me, the undersigned Notary Public in and for the above county and state, on this day personally appeared Ernie C. Hunt, a/k/a Earnest C. Hunt, a/k/a Earnie Hunt, and Sherry L. Hunt, husband and wife, known to me to be the person(s) whose name(s) is/are subscribed to the foregoing instrument, and acknowledged that he/she/they executed the same as his/her/their free and voluntary act and deed for the purposes and consideration therein expressed, including the relinquishment of curtesy, dower, and homestead.

Given under my hand and seal of office this *13th* day of *November* 2009.

My Commission Expires:

*2/25/13*

Notary Public

SEAL

OFFICIAL SEAL
**CRYSTAL FOUSE**
NOTARY PUBLIC - ARKANSAS
LONOKE COUNTY
My Commission Expires FEBRUARY 25, 2013



Certificate of Record
State of Arkansas, County of Cleburne
KAREN GILES, CIRCUIT CLERK
Filed & Recorded in Cleburne County
Date 11/03/2005, 09:28:00 AM
Pages 1, Fees $14.00
Book ___ Page 1-6
Karen Giles, Clerk                    D.C.



## OIL AND GAS LEASE
(Arkansas — Paid-up)

This instrument was prepared by:
Vernon L. Smith and Associates, Inc.
P.O. Box 720053
Norman, OK 73070

THIS AGREEMENT made and entered into this _____ 1st _____ day of _____ July _____ , 20 05 , by and between:

**Earnest C. Hunt and Sherry L. Hunt, husband and wife**

**34 M & M Drive**

**Greers Ferry, AR 72067**

hereinafter called Lessor and Chesapeake Exploration Limited Partnership, an Oklahoma limited partnership, P.O. Box 18496, Oklahoma City, Oklahoma 73154-0496, hereinafter called Lessee.

WITNESSETH, that Lessor, for and in consideration of the sum of Ten and more Dollars ($10.00 & more) in hand paid, and of the covenants and agreements hereinafter contained to be performed by the Lessee, does hereby grant, demise, lease and let unto said Lessee exclusively the hereinafter described land, for the purpose of carrying on geological, geophysical, seismic, and other exploration work, and drilling and operating for, producing and saving all of the oil, gas, (including casinghead gas, coal seam gas, coal bed methane gas, helium and all other constituents) and other hydrocarbons, all that certain tract of land, together with any reversionary rights therein situated in the County of _____ Cleburne _____ State of Arkansas, and described as follows:

**ALL**

of Section _____ 23 _____ , Township _____ 11 North _____ , Range _____ 11 West _____ , and containing _____ 640.00 _____ acres, more or less, and also, in addition to the above described land, any and all strips or parcels of land, other than those constituting regular governmental subdivisions, adjoining or contiguous to the above described land and owned or claimed by Lessor, all of the foregoing land being hereinafter referred to as leased premises. It is the intention of the Lessor herein that the leased premises cover and include all lands owned or claimed by Lessor in the above numbered governmental section or sections together with any and all accretions thereto whether or not herein accurately and completely described.

1. This lease shall remain in force for a primary term of _____ Five (5) _____ years and as long thereafter as oil, gas or other hydrocarbons are produced from said leased premises or from lands pooled therewith.

2. Lessee shall deliver, free of cost, to Lessor at the wells, or to the credit of Lessor in the pipeline to which the wells may be connected, the equal 1/8th part of all of and other liquid hydrocarbons produced and saved from the leased premises, or at Lessee's option, to pay Lessor for such 1/8th royalty the market price at the well for such oil and other liquid hydrocarbons of like grade and gravity prevailing on the day such oil and other liquid hydrocarbons are run from the lease stock tanks.

3. Lessee shall pay or, if required by Lessee, contribute to be paid to Lessor 1/8th of the net proceeds realized by Lessee for all gas (including all substances contained in such gas) produced from the leased premises and sold by Lessee, less Lessor's proportionate share of taxes and all costs incurred by Lessee in delivering, processing, compressing or otherwise making such gas or other substances merchantable or enhancing the marketing thereof. If such gas is used by Lessee off the leased premises or used by Lessee for the manufacture of casinghead gasoline or other products, Lessee shall pay Lessor 1/8th of the prevailing market value at the well for the gas so used.

4. If well capable of producing gas or gas and gas-condensate in paying quantities located on the leased premises (or on acreage pooled or consolidated with all or a portion of the leased premises into a unit for the drilling or operation of such well) is at any time shut in and no gas or gas-condensate therefrom, is sold or used off the premises or for the manufacture of gasoline or other products, nevertheless such shut-in well shall be deemed to be a well on the leased premises producing gas in paying quantities and this Lease will continue in force during all of the time or times while such shut-in well is so shut in, whether before or after the expiration of the primary term hereof. Lessee shall use reasonable diligence to market gas or gas-condensate capable of being produced from such shut-in well but shall be under no obligation to market such products under terms, conditions or circumstances which in Lessee's judgment exercised in good faith, are unsatisfactory. Lessee shall be obligated to pay or tender to Lessor within 45 days after the expiration of each period of one year length (annual period) during which such well is so shut in, a royalty of One Dollar ($1.00) per net royalty acre retained hereunder as of the end of such annual period; provided that, if gas or gas-condensate from such well is sold or used as aforesaid before the end of any such annual period, or if, at the end of any such annual period, this Lease is being maintained in force and effect otherwise than by reason of such shut-in well, Lessee shall not be obligated to pay or tender, for that particular annual period, said sum of money. Such payment shall be deemed a royalty under all provisions of this Lease. Lessee's failure to pay or tender such payment, for any reason, shall render Lessee liable for the amount due, but shall not operate to terminate this Lease. Such payment shall be made or tendered to Lessor at the above address or to their successors. Royalty ownership as of the last day of each such annual period as shown by Lessee's records shall govern the determination of the party or parties entitled to receive such payment.

5. Lessee hereby is given the right at its option, at any time and whether before or after expiration, to pool for development and operation purposes all or any part or parts of the leased premises or rights therein with any other land in the vicinity thereof, or with any leasehold, operating or other rights or interests in such other land so as to create units for such sites and surface acreage as Lessee may desire but containing not more than forty-five (45) acres; provided, however, a unit may be established hereunder containing not more than 640 acres plus 10% acreage tolerance if unitized only as to gas rights or only as to gas and gas-condensate, except that units pooled for oil or oil and gas for or in conjunction with repressuring, pressure maintenance, cycling and secondary recovery operations or any one or more of same, may be formed to include no more than 320 acres. If at any time larger units are required under any then applicable law, rule, regulations or order of any governmental authority for the drilling, completion or operation of a well, or for obtaining maximum allowable for any contemplated, drilling or completed well, any such unit may be established or enlarged to conform to the size specified by such law, rule, regulation or order.

Operations on any part of any lands so pooled shall, except for the payment of royalties, be considered operations on leased premises under this Lease, and, notwithstanding the status of a well at the time of pooling, such operations shall be deemed to be in connection with a well which is commenced on leased premises under this Lease. The term "operations" as used herein shall include, without limitation, the following: Commencing, construction of roadways, preparation of drillsite, drilling, testing, completing, reworking, recompleting, deepening, plugging back, repressuring, pressuring maintenance, cycling, secondary recovery operations, or the production of oil or gas, or the existence of a shut-in well capable of producing oil or gas.

There shall be allocated to the portion of leased premises included in any such pooling such proportion of the actual production from all lands so pooled as such portion as leased premises, computed on an acreage basis, bears to the entire acreage of the lands so pooled. The production so allocated shall be considered for the purpose of payment or delivery or royalty to be the entire production for the portion of leased premises included in such pooling in the same manner as though produced from such portion of leased premises under the terms of this Lease.

6. If the Lessor owns a lesser interest in the above-described land than the entire and undivided mineral estate therein, then the royalties herein provided for shall be paid the said Lessor only in the proportion which his interest bears the whole and undivided mineral estate.

7. If the estate of either party hereto is assigned, and the privilege of assigning in whole or in part is hereby expressly allowed, the covenants hereof shall extend to their heirs, executors, administrators, successors or assigns, but no change in the ownership of the land or the minerals in and under the same or assignment of royalties shall be binding on Lessee unless Lessee shall have been furnished ninety (90) days before payment hereunder of such royalties, with certified copies of recorded instruments showing evidence of title.



EXHIBIT
11

This instrument was prepared by:
Gateway Land Services, LLC
7100 N. Classen, Suite 400
Oklahoma City, OK 73116



## AGREEMENT TO EXTEND OIL AND GAS LEASE

STATE OF _____ARKANSAS_____ )
                                )
COUNTY OF _____CLEBURNE_____ )

WHEREAS, on the 1st day of July, 2005, Ernie C. Hunt, a/k/a Earnest C. Hunt, a/k/a Earnie Hunt, and Sherry L. Hunt, husband and wife, as Lessor, executed an oil and gas lease in favor of Chesapeake Exploration Limited Partnership, an Oklahoma limited partnership, as Lessee, recorded in Book 37, Page 4, of the County Records of Cleburne County, Arkansas, covering and describing the following lands to wit:

### SE/4 SW/4; SE/4 SW/4 SW/4 of Section 23-T11N-R11W

WHEREAS, it is the desire of the parties hereto that the primary term of said lease be extended;

NOW, THEREFORE, the undersigned, the present owner(s) of the oil, gas and other minerals in, on and under said land, in consideration of the sum of Ten Dollars ($10.00) and other valuable consideration, the receipt of which is hereby acknowledged, do hereby agree as follows:



(1) That the primary term stipulated in said lease is hereby changed from five (5) years to ten (10) years from the date of said lease. It being the intent of the parties hereto to extend the primary term of said lease for an additional five (5) years.

(2) That the royalty payable to Lessor under clauses 2 and 3 of said lease is hereby changed from $1/8^{th}$ to $1/5^{th}$.

(3) It is agreed between the Lessor and Lessee that, notwithstanding any language herein to the contrary, all oil, gas or other proceeds accruing to the Lessor under this lease or by state law shall be without deduction for the cost of producing, gathering, storing, separating, treating, dehydrating, compressing, processing, transporting, and marketing the oil, gas and other products produced hereunder to transform the product into marketable form; however, any such costs which result in enhancing the value of the marketable oil, gas or other products to receive a better price may be deducted from Lessor's share of production so long as they are based on Lessee's actual cost of such enhancements. However, in no event shall Lessor receive a price that is less than, or more than, the price received by Lessee.

(4) Lessor agrees and obligates itself to conduct its operations upon the leased premises as a reasonable and prudent operator and in such a way as to cause a minimum of damage to the land and improvements thereon, including fences; and that should it become necessary to make any opening in the fences, Lessee will properly brace the fence on each side of the opening to prevent slackening of the wires and shall place substantial metal gates in such openings. Said gates and cattle guards shall be installed before drilling operations commence and said gates shall remain on said property unless otherwise directed by Lessors. Lessee agrees that within 120 days after any operation hereunder, weather permitting, Lessee shall repair the damaged land to the fullest practical extent, including the filling and leveling of all of the holes, pits, ruts, roads or excavations in the areas to no longer be used by Lessee; and upon termination hereof, to fully repair all damaged land not already repaired to the end commencement of such operations. Lessee shall pay for all actual injury or damage done or caused by Lessee in its operations hereunder to any buildings, fences, roads, roadway easements, culverts, merchantable timber, growing crops or other improvements on said land which is not replaced or repaired by Lessee according to the terms of this lease.

(5) The right to maintain this lease in force by paying shut-in royalty as set out herein is a recurring right, which may be exercised by Lessee from time to time, but in no event shall any shut-in period exceed more then two (2) consecutive years. In the event any shut-in period exceeds more than two (2) consecutive years, Lessee shall not be required to relinquish its rights in and to the wellbore(s) of well(s) drilled theretofore.

To effectuate the purposes and intent of the parties hereto, the undersigned does hereby grant, bargain, sell, convey, lease and let exclusively unto Chesapeake Exploration, L.L.C., an Oklahoma limited liability company, as successor in interest to Chesapeake Exploration Limited Partnership, an Oklahoma limited partnership, all the oil, gas and other minerals in, on and under said land for and during the term of said lease as herein amended and extended, and subject to the provisions thereof. Except as herein changed, the provisions of said lease and any recorded amendment thereto shall remain in full force and effect, and are hereby ratified, adopted and confirmed the same as if incorporated herein.

EXHIBIT
12

IN WITNESS WHEREOF this instrument is executed on this _13th_ day of _November_, 2009.

_432 - 11 - 9519_

Tax ID/SS#:

_Ernie C. Hunt_
Lessor:  Ernie C. Hunt, a/k/a Earnest C. Hunt,  a/k/a Earnie
Hunt

_429 - 11 - 3614_

Tax ID/SS#:

_Sherry L Hunt_
Lessor:  Sherry L. Hunt

## ACKNOWLEDGEMENT

STATE OF _Arkansas_

COUNTY OF _Cleburne_

Before me, the undersigned Notary Public in and for the above county and state, on this day personally appeared
Ernie C. Hunt, a/k/a Earnest C. Hunt, a/k/a Earnie Hunt, and Sherry L. Hunt, husband and wife, known to me to be the person(s)
whose name(s) is/are subscribed to the foregoing instrument, and acknowledged that he/she/they executed  the same as
his/her/their free and voluntary act and deed for the purposes and consideration therein expressed, including the relinquishment of
curtesy, dower, and homestead.

Given under my hand and seal of office this _13th_ day of _November_, 2009.

My Commission Expires:

_2/25/13_

SEAL



Notary Public

OFFICIAL SEAL
CRYSTAL FOUSE
NOTARY PUBLIC - ARKANSAS
LONOKE COUNTY
My Commission Expires FEBRUARY 25, 20:

OFFICIAL SEAL
CRYSTAL FOUSE
NOTARY PUBLIC - ARKANSAS
LONOKE COUNTY
My Commission Expires FEBRUARY 25, 2013





Certificate of Record
State of Arkansas, County of Cleburne
KAREN GILES, CIRCUIT CLERK
Filed & Recorded in Cleburne County
Date 11/03/2005, 09:28:32 AM
Pages 1, Fees $14.00
Book L5 Page 78-80
Karen Giles, Clerk

## OIL AND GAS LEASE
(Arkansas — Paid-up)

This instrument was prepared by:
Vernon L. Smith and Associates, Inc.
P.O. Box 720053
Norman, OK 73070

THIS AGREEMENT made and entered into this _____ 1st _____ day of _____ July _____, 20 05 , by and between:

**Earnest C. Hunt and Sherry L. Hunt, husband and wife**

34 M & M Drive
Greers Ferry, AR 72067

hereinafter called Lessor and Chesapeake Exploration Limited Partnership, an Oklahoma limited partnership, P.O. Box 18496, Oklahoma City, Oklahoma 73154-0496, hereinafter called Lessee.

WITNESSETH, that Lessor, for and in consideration of the sum of Ten and more Dollars ($10.00 & more) in hand paid, and of the covenants and agreements hereinafter contained to be performed by the Lessee, does hereby grant, demise, lease and let unto said Lessee exclusively the hereinafter described land, for the purpose of carrying on geological, geophysical, seismic, and other exploration work, and drilling and operating for, producing and saving all of the oil, gas, (including casinghead gas, coal seam gas, coal bed methane gas, helium and all other constituents) and other hydrocarbons, all that certain tract of land, together with any reversionary rights therein situated in the County of _____ Cleburne _____ State of Arkansas, and described as follows:

ALL

of Section _____ 26 _____, Township _____ 11 North _____, Range _____ 11 West _____, and containing _____ 640.00 _____ acres, more or less, and also, in addition to the above described land, any and all strips or parcels of land, other than those constituting regular governmental subdivisions, adjoining or contiguous to the above described land and owned or claimed by Lessor, all of the foregoing land being hereinafter referred to as leased premises. It is the intention of the Lessor herein that the leased premises cover and include all lands owned or claimed by Lessor in the above numbered governmental section or sections together with any and all accretions thereto whether or not herein accurately and completely described..

1. This lease shall remain in force for a primary term of _____ Five (5) _____ years and as long thereafter as oil, gas or other hydrocarbons are produced from said leased premises or from lands pooled therewith.

2. Lessee shall deliver, free of cost, to Lessor at the wells, or to the credit of Lessor in the pipeline to which the wells may be connected, the equal 1/8th part of all oil and other liquid hydrocarbons produced and saved from the leased premises, or at Lessee's option, to pay Lessor 1/8th royalty the market price at the well for such oil and other liquid hydrocarbons of like grade and gravity prevailing on the day such oil and other liquid hydrocarbons are run from the lease stock tanks.

3. Lessee shall pay or, if required by law, contribute to be paid to Lessor 1/8th of the net proceeds realized by Lessee for all gas (including all substances contained in such gas) produced from the leased premises and sold by Lessee, less Lessor's proportionate share of taxes and all costs incurred by Lessee in delivering, processing, compressing or otherwise making such gas or other substances merchantable or enhancing the marketing thereof. If such gas is used by Lessee off the leased premises or used by Lessee for the manufacture of casinghead gasoline or other products, Lessee shall pay Lessor 1/8th of the prevailing market value at the well for the gas so used.

4. If a well capable of producing gas or gas and gas-condensate in paying quantities located on the leased premises (or on acreage pooled or consolidated with all or a portion of the leased premises into a unit for the drilling or operation of such well) is at any time shut in and no gas or gas-condensate therefrom, is sold or used off the premises or for the manufacture of gasoline or other products, nevertheless such shut-in well shall be deemed to be a well on the leased premises producing gas in paying quantities and this Lease will continue in force during all of the time or times while such shut-in well is so shut in, whether before or after the expiration of the primary term hereof. Lessee shall use reasonable diligence to market gas or gas-condensate capable of being produced from such shut-in well but shall be under no obligation to market such products under terms, conditions or circumstances which, in Lessee's judgment exercised in good faith, are unsatisfactory. Lessee shall be obligated to pay or tender to Lessor within 45 days after the expiration of each period of one year length (annual period) during which such well is so shut in, a royalty of One Dollar ($1.00) per net royalty acre retained hereunder as of the end of such annual period; provided that, if gas or gas-condensate from such well is sold or used as aforesaid before the end of any such annual period, or if, at the end of any such annual period, this Lease is being maintained in force and effect otherwise than by reason of such shut-in well, Lessee shall not be obligated to pay or tender, for that particular annual period, said sum of money. Such payment shall be deemed a royalty under all provisions of this Lease. Lessee's failure to pay or tender such payment, for any reason, shall render Lessee liable for the amount due, but shall not operate to terminate this lease. Such payment shall be made or tendered to Lessor at the above address or to their successors. Royalty ownership as of the last day of each such annual period as shown by Lessee's records shall govern the determination of the party or parties entitled to receive such payment.

5. Lessee hereby is given the right at its option, at any time and whether before or after production, to pool for development and operation purposes all or any part or parts of the leased premises or rights therein with any other land in the vicinity thereof, or with any leasehold, operating or other rights or interests in such other land so as to create units of such size and surface acreage as Lessee may desire but containing not more than forty-five (45) acres; provided, however, a unit may be established hereunder containing not more than 640 acres plus 10% acreage tolerance if unitized only as to gas rights or only as to gas and gas-condensate, except that units pooled for oil or oil and gas for or in conjunction with repressuring, pressure maintenance, cycling and secondary recovery operations or any one or more of same, may be formed to include no more than 320 acres. If at any time larger units are required under any then applicable law, rule, regulations or order of any governmental authority for the drilling, completion or operation of a well, or for obtaining maximum allowable for any contemplated, drilling or completed well, any such unit may be established or enlarged to conform to the size specified by such law, rule, regulation or order.

Operations on any part of any lands so pooled shall, except for the payment of royalties, be considered operations on leased premises under this Lease, and, notwithstanding the status of a well as of the time of pooling, such operations shall be deemed to be in connection with a well which is commenced on leased premises under this Lease. The term "operations" as used herein shall include, without limitation, the following: Commencing, construction of roadways, preparation of drillsite, drilling, testing, completing, reworking, recompleting, deepening, plugging back, repressuring, pressuring maintenance, cycling, secondary recovery operations, or the production of oil or gas, or the existence of a shut-in well capable of producing oil or gas.

There shall be allocated to the portion of leased premises included in any such pooling such proportion of the actual production from all lands so pooled as such portion as leased premises, computed on an acreage basis, bears to the entire acreage of the lands so pooled. The production so allocated shall be considered for the purpose of payment or delivery of royalty to be the entire production for the portion of leased premises included in such pooling in the same manner as though produced from such portion of leased premises under the terms of this Lease.

6. If the Lessor owns a lesser interest in the above-described land than the entire and undivided mineral estate therein, then the royalties herein provided for shall be paid the said Lessor only in the proportion which his interest bears the whole and undivided mineral estate.

7. If the estate of either party hereto is assigned, and the privilege of assigning in whole or in part is hereby expressly allowed, the covenants hereof shall extend to their heirs, executors, administrators, successors or assigns, but no change in the ownership of the land or the minerals in and under the same or assignment of royalties shall be binding on Lessee unless Lessee shall have been furnished ninety (90) days before payment hereunder of such royalties, with certified copies of recorded instruments showing evidence of title.



EXHIBIT
13

This instrument was prepared by:
Gateway Land Services, LLC
7100 N. Classen, Suite 400
Oklahoma City, OK 73116

## AGREEMENT TO EXTEND OIL AND GAS LEASE

STATE OF _____ ARKANSAS _____ )
                                )
COUNTY OF ___ CLEBURNE ___ )

WHEREAS, on the 1st day of July, 2005, Ernie C. Hunt, a/k/a Earnest C. Hunt, a/k/a Earnie Hunt, and Sherry L. Hunt, husband and wife, as Lessor, executed an oil and gas lease in favor of Chesapeake Exploration Limited Partnership, an Oklahoma limited partnership, as Lessee, recorded in Book 37, Page 78, of the County Records of Cleburne County, Arkansas, covering and describing the following lands to wit:

**All that part of NE/4 NW/4 lying West of County Road; AND, NW/4 NW/4 of Section 26-T11N-R11W**

WHEREAS, it is the desire of the parties hereto that the primary term of said lease be extended;

NOW, THEREFORE, the undersigned, the present owner(s) of the oil, gas and other minerals in, on and under said land, in consideration of the sum of Ten Dollars ($10.00) and other valuable consideration, the receipt of which is hereby acknowledged, do hereby agree as follows:

(1)  That the primary term stipulated in said lease is hereby changed from five (5) years to ten (10) years from the date of said lease. It being the intent of the parties hereto to extend the primary term of said lease for an additional five (5) years.

(2)  That the royalty payable to Lessor under clauses 2 and 3 of said lease is hereby changed from 1/8th to 1/5th.

(3)  It is agreed between the Lessor and Lessee that, notwithstanding any language herein to the contrary, all oil, gas or other proceeds accruing to the Lessor under this lease or by state law shall be without deduction for the cost of producing, gathering, storing, separating, treating, dehydrating, compressing, processing, transporting, and marketing the oil, gas and other products produced hereunder to transform the product into marketable form; however, any such costs which result in enhancing the value of the marketable oil, gas or other products to receive a better price may be deducted from Lessor's share of production so long as they are based on Lessee's actual cost of such enhancements. However, in no event shall Lessor receive a price that is less than, or more than, the price received by Lessee.

(4)  Lessor agrees and obligates itself to conduct its operations upon the leased premises as a reasonable and prudent operator and in such a way as to cause a minimum of damage to the land and improvements thereon, including fences; and that should it become necessary to make any opening in the fences, Lessee will properly brace the fence on each side of the opening to prevent slackening of the wires and shall place substantial metal gates in such openings. Said gates and cattle guards shall be installed before drilling operations commence and said gates shall remain on said property unless otherwise directed by Lessors. Lessee agrees that within 120 days after any operation hereunder, weather permitting, Lessee shall repair the damaged land to the fullest practical extent, including the filling and leveling of all of the holes, pits, ruts, roads or excavations in the areas to no longer be used by Lessee; and upon termination hereof, to fully repair all damaged land not already repaired to the end commencement of such operations. Lessee shall pay for all actual injury or damage done or caused by Lessee in its operations hereunder to any buildings, fences, roads, roadway easements, culverts, merchantable timber, growing crops or other improvements on said land which is not replaced or repaired by Lessee according to the terms of this lease.

(5)  The right to maintain this lease in force by paying shut-in royalty as set out herein is a recurring right, which may be exercised by Lessee from time to time, but in no event shall any shut-in period exceed more then two (2) consecutive years. In the event any shut-in period exceeds more than two (2) consecutive years, Lessee shall not be required to relinquish its rights in and to the wellbore(s) of well(s) drilled theretofore.

To effectuate the purposes and intent of the parties hereto, the undersigned does hereby grant, bargain, sell, convey, lease and let exclusively unto Chesapeake Exploration, L.L.C., an Oklahoma limited liability company, as successor in interest to Chesapeake Exploration Limited Partnership, an Oklahoma limited partnership, all the oil, gas and other minerals in, on and under said land for and during the term of said lease as herein amended and extended, and subject to the provisions thereof. Except as herein changed, the provisions of said lease and any recorded amendment thereto shall remain in full force and effect, and are hereby ratified, adopted and confirmed the same as if incorporated herein.



EXHIBIT
14

IN WITNESS WHEREOF this instrument is executed on this _13th_ day of _November_, 2009.

_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_

Tax ID/SS#:

_Ernie C. Hunt_

Lessor: Ernie C. Hunt, a/k/a Earnest C. Hunt, a/k/a Earnie Hunt

_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_

Tax ID/SS#:

_Sherry L. Hunt_

Lessor: Sherry L. Hunt

## ACKNOWLEDGEMENT

STATE OF _Arkansas_

COUNTY OF _Cleburne_

Before me, the undersigned Notary Public in and for the above county and state, on this day personally appeared Ernie C. Hunt, a/k/a Earnest C. Hunt, a/k/a Earnie Hunt, and Sherry L. Hunt, husband and wife, known to me to be the person(s) whose name(s) is/are subscribed to the foregoing instrument, and acknowledged that he/she/they executed the same as his/her/their free and voluntary act and deed for the purposes and consideration therein expressed, including the relinquishment of curtesy, dower, and homestead.

Given under my hand and seal of office this _13th_ day of _November_, 2009.

My Commission Expires:

_2/25/13_

SEAL

Notary Public

OFFICIAL SEAL
CRYSTAL FOUSE
NOTARY PUBLIC - ARKANSAS
LONOKE COUNTY
My Commission Expires FEBRUARY 25, 2013

11620

Certificate of Record
State of Arkansas, County of Cleburne
KAREN GILES, CIRCUIT CLERK
Filed & Recorded in Cleburne County
Date 10/21/2005, 02:19:44 PM
Pages 1, Fees $14.00
Book 236 Page 10-12
Karen Giles, Clerk
_____ D.C.

## OIL AND GAS LEASE
(Arkansas — Paid-up)

This instrument was prepared by:
Vaness L. Smith and Associates, Inc.
P.O. Box 720053
Norman, OK 73070

THIS AGREEMENT made and entered into this _____ 1st _____ day of _____ July _____ , 20 05 , by and between:

Earnest C. Hunt and Sherry L. Hunt, husband and wife

34 N & M Drive

Greers Ferry, AR 72067

hereinafter called Lessor and Chesapeake Exploration Limited Partnership, an Oklahoma limited partnership, P.O. Box 18496, Oklahoma City, Oklahoma 73 154-0496, hereinafter called Lessee.

WITNESSETH, that Lessor, for and in consideration of the sum of Ten and more Dollars ($10.00 & more) in hand paid, and of the covenants and agreements hereinafter contained to be performed by the Lessee, does hereby grant, demise, lease and let unto said Lessee exclusively the hereinafter described land, for the purpose of carrying on geological, geophysical, seismic, and other exploration work, and drilling and operating for, producing and saving all of the oil, gas, (including casinghead gas, coal seam gas, coalbed methane gas, helium and all other constituents) and other hydrocarbons, that certain tract of land, together with any reversionary rights therein situated in the County of _____ Cleburne _____ State of Arkansas, and described as follows:

**ALL**

of Section _____ 27 _____ , Township _____ 11 North _____ , Range _____ 11 West _____ , and containing _____ 640.00 _____ acres, more or less, and also, in addition to the above described land, any and all strips or parcels of land, other than those constituting regular governmental subdivisions, adjoining or contiguous to the above described land and owned or claimed by Lessor, all of the foregoing land being hereinafter referred to as leased premises. It is the intention of the Lessor herein that the leased premises cover and include all lands owned or claimed by Lessor in the above numbered governmental section or sections together with any and all accretions thereto whether or not herein accurately and completely described.

1. This lease shall remain in force for a primary term of _____ Five (5) _____ years and as long thereafter as oil, gas or other hydrocarbons are produced from said leased premises or from lands pooled therewith.

2. Lessee shall deliver, free of cost, to Lessor at the wells, or to the credit of Lessor in the pipeline to which the wells may be connected, the equal 1/8th part of all oil and other liquid hydrocarbons produced and saved from the leased premises, or at Lessee's option, to pay Lessor for such 1/8th royalty the market price at the well for such oil and other liquid hydrocarbons of like grade and gravity prevailing on the day such oil and other liquid hydrocarbons are run from the lease stock tanks.

3. Lessee shall pay or, if required by law, contribute to be paid to Lessor 1/8th of the net proceeds realized by Lessee for all gas (including all substances contained in such gas) produced from the leased premises and sold by Lessee, less Lessor's proportionate share of taxes and all costs incurred by Lessee in delivering, processing, compressing or otherwise making such gas or other substances merchantable or enhancing the marketing thereof. If such gas is used by Lessee off the leased premises or used by Lessee for the manufacture of casinghead gasoline or other products, Lessee shall pay Lessor 1/8th of the prevailing market value at the well for the gas so used.

4. If a well capable of producing gas or gas and gas-condensate in paying quantities located on the leased premises (or on acreage pooled or consolidated with all or a portion of the leased premises into a unit for the drilling or operation of such well) is at any time shut in and no gas or gas-condensate therefrom, is sold or used off the premises or for the manufacture of gasoline or other products, nevertheless such shut-in well shall be deemed to be a well on the leased premises producing gas in paying quantities and this Lease will continue in force during all of the time or times while such shut-in well is so shut in, whether before or after the expiration of the primary term hereof. Lessee shall use reasonable diligence to market gas or gas-condensate capable of being produced from such shut-in well but shall be under no obligation to market such products under terms, conditions or circumstances which, in Lessee's judgment exercised in good faith, are unsatisfactory. Lessee shall be obligated to pay or tender to Lessor within 45 days after the expiration of each period of one year length (annual period) during which such well is so shut in, a royalty of One Dollar ($1.00) per net royalty acre retained hereunder as of the end of such annual period, provided that, if gas or gas-condensate from such well is sold or used as aforesaid before the end of any such annual period, or if, at the end of any such annual period, this Lease is being maintained in force and effect otherwise than by reason of such shut-in well, Lessee shall not be obligated to pay or tender, for that particular annual period, said sum of money. Such payment shall be deemed a royalty under all provisions of this Lease. Lessee's failure to pay or tender such payment, for any reason, shall render Lessee liable for the amount due, but shall not operate to terminate this lease. Such payment shall be made or tendered to Lessor at the above address or to their successors. Royalty ownership as of the last day of each such annual period as shown by Lessee's records shall govern the determination of the party or parties entitled to receive such payment.

5. Lessee hereby is given the right at its option, at any time and whether before or after production, to pool for development and operation purposes all of any part or parts of the leased premises or rights therein with any other land in the vicinity thereof, or with any leasehold, operating or other rights or interests in such other land so as to create units of such size and surface acreage as Lessee may desire but containing not more than forty-five (45) acres; provided, however, a unit may be established hereunder containing not more than 640 acres plus 10% acreage tolerance if unitized only as to gas rights or only as to gas and gas-condensate, except that units pooled for oil or oil and gas for or in conjunction with repressuring, pressure maintenance, cycling and secondary recovery operations or any one or more of same, may be formed to include no more than 320 acres. If at any time larger units are required under any then applicable law, rule, regulations or order of any governmental authority for the drilling, completion or operation of a well, or for obtaining maximum allowable for any contemplated, drilling or completed well, any such unit may be established or enlarged to conform to the size specified by such law, rule, regulation or order.

Operations on any part of any lands so pooled shall, except for the payment of royalties, be considered operations on leased premises under this Lease, and, notwithstanding the status of a well at the time of pooling, such operations shall be deemed to be in connection with a well which is commenced on leased premises under this Lease. The term "operations" as used herein shall include, without limitation, the following: Commencing, construction of roadways, preparation of drillsite, drilling, testing, completing, reworking, recompleting, deepening, plugging back, repressuring, pressuring, maintenance, cycling, secondary recovery operations, or the production of oil or gas, or the existence of a shut-in well capable of producing oil or gas.

There shall be allocated to the portion of leased premises included in any such pooling such proportion of the actual production from all lands so pooled as such portion as leased premises, computed on an acreage basis, bears to the entire acreage of the lands so pooled. The production so allocated shall be considered for the purpose of payment or delivery of royalty to be the entire production for the portion of leased premises included in such pooling in the same manner as though produced from such portion of leased premises under the terms of this Lease.

6. If the Lessor owns a lesser interest in the above-described land than the entire and undivided mineral estate therein, then the royalties herein provided for shall be paid the said Lessor only in the proportion which his interest bears the whole and undivided mineral estate.

7. If the estate of either party hereto is assigned, and the privilege of assigning in whole or in part is hereby expressly allowed, the covenants hereof shall extend to their heirs, executors, administrators, successors or assigns, but no change in the ownership of the land or in the minerals in and under the same or assignment of royalties shall be binding on Lessee unless Lessee shall have been furnished ninety (90) days before payment hereunder of such royalties, with certified copies of recorded instruments following evidence of title.

EXHIBIT

15

This instrument was prepared by:
Gateway Land Services, LLC
7100 N. Classen, Suite 400
Oklahoma City, OK 73116

## AGREEMENT TO EXTEND OIL AND GAS LEASE

STATE OF _____ARKANSAS_____ )
                                                   )
COUNTY OF ___CLEBURNE____ )

WHEREAS, on the 1st day of July, 2005, Ernie C. Hunt, a/k/a Earnest C. Hunt, a/k/a Earnie Hunt, and Sherry L. Hunt, husband and wife, as Lessor, executed an oil and gas lease in favor of Chesapeake Exploration Limited Partnership, an Oklahoma limited partnership, as Lessee, recorded in Book 36, Page 10, of the County Records of Cleburne County, Arkansas, covering and describing the following lands to wit:

**NE/4 NE/4 of Section 27-T11N-R11W**

WHEREAS, it is the desire of the parties hereto that the primary term of said lease be extended;

NOW, THEREFORE, the undersigned, the present owner(s) of the oil, gas and other minerals in, on and under said land, in consideration of the sum of Ten Dollars ($10.00) and other valuable consideration, the receipt of which is hereby acknowledged, do hereby agree as follows:

(1) That the primary term stipulated in said lease is hereby changed from five (5) years to ten (10) years from the date of said lease. It being the intent of the parties hereto to extend the primary term of said lease for an additional five (5) years.

(2) That the royalty payable to Lessor under clauses 2 and 3 of said lease is hereby changed from 1/8th to 1/5th.

(3) It is agreed between the Lessor and Lessee that, notwithstanding any language herein to the contrary, all oil, gas or other proceeds accruing to the Lessor under this lease or by state law shall be without deduction for the cost of producing, gathering, storing, separating, treating, dehydrating, compressing, processing, transporting, and marketing the oil, gas and other products produced hereunder to transform the product into marketable form; however, any such costs which result in enhancing the value of the marketable oil, gas or other products to receive a better price may be deducted from Lessor's share of production so long as they are based on Lessee's actual cost of such enhancements. However, in no event shall Lessor receive a price that is less than, or more than, the price received by Lessee.

(4) Lessor agrees and obligates itself to conduct its operations upon the leased premises as a reasonable and prudent operator and in such a way as to cause a minimum of damage to the land and improvements thereon, including fences; and that should it become necessary to make any opening in the fences, Lessee will properly brace the fence on each side of the opening to prevent slackening of the wires and shall place substantial metal gates in such openings. Said gates and cattle guards shall be installed before drilling operations commence and said gates shall remain on said property unless otherwise directed by Lessors. Lessee agrees that within 120 days after any operation hereunder, weather permitting, Lessee shall repair the damaged land to the fullest practical extent, including the filling and leveling of all of the holes, pits, ruts, roads or excavations in the areas to no longer be used by Lessee; and upon termination hereof, to fully repair all damaged land not already repaired to the end commencement of such operations. Lessee shall pay for all actual injury or damage done or caused by Lessee in its operations hereunder to any buildings, fences, roads, roadway easements, culverts, merchantable timber, growing crops or other improvements on said land which is not replaced or repaired by Lessee according to the terms of this lease.

(5) The right to maintain this lease in force by paying shut-in royalty as set out herein is a recurring right, which may be exercised by Lessee from time to time, but in no event shall any shut-in period exceed more then two (2) consecutive years. In the event any shut-in period exceeds more than two (2) consecutive years, Lessee shall not be required to relinquish its rights in and to the wellbore(s) of well(s) drilled theretofore.

To effectuate the purposes and intent of the parties hereto, the undersigned does hereby grant, bargain, sell, convey, lease and let exclusively unto Chesapeake Exploration, L.L.C., an Oklahoma limited liability company, as successor in interest to Chesapeake Exploration Limited Partnership, an Oklahoma limited partnership, all the oil, gas and other minerals in, on and under said land for and during the term of said lease as herein amended and extended, and subject to the provisions thereof. Except as herein changed, the provisions of said lease and any recorded amendment thereto shall remain in full force and effect, and are hereby ratified, adopted and confirmed the same as if incorporated herein.

EXHIBIT
16

IN WITNESS WHEREOF this instrument is executed on this _13th_ day of _November_, 2009.

_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_

Tax ID/SS#:

_Ernie C. Hunt_

Lessor: Ernie C. Hunt, a/k/a Earnest C. Hunt, a/k/a Earnie Hunt

_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_

Tax ID/SS#:

_Sherry L Hunt_

Lessor: Sherry L. Hunt

**ACKNOWLEDGEMENT**

STATE OF _Arkansas_

COUNTY OF _Cleburne_

        Before me, the undersigned Notary Public in and for the above county and state, on this day personally appeared Ernie C. Hunt, a/k/a Earnest C. Hunt, a/k/a Earnie Hunt, and Sherry L. Hunt, husband and wife, known to me to be the person(s) whose name(s) is/are subscribed to the foregoing instrument, and acknowledged that he/she/they executed the same as his/her/their free and voluntary act and deed for the purposes and consideration therein expressed, including the relinquishment of curtesy, dower, and homestead.

        Given under my hand and seal of office this _13th_ day of _November_ 2009.

My Commission Expires:

_2/25/13_

        SEAL

_Crystal Fouse_

Notary Public

OFFICIAL SEAL
CRYSTAL FOUSE
NOTARY PUBLIC - ARKANSAS
LONOKE COUNTY
My Commission Expires FEBRUARY 25, 2013

Prepared By:  R.D. Williams & Company
P.O. Box 441
Fort Smith, AR 72902





EXHIBIT
17

## OIL AND GAS LEASE
### (PAID-UP)

THIS LEASE made and entered into this **18th** day of ___July___, **2011**, by and between **William Dellain Nelson and Juanita Allen Nelson, husband and wife** hereinafter called Lessor, whose address is **44 Wesley Chapel Rd., Quitman, AR  72131** and **XTO Energy Inc.**, hereinafter called Lessee, whose address is 810 Houston Street, Fort Worth, Texas 76102.

1. That Lessor, for and in consideration of the sum of Ten Dollars ($10.00) and other valuable consideration, in hand paid, and of the covenants and agreements hereinafter contained to be performed, does hereby grant, demise, lease and let, exclusively, unto said Lessee, for the purpose of carrying on geological, geophysical and other exploration work and the drilling, operating for, producing and saving of all the oil, gas and other hydrocarbons and all rights incident thereto, including but not limited to the right of ingress and egress and the right to construct, operate and maintain pipelines, structures and facilities, all that certain tract of land, together with any reversionary rights therein, situated in the County of Cleburne, State of Arkansas, described as follows:

### SECTION 26, TOWNSHIP 11 NORTH, RANGE 12 WEST

The Southeast Quarter of the Northwest Quarter (SE/4 NW/4)

**It is agreed between the parties hereto, that surface operations will be negotiated under a separate contract.**

containing **40.00** acres, more or less, and also, in addition to the above described land, any and all strips or parcels of land, other than those constituting regular governmental subdivisions, adjoining or contiguous to the above described land owned or claimed by lessor, all of the foregoing land being hereinafter referred to as "leased premises." It is the intention of Lessor that the leased premises and include all lands owned or claimed by Lessor in the above numbered governmental section(s) together with any and all accretions thereto, whether or not accurately and completely described herein.

2. This Lease shall remain in force for a primary term of **five (5)** years and as long thereafter as oil, gas or other hydrocarbons are produced or deemed to be produced, from the leased premises or from lands pooled therewith.

3. Lessee shall pay to Lessor a one-fifth (1/5th) gross payment of the royalties for gas produced from the leased premises and sold by Lessee or the manufacture of casinghead gasoline or other products, less Lessor's proportionate share of taxes. Lessor's one-fifth (1/5th) gross royalty shall not bear either directly or indirectly any part of the cost or expenses of production, separation, gathering, compression, dehydration, transportation, trucking, processing, blending, treatment, storage of the gas to make the gas marketable. Any post-production costs to enhance the value of the gas such as dehydration, blending, gathering, compression and transportation costs necessary to improve the already marketable gas shall be determined and shared in accordance with the provisions and guidelines set forth in **Mittelstaedt vs. Santa Fe Minerals, Inc.** 954 P.2d 1203 **(Okla. 1998).**

4. If a well capable of producing gas or gas and gas-condensate in paying quantities located on the leased premises (or on acreage pooled or consolidated with all or a portion of the leased premises into a unit for the drilling or operation of such well) is at any time shut in and no gas or gas-condensate is sold therefrom or used off the premises or for the manufacture of gasoline or other products, nevertheless such shut-in well shall be deemed to be a well on the leased premises producing gas in paying quantities and this lease shall continue in force during all of the time or times while such well is so shut in. Lessee shall use reasonable diligence to market gas or gas-condensate capable of being produced from such shut-in well but shall be under no obligation to market such products under terms, conditions or circumstances which, in Lessee's judgment exercised in good faith, are unsatisfactory. Lessee shall be obligated to pay or tender to Lessor, within forty-five (45) days after the expiration of each period of one (1) year in length (annual period) during which such well is so shut in, a royalty of One Dollar ($1.00) per net mineral acre retained hereunder as of the end of such annual period; provided that, if gas or gas-condensate from such well is sold or used as aforesaid before the end of any such annual period, or if at the end of any such annual period this Lease is being maintained in force and effect otherwise than by reason of such shut-in well, Lessee shall not be obligated to pay or tender, for that particular annual period, said sum of money. Such payment shall be deemed a royalty under all provisions of this Lease. Lessee's failure to pay or tender such payment, for any reason, shall render Lessee liable for the amount due, but shall not operate to terminate this lease. Such payment may be made or tendered to Lessor's credit direct to Lessor at the above address or their successors, for any and all sums payable under this Lease regardless of changes of ownership in said land, or in the right to receive royalty hereunder. Royalty ownership as of the last day of each such annual period as shown by Lessee's records shall govern the determination of the party or parties entitled to receive such payment. After the primary term or any extended term under the lease the lease shall not extend more than 3 consecutive years merely by the existence of a "shut-in" well although the lease may be extended by other provisions of the oil and gas lease.

5. Lessee hereby is given the right at its option, at any time and whether before or after production, to pool for development and operation purposes all, or any part or parts, of the leased premises or rights therein with any other land in the vicinity thereof, or

with any leasehold, operating or other rights or interests in such other land, so as to create units of such size and surface acreage as Lessee may reasonably desire, but containing not more than one hundred sixty (160) acres: provided, however, a unit may be established hereunder containing not more than six hundred forty (640) acres plus ten percent (10%) acreage tolerance if unitized only as to gas rights or only as to gas-condensate, except that units pooled for oil or oil and gas for or in conjunction with repressuring, pressure maintenance, cycling and secondary recovery operations or any one or more of same may be formed to include not more than three hundred twenty (320) acres. If at any time larger units are required under any then applicable law, rule, regulation or order of any governmental authority for the drilling, completion or operation of a well, or for obtaining maximum allowable from any contemplated, drilling or completed well, any such unit may be established or enlarged to conform to the size specified by such law, rule, regulation or order. Operations on any part of any lands so pooled shall, except for the payment of royalties, be considered operations on the leased premises under this Lease, and, notwithstanding the status of the well at the time of pooling, such operations shall be deemed to be in connection with a well which was commenced on the leased premises under this Lease. The term "operations" used herein shall include, without limitation, the following: commencing construction of roadways, preparation of drillsite, drilling, testing, completing, reworking, recompleting, deepening, plugging back, repressuring, pressure maintenance, cycling, secondary recovery operations; or the production of oil or gas; or the existence of a shut-in well capable of producing oil or gas.

There shall be allocated to the portion of the leased premises included in any such pooling such proportion of the actual production from all lands so pooled as such portion of the leased premises, computed on an acreage basis, bears to the entire acreage of the lands so pooled. The production so allocated shall be considered for the purpose of payment or delivery of royalty to be the entire production for the portion of the leased premises included in such pooling in the same manner as though produced from such portion of the leased premises under the terms of this Lease.

6. If Lessor owns a lesser interest in the leased premises than the entire and undivided mineral estate therein, then the royalties provided for herein shall be paid said Lessor only in the proportion which his interest bears to the whole and undivided mineral estate.

7. If the estate of either party hereto is assigned, and the privilege of assigning in whole or in part is hereby expressly allowed, the covenants hereof shall extend to their heirs, executors, administrators, successors or assigns, but no change in the ownership of the leased premises or the minerals in and under the same or assignment of royalties shall be binding on Lessee unless Lessee shall have been furnished ninety (90) days before payment hereunder of such royalties with certified copies of recorded instruments showing evidence of title.

8. Lessee shall have the right to use, free of cost, gas, oil and water found on said land for its operations, except water from the wells of Lessor. When required by Lessor, Lessee shall bury its pipelines below plow depth and shall pay reasonable damages for injury by reason of its operations to growing crops on said land. No well shall be drilled nearer than six hundred (600) feet to any house or other permanent structure occupied by animals or humans on the leased premises as of the date of this lease without the written consent of Lessor. Lessee shall have the right at any time during, or after the expiration of the term of this Lease to enter upon the property and to remove all machinery, fixtures and other structures placed on the leased premises, including the right to draw and remove all casing, but Lessee shall be under no obligation to do so. During the term of this lease, Lessee shall have the exclusive right to conduct exploration by geophysical or other methods upon the lands covered hereby.

9. If prior to the discovery of oil or gas on the leased premises Lessee should drill a dry hole or holes thereon, or if after discovery of oil or gas the production thereof should cease from any cause, this Lease shall not terminate if Lessee commences additional operations as provided herein within ninety (90) days thereafter, or, if it be within the primary term, then not until the expiration thereof. If at, or after, the expiration of the primary term oil or gas is not being produced on the leased premises, but Lessee is then engaged in operations thereon as provided herein, this Lease shall remain in force so long as operations are prosecuted (whether on the same or successive wells) with no cessation of more than ninety (90) days, and, if production results therefrom, then as long as production is maintained pursuant to the terms hereof.

10. Lessee may at any time surrender or cancel this Lease, in whole or in part, by delivering or mailing such release to the Lessor, or by placing such release of record in the proper County. In case this Lease is surrendered or canceled as to only a portion of the acreage covered hereby, then all payments and liabilities thereafter accruing under the terms of this Lease as to that portion shall cease. As to the portion of the acreage not released, the terms and provisions of this Lease shall continue and remain in full force and effect for all purposes.

11. All provisions hereof, express or implied, shall be subject to all Federal and State Laws and the orders, rules and regulations of all governmental agencies administering the same. This lease shall not in any way be terminated, wholly or partially, nor shall Lessee be liable in damages for failure to comply with any of the express or implied provisions hereof if such failure is the result of the exercise of such governmental authority, acts of God, explosion, blow out, fire, flood, lack of market, market conditions, lack of equipment for any cause, equipment failure, labor trouble, war or any other cause reasonably beyond the control of Lessee. Should the Lessee be prevented from complying with any of the express or implied provisions hereof or its obligations hereunder by any of the aforestated causes, the primary term of this Lease shall be extended until one year after the removal of such cause or causes.

12. Not withstanding language to the contrary in the lease whereby Lessor would be held liable under any warranty provision the parties agree that Lessor will not be held liable under any warranty provision set forth herein since Lessee is relying upon Lessee's investigation of title to the lease premises. Any failure of title will not require Lessor to refund any portion of the consideration paid by the Lessee for the execution of this lease and in the event it is determined that Lessor does not have a valid title to the oil, gas and other minerals in and to the leased premises Lessor will not be deemed to be in violation of any warranty provision to the contrary. It is further agreed by Lessor and Lessee that no additional bonus consideration shall be due to Lessor if it is determined at a later time that the amount of Lessor's acreage is greater than what is the described lands on this Oil and Gas Lease. Lessee, at its option, may pay or discharge, in whole or in part, any taxes, encumbrances or other liens existing, levied or assessed against the leased

premises and, in the event Lessee exercises such option, it shall be subrogated to the rights of any holder(s) thereof and may reimburse itself by applying any royalty accruing hereunder to the amount of such encumbrance, tax or other lien paid by Lessee plus any costs, expenses or attorney's fees reasonably incurred by Lessee and interest at the rate of ten percent (10%) per annum. To facilitate Lessee's proper payment hereunder, it is specifically understood and agreed that Lessee will require Lessor to execute and return Lessee's then current form of division order or other payment directive as a condition precedent to Lessee's obligation to pay royalties from production hereunder.

13. Lessee is hereby given the right to acquire for its own benefit, deeds, leases or assignments covering any interest or claim in the leased premises which Lessee or any other party contends is outstanding and not covered hereby even though such outstanding interest or claim may be invalid or adverse to Lessor. In the event the validity of this Lease, or Lessee's privilege to exercise its rights hereunder, be disputed by Lessor or by any other person, then, for the period such dispute remains undisposed of, Lessee shall be relieved of all obligations hereunder to explore or develop leased premises, all royalties or other payments which would otherwise accrue shall be suspended for such period and this Lease shall automatically be extended for an additional period equal to the duration of such period.

14. It is specifically understood that each spouse named herein and executing this Lease, for the consideration set out, above, and the covenants and agreements contained in this Lease to be performed, does hereby release and relinquish unto said Lessee all right of dower, curtesy and homestead in and to the lands covered hereby for the purposes of this Lease.

15. This Lease and all its terms, conditions and stipulations shall extend to and be binding upon all successors in title of said Lessor or Lessee.

16. If at any time within the primary term of this lease or during the time this lease is in effect, Lessor receives any bona fide offer acceptable to Lessor to grant an additional lease (top lease) covering all or any part of the leased premises described above, Lessee, or its assigns, shall have the continuing option by meeting any such offer to acquire such top lease. Any offer must be in writing and must set forth the proposed Lessee's name, including the client name if purchased through an independent broker, bonus consideration and royalty consideration to be paid for such Lease, and include a copy of the Lease form to be utilized, which form should reflect all pertinent and relevant terms and conditions of the top lease. Lessee, or its assigns, shall have thirty (30) days after receipt from Lessor the information required herein to meet any such bona fide offer and enter into an oil and gas lease of equivalent terms and conditions. If Lessee, or its assigns, fails to notify Lessor within the aforestated time period of its election to meet the bona fide offer, Lessor shall have the right to accept the offer.

17. If a draft is tendered to Lessor for the execution of this lease, said draft shall be considered a part of the consideration for the execution of this lease and in the event the draft is not paid in accordance with it's terms and conditions this lease shall be automatically void.

18. Any right to construct a pipeline on Lessor's land will be limited to where there is actual production of oil and gas on the described lands or lands pooled therewith. Lessee agrees that no pipeline will be constructed on Lessor's property for the transport out of unit gas without compensating and obtaining a right of way from Lessor in the form of a separate easement.

19. The location of any well site and any road or access method onto the Lessor's property for ingress and egress to the well site from a public road would be agreed to by the Lessee and Lessor with additional compensation for which and the terms of the well site to be set forth in a separate Surface Agreement which would be agreed upon by the parties at the time of the well site selection.

20. Upon termination of this lease, and as weather conditions allow, Lessee or lease holder shall remove all machinery, fixtures or structures and shall restore Lessor's land to as near a condition as it was prior to any drilling operations as is practicable and reasonable.

IN WITNESS WHEREOF, this Lease is executed as of the date first set out hereinabove.

LESSOR (S):

_William Dellain Nelson_
**William Dellain Nelson**

_Juanita Allen Nelson_
**Juanita Allen Nelson**

## ACKNOWLEDGEMENT

STATE OF ___ARKANSAS___ }

COUNTY OF ___White___ }

On this ___20th___ day of ___July___, 20__11__, before me, a Notary Public in and for said County and State, personally appeared William Dellain Nelson and Juanita Allen Nelson, husband and wife _____ known to be the person(s) whose name(s) are subscribed to the foregoing instrument and acknowledged that he/she/they executed the same as his/her/their free and voluntary act and deed for the purpose and consideration therein mentioned and set forth, including relinquishment of dower, curtesy and homestead.

IN WITNESS, WHEREOF, I have hereunto set my hand and official seal this ___20th___ day of ___July___, 20__11__.

My commission expires:
___3-30-2019___

_David P. Ramey_
Notary Public



Prepared By:  R.D. Williams & Company
              P.O. Box 441
              Fort Smith, AR 72902



## OIL AND GAS LEASE
### (PAID-UP)

THIS LEASE made and entered into this __18th__ day of ____July____, __2011__, by and between __William Dellain Nelson and Juanita Allen Nelson, husband and wife__ hereinafter called Lessor, whose address is __44 Wesley Chapel Rd., Quitman, AR 72131__ and XTO Energy Inc., hereinafter called Lessee, whose address is 810 Houston Street, Fort Worth, Texas 76102.

1. That Lessor, for and in consideration of the sum of Ten Dollars ($10.00) and other valuable consideration, in hand paid, and of the covenants and agreements hereinafter contained to be performed, does hereby grant, demise, lease and let, exclusively, unto said Lessee, for the purpose of carrying on geological, geophysical and other exploration work and the drilling, operating for, producing and saving of all the oil, gas and other hydrocarbons and all rights incident thereto, including but not limited to the right of ingress and egress and the right to construct, operate and maintain pipelines, structures and facilities, all that certain tract of land, together with any reversionary rights therein, situated in the County of __Cleburne__, State of Arkansas, described as follows:

### SECTION 4, TOWNSHIP 9 NORTH, RANGE 11 WEST

Only insofar as lands lie in Section 4-9N-11W: Part of the Northeast Quarter of the Northeast Quarter (NE/4 NE/4) of Section Four (4) and Part of the Northwest Quarter of the Northwest Quarter (NW/4 NW/4) of Section Three (3), Township Nine (9) North, Range Eleven (11) West, Cleburne County, Arkansas, described as follows: Beginning at the NW corner of the NE/4 NE/4 of Section 4, thence N89°55'01"E 749.30 feet, thence S01°11'16"W 618.00 feet, thence N89°55'01"E 564.00 feet, thence N01°11'16"E 409.29 feet, thence N89°48'46"E 208.71 feet to the Southwest corner of 3.65 acre parcel described in Book 218, Page 301, Cleburne County records, thence N89°34'18"E 726.13 feet, thence N55°35'02"E 124.68 to a point on the West right-of-way line of Arkansas Highway #16, thence S46°25'49"E 277.67 feet along said right-of-way line to a point of curvature of a curve left having a delta of 30°08'39", a radius of 1955.23 feet and a long chord bearing S61°30'08"E 1016.85 feet, thence Southeasterly along said right-of-way line an arc distance of 100 feet, thence departing said right-of-way line S55°21'25"W 810.23 feet, thence S89°17'46"W 660.00 feet, then N89°22'50"W 1312.94 feet, thence N01°10'51"E 843.28 feet to the point of beginning.

It is agreed between the parties hereto, that surface operations will be negotiated under a separate contract.

containing __82.617__ acres, more or less, and also, in addition to the above described land, any and all strips or parcels of land, other than those constituting regular governmental subdivisions, adjoining or contiguous to the above described land and owned or claimed by Lessor, all of the foregoing land being hereinafter referred to as "leased premises." It is the intention of Lessor that the leased premises cover and include all lands owned or claimed by Lessor in the above numbered governmental section(s) together with any and all accretions thereto, whether or not accurately and completely described herein.

2. This Lease shall remain in force for a primary term of __five (5)__ years and as long thereafter as oil, gas or other hydrocarbons are produced or deemed to be produced, from the leased premises or from lands pooled therewith.

3. Lessee shall pay to Lessor a one-fifth (1/5th) gross payment of the royalties for gas produced from the leased premises and sold by Lessee or the manufacture of casinghead gasoline or other products, less Lessor's proportionate share of taxes. Lessor's one-fifth (1/5th) gross royalty shall not bear either directly or indirectly any part of the cost or expenses of production, separation, gathering, compression, dehydration, transportation, trucking, processing, blending, treatment, storage of the gas to make the gas marketable. Any post-production costs to enhance the value of the gas such as dehydration, blending, gathering, compression and transportation costs necessary to improve the already marketable gas shall be determined and shared in accordance with the provisions and guidelines set forth in __Mittelstaedt vs. Santa Fe Minerals, Inc.__ 954 P.2d 1203 __(Okla. 1998).__

4. If a well capable of producing gas or gas and gas-condensate in paying quantities located on the leased premises (or on acreage pooled or consolidated with all or a portion of the leased premises into a unit for the drilling or operation of such well) is at any time shut in and no gas or gas-condensate is sold therefrom or used off the premises or for the manufacture of gasoline or other products, nevertheless such shut-in well shall be deemed to be a well on the leased premises producing gas in paying quantities and this lease shall continue in force during all of the time or times while such well is so shut in. Lessee shall use reasonable diligence to market gas or gas-condensate capable of being produced from such shut-in well but shall be under no obligation to market such products under terms, conditions or circumstances which, in Lessee's judgment exercised in good faith, are unsatisfactory. Lessee shall

be obligated to pay or tender to Lessor, within forty-five (45) days after the expiration of each period of one (1) year in length (annual period) during which such well is so shut in, a royalty of One Dollar ($1.00) per net mineral acre retained hereunder as of the end of such annual period; provided that, if gas or gas-condensate from such well is sold or used as aforesaid before the end of any such annual period, or if at the end of any such annual period this Lease is being maintained in force and effect otherwise than by reason of such shut-in well, Lessee shall not be obligated to pay or tender, for that particular annual period, said sum of money. Such payment shall be deemed a royalty under all provisions of this Lease. Lessee's failure to pay or tender such payment, for any reason, shall render Lessee liable for the amount due, but shall not operate to terminate this lease. Such payment may be made or tendered to Lessor's credit direct to Lessor at the above address or their successors, for any and all sums payable under this Lease regardless of changes of ownership in said land, or in the right to receive royalty hereunder. Royalty ownership as of the last day of each such annual period as shown by Lessee's records shall govern the determination of the party or parties entitled to receive such payment. After the primary term or any extended term under the lease the lease shall not extend more than 3 consecutive years merely by the existence of a "shut-in" well although the lease may be extended by other provisions of the oil and gas lease.

5. Lessee hereby is given the right at its option, at any time and whether before or after production, to pool for development and operation purposes all, or any part or parts, of the leased premises or rights therein with any other land in the vicinity thereof, or with any leasehold, operating or other rights or interests in such other land, so as to create units of such size and surface acreage as Lessee may reasonably desire, but containing not more than one hundred sixty (160) acres: provided, however, a unit may be established hereunder containing not more than six hundred forty (640) acres plus ten percent (10%) acreage tolerance if unitized only as to gas rights or only as to gas-condensate, except that units pooled for oil or oil and gas for or in conjunction with repressuring, pressure maintenance, cycling and secondary recovery operations or any one or more of same may be formed to include not more than three hundred twenty (320) acres. If at any time larger units are required under any then applicable law, rule, regulation or order of any governmental authority for the drilling, completion or operation of a well, or for obtaining maximum allowable from any contemplated, drilling or completed well, any such unit may be established or enlarged to conform to the size specified by such law, rule, regulation or order. Operations on any part of any lands so pooled shall, except for the payment of royalties, be considered operations on the leased premises under this Lease, and, notwithstanding the status of the well at the time of pooling, such operations shall be deemed to be in connection with a well which was commenced on the leased premises under this Lease. The term "operations" used herein shall include, without limitation, the following: commencing construction of roadways, preparation of drillsite, drilling, testing, completing, reworking, recompleting, deepening, plugging back, repressuring, pressure maintenance, cycling, secondary recovery operations; or the production of oil or gas; or the existence of a shut-in well capable of producing oil or gas.

There shall be allocated to the portion of the leased premises included in any such pooling such proportion of the actual production from all lands so pooled as such portion of the leased premises, computed on an acreage basis, bears to the entire acreage of the lands so pooled. The production so allocated shall be considered for the purpose of payment or delivery of royalty to be the entire production for the portion of the leased premises included in such pooling in the same manner as though produced from such portion of the leased premises under the terms of this Lease.

6. If Lessor owns a lesser interest in the leased premises than the entire and undivided mineral estate therein, then the royalties provided for herein shall be paid said Lessor only in the proportion which his interest bears to the whole and undivided mineral estate.

7. If the estate of either party hereto is assigned, and the privilege of assigning in whole or in part is hereby expressly allowed, the covenants hereof shall extend to their heirs, executors, administrators, successors or assigns, but no change in the ownership of the leased premises or the minerals in and under the same or assignment of royalties shall be binding on Lessee unless Lessee shall have been furnished ninety (90) days before payment hereunder of such royalties with certified copies of recorded instruments showing evidence of title.

8. ~~Lessee shall have the right to use, free of cost, gas, oil and water found on said land for its operations, except water from the wells of Lessor.~~ When required by Lessor, Lessee shall bury its pipelines below plow depth and shall pay reasonable damages for injury by reason of its operations to growing crops on said land. No well shall be drilled nearer than four hundred (400) feet to any house or other permanent structure occupied by animals or humans on the leased premises as of the date of this lease without the written consent of Lessor. Lessee shall have the right at any time during, or after the expiration of the term of this Lease to enter upon the property and to remove all machinery, fixtures and other structures placed on the leased premises, including the right to draw and remove all casing, but Lessee shall be under no obligation to do so. During the term of this lease, Lessee shall have the exclusive right to conduct exploration by geophysical or other methods upon the lands covered hereby.

9. If prior to the discovery of oil or gas on the leased premises Lessee should drill a dry hole or holes thereon, or if after discovery of oil or gas the production thereof should cease from any cause, this Lease shall not terminate if Lessee commences additional operations as provided herein within ninety (90) days thereafter, or, if it be within the primary term, then not until the expiration thereof. If at, or after, the expiration of the primary term oil or gas is not being produced on the leased premises, but Lessee is then engaged in operations thereon as provided herein, this Lease shall remain in force so long as operations are prosecuted (whether on the same or successive wells) with no cessation of more than ninety (90) days, and, if production results therefrom, then as long as production is maintained pursuant to the terms hereof.

10. Lessee may at any time surrender or cancel this Lease, in whole or in part, by delivering or mailing such release to the Lessor, or by placing such release of record in the proper County. In case this Lease is surrendered or canceled as to only a portion of the acreage covered hereby, then all payments and liabilities thereafter accruing under the terms of this Lease as to that portion shall cease. As to the portion of the acreage not released, the terms and provisions of this Lease shall continue and remain in full force and effect for all purposes.

11. All provisions hereof, express or implied, shall be subject to all Federal and State Laws and the orders, rules and regulations of all governmental agencies administering the same. This lease shall not in any way be terminated, wholly or partially, nor shall Lessee be liable in damages for failure to comply with any of the express or implied provisions hereof if such failure is the sult of the exercise of such governmental authority, acts of God, explosion, blow out, fire, flood, lack of market, market conditions, ＿＿＿of equipment for any cause, equipment failure, labor trouble, war or any other cause reasonably beyond the control of Lessee. Should the Lessee be prevented from complying with any of the express or implied provisions hereof or its obligations hereunder by any of the aforestated causes, the primary term of this Lease shall be extended until one year after the removal of such cause or causes.

12. Notwithstanding language to the contrary in the lease whereby Lessor would be held liable under any warranty provision the parties agree that Lessor will not be held liable under any warranty provision set forth herein since Lessee is relying upon Lessee's own investigation of title to the lease premises. Any failure of title will not require Lessor to refund any portion of the consideration paid by the Lessee for the execution of this lease and in the event it is determined that Lessor does not have a valid title to the oil, gas and other minerals in and to the leased premises Lessor will not be deemed to be in violation of any warranty provision to the contrary. It is further agreed by Lessor and Lessee that no additional bonus consideration shall be due to Lessor if it is determined at a later time that the amount of Lessor's acreage is greater than what is the described lands on this Oil and Gas Lease. Lessee, at its option, may pay or discharge, in whole or in part, any taxes, encumbrances or other liens existing, levied or assessed against the leased premises and, in the event Lessee exercises such option, it shall be subrogated to the rights of any holder(s) thereof and may reimburse itself by applying any royalty accruing hereunder to the amount of such encumbrance, tax or other lien paid by Lessee plus any costs, expenses or attorney's fees reasonably incurred by Lessee and interest at the rate of ten percent (10%) per annum. To facilitate Lessee's proper payment hereunder, it is specifically understood and agreed that Lessee will require Lessor to execute and return Lessee's then current form of division order or other payment directive as a condition precedent to Lessee's obligation to pay royalties from production hereunder.

13. Lessee is hereby given the right to acquire for its own benefit, deeds, leases or assignments covering any interest or claim in the leased premises which Lessee or any other party contends is outstanding and not covered hereby even though such outstanding interest or claim may be invalid or adverse to Lessor. In the event the validity of this Lease, or Lessee's privilege to exercise its rights hereunder, be disputed by Lessor or by any other person, then, for the period such dispute remains undisposed of, Lessee shall be relieved of all obligations hereunder to explore or develop leased premises, all royalties or other payments which would otherwise accrue shall be suspended for such period and this Lease shall automatically be extended for an additional period equal to the duration of such period.

14. It is specifically understood that each spouse named herein and executing this Lease, for the consideration set out, above ＿＿＿ the covenants and agreements contained in this Lease to be performed, does hereby release and relinquish unto said Lessee all ＿＿＿of dower, curtesy and homestead in and to the lands covered hereby for the purposes of this Lease.

15. This Lease and all its terms, conditions and stipulations shall extend to and be binding upon all successors in title of said Lessor or Lessee.

16. If at any time within the primary term of this lease or during the time this lease is in effect, Lessor receives any bona fide offer acceptable to Lessor to grant an additional lease (top lease) covering all or any part of the leased premises described above, Lessee, or its assigns, shall have the continuing option by meeting any such offer to acquire such top lease. Any offer must be in writing and must set forth the proposed Lessee's name, including the client name if purchased through an independent broker, bonus consideration and royalty consideration to be paid for such Lease, and include a copy of the Lease form to be utilized, which form should reflect all pertinent and relevant terms and conditions of the top lease. Lessee, or its assigns, shall have thirty (30) days after receipt from Lessor the information required herein to meet any such bona fide offer and enter into an oil and gas lease of equivalent terms and conditions. If Lessee, or its assigns, fails to notify Lessor within the aforestated time period of its election to meet the bona fide offer, Lessor shall have the right to accept the offer.

17. If a draft is tendered to Lessor for the execution of this lease, said draft shall be considered a part of the consideration for the execution of this lease and in the event the draft is not paid in accordance with it's terms and conditions this lease shall be automatically void.

18. Any right to construct a pipeline on Lessor's land will be limited to where there is actual production of oil and gas on the described lands or lands pooled therewith. Lessee agrees that no pipeline will be constructed on Lessor's property for the transport out of unit gas without compensating and obtaining a right of way from Lessor in the form of a separate easement.

19. The location of any well site and any road or access method onto the Lessor's property for ingress and egress to the well site from a public road would be agreed to by the Lessee and Lessor with additional compensation for which and the terms of the well site to be set forth in a separate Surface Agreement which would be agreed upon by the parties at the time of the well site selection.

20. Upon termination of this lease, and as weather conditions allow, Lessee or lease holder shall remove all machinery, fixtures or structures and shall restore Lessor's land to as near a condition as it was prior to any drilling operations as is practicable and reasonable.



IN WITNESS WHEREOF, this Lease is executed as of the date first set out hereinabove.

LESSOR (S):

_William Dellain Nelson_
William Dellain Nelson

_Juanita Allen Nelson_
Juanita Allen Nelson

## ACKNOWLEDGEMENT

STATE OF __ARKANSAS__         }

COUNTY OF __White__         }

On this __20th__ day of ___July___, 20 _11__, before me, a Notary Public in and for said County and  State, personally appeared William Dellain Nelson and Juanita Allen Nelson, husband and wife                                                     known to be the person(s) whose name(s) are subscribed to the foregoing instrument and acknowledged that he/she/they executed the same as his/her/their free and voluntary act and deed for the purpose and consideration therein mentioned and set forth, including the relinquishment of dower, curtesy and homestead.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal this __20th__ day of __July___, 20 _11_.

My commission expires:
Q3 30, 2019

_Donald P. Raney_
Notary Public



Certificate of Record
State of Arkansas, County of Cleburne
KAREN GILES, CIRCUIT CLERK
Filed & Recorded in Cleburne County
Date 10/21/2005 02:19:06 PM
Pages 1,Fees $14.00
Book 235 Page 739-741
Karen Giles, Clerk
D.C.

## OIL AND GAS LEASE
(Arkansas — Paid-up)

This instrument was prepared by:
Vernon L. Smith and Associates, Inc.
P.O. Box 720053
Norman, OK 73070

THIS AGREEMENT made and entered into this _____1st_____ day of _____July_____ , 20 05 , by and between:

Keith Murphree and Evelyn Murphree, husband and wife

6264 Braybourne Main

Olive Branch, MS 38654

hereinafter called Lessor and Cheapeake Exploration Limited Partnership, an Oklahoma limited partnership, P.O. Box 18496, Oklahoma City, Oklahoma 73154-0496, hereinafter called Lessee.

WITNESSETH, that Lessor, for and in consideration of the sum of Ten and more Dollars ($10.00 & more) in hand paid, and of the covenants and agreements hereinafter contained to be performed by the Lessee, does hereby grant, demise, lease and let unto said Lessee exclusively the hereinafter described land, for the purpose of carrying on geological, geophysical, seismic, and other exploration work, and drilling and operating for, producing and saving all of the oil, gas, (including casinghead gas, coal seam gas, coal bed methane gas, helium and all other constituents) and other hydrocarbons, all that certain tract of land, together with any reversionary rights therein situated in the County of _____Cleburne_____ State of Arkansas, and described as follows:

ALL

of Section _____18_____ , Township _____11 North_____ , Range _____10 West_____ , and containing _____640.00_____ acres, more or less, and also, in addition to the above described land, any and all strips or parcels of land, other than those constituting regular governmental subdivisions, adjoining or contiguous to the above described land and owned or claimed by Lessor, all of the foregoing land being hereinafter referred to as leased premises. It is the intention of the Lessor herein that the leased premises cover and include all lands owned or claimed by Lessor in the above numbered governmental section or sections together with any and all accretions thereto whether or not herein accurately and completely described.

1. This lease shall remain in force for a primary term of _____Five (5)_____ years and as long thereafter as oil, gas or other hydrocarbons are produced from said leased premises or from lands pooled therewith.

2. Lessee shall deliver, free of cost, to Lessor at the wells, or to the credit of Lessor in the pipeline to which the wells may be connected, the equal 1/8th part of all oil and other liquid hydrocarbons produced and saved from the leased premises, or at Lessee's option, to pay Lessor for such 1/8th royalty the market price at the well for such oil and other liquid hydrocarbons of like grade and gravity prevailing on the day such oil and other liquid hydrocarbons are run from the lease stock tanks.

3. Lessee shall pay or, if required by law, contribute to be paid to Lessor 1/8th of the net proceeds realized by Lessee for all gas (including all substances contained in such gas) produced from the leased premises and sold by Lessee, less Lessor's proportionate share of taxes and all costs incurred by Lessee in delivering, processing, compressing or otherwise making such gas or other substances merchantable or enhancing the marketing thereof. If such gas is used by Lessee off the leased premises or used by Lessee for the manufacture of casinghead gasoline or other products, Lessee shall pay Lessor 1/8th of the prevailing market value at the well for the gas so used.

4. If a well capable of producing gas or gas and gas-condensate in paying quantities located on the leased premises (or on acreage pooled or consolidated with all or a portion of the leased premises into a unit for the drilling or operation of such well) is at any time shut in and no gas or gas-condensate therefrom, is sold or used off the premises or for the manufacture of gasoline or other products, nevertheless such shut-in well shall be deemed to be a well on the leased premises producing gas in paying quantities and this Lease will continue in force during all of the time or times while such shut-in well is so shut in, whether before or after the expiration of the primary term hereof. Lessee shall use reasonable diligence to market gas or gas-condensate capable of being produced from such shut-in well but shall be under no obligation to market such products under terms, conditions or circumstances which, in Lessee's judgment exercised in good faith, are unsatisfactory. Lessee shall be obligated to pay or tender to Lessor within 45 days after the expiration of each period of one year length (annual period) during which such well is shut in, a royalty of One Dollar ($1.00) per net royalty acre retained hereunder as of the end of such annual period; provided that, if gas or gas-condensate from such well is sold or used as aforesaid before the end of any such annual period, or if, at the end of any such annual period, this Lease is being maintained in force and effect otherwise than by reason of such shut-in well, Lessee shall not be obligated to pay or tender, for that particular annual period, said sum of money. Such payment shall be deemed a royalty under all provisions of this Lease. Lessee's failure to pay or tender such payment, for any reason, shall render Lessee liable for the amount due, but shall not operate to terminate this lease. Such payment shall be made or tendered to Lessor at the above address or to their successors. Royalty ownership as of the last day of each such annual period as shown by Lessee's records shall govern the determination of the party or parties entitled to receive such payment.

5. Lessee hereby is given the right at its option, at any time and whether before or after production, to pool for development and operation purposes all or any part or parts of the leased premises or rights therein with any other land in the vicinity thereof, or with any leasehold, operating or other rights or interests in such other land so as to create units of such size and surface acreage as Lessee may desire but containing not more than forty-five (45) acres; provided, however, a unit may be established hereunder containing not more than 640 acres plus 10% acreage tolerance if unitized only as to gas rights or only as to gas and gas-condensate, except that units pooled for oil or oil and gas for or in conjunction with repressuring, pressure maintenance, cycling and secondary recovery operations or any one or more of same, may be formed to include no more than 320 acres. If at any time larger units are required under any then applicable law, rule, regulations or order of any governmental authority for the drilling, completion or operation of a well, or for obtaining maximum allowable for any contemplated, drilling or completed well, any such unit may be established or enlarged to conform to the size specified by such law, rule, regulation or order.

Operations on any part of any lands so pooled shall, except for the payment of royalties, be considered operations on leased premises under this Lease, and, notwithstanding the status of a well at the time of pooling, such operations shall be deemed to be in connection with a well which is commenced on leased premises under this Lease. The term "operations" as used herein shall include, without limitation, the following: Commencing, construction of roadways, preparation of drillsite, drilling, testing, completing, reworking, recompleting, deepening, plugging back, repressuring, pressuring maintenance, cycling, secondary recovery operations, or the production of oil or gas, or the existence of a shut-in well capable of producing oil or gas.

There shall be allocated to the portion of leased premises included in any such pooling such proportion of the actual production from all lands so pooled as such portion so leased premises, computed on an acreage basis, bears to the entire acreage of the lands so pooled. The production so allocated shall be considered for the purpose of payment or delivery or royalty to be the entire production for the portion of leased premises included in such pooling in the same manner as though produced from such portion of leased premises under the terms of this Lease.

6. If the Lessor owns a lesser interest in the above-described land than the entire and undivided mineral estate therein, then the royalties herein provided for shall be paid the said Lessor only in the proportion which his interest bears the whole and undivided mineral estate.

7. If the estate of either party hereto is assigned, and the privilege of assigning in whole or in part is hereby expressly allowed, the covenants hereof shall extend to their heirs, executors, administrators, successors or assigns, but no change in the ownership of the land or the minerals in and under the same or assignment of royalties shall be binding on Lessee unless Lessee shall have been furnished ninety (90) days before payment hereunder of such royalties, with certified copies of recorded instruments showing evidence of title.

EXHIBIT

19

8. Lessee shall have the right to use, free of cost, gas, oil and water found on said land for its operations, except water from the wells of the Lessor. When required by the Lessor, the Lessee shall bury its pipelines below plow depth and shall pay reasonable damages for injury by reason of its operations to growing crops on said land. No well shall be drilled nearer than 200 feet to any house or barn or other structure on said premises as of the date of this Lease without the written consent of the Lessor. Lessee shall have the right at any time during, or after the expiration of this Lease to enter upon the property and to remove all machinery, fixtures, and other structures placed on said premises, including the right to draw and move all casing, but the Lessee shall be under no obligation to do so.

9. Notwithstanding anything contained in this Lease to the contrary, it is expressly agreed that if the Lessee shall commence operations as provided herein at any time while this Lease is in force, this Lease shall remain in force and its terms shall continue so long as such operations are prosecuted, and if production results therefrom, then as long as production is maintained.

10. If, after the expiration of the primary term of this Lease, production on the leased premises should cease from any cause, this Lease shall not terminate provided Lessee commences operations for additional drilling or reworking within sixty (60) days from such cessation, and this Lease shall remain in force during the prosecution of such operations and if production results therefrom, then as long as production is maintained.

11. Lessee may at any time surrender or cancel this Lease in whole or in part by delivering or mailing such release to the Lessor, or by placing such release of record in the proper County. In case this Lease is surrendered or cancelled as to only a portion of the acreage covered thereby, then all payments and liabilities thereafter accruing under the terms of this Lease as to the portion cancelled shall cease. As to the portion of the acreage not released, the terms and provisions of this Lease shall continue and remain in full force and effect for all purposes.

12. All provisions hereof, express or implied, shall be subject to all Federal and State Laws and the orders, rules, and regulations of all governmental agencies administering the same, and this Lease shall not in any way be invalid or partially, nor shall the Lessee be liable in damages for failure to comply with any of the express or implied provisions hereof if such failure accords with any such laws, orders, rules or regulations. Should the Lessee be prevented during the last year of the primary term hereof from drilling a well hereunder by the order of any constituted authority having jurisdiction, or if Lessee shall be unable during said period to drill a well hereunder due to the equipment necessary in the drilling thereof not being available for any cause, the primary term of this Lease shall continue until one year after said order is suspended or said equipment is available.

13. Lessor hereby warrants and agrees to defend the title to the land herein described and agrees that the Lessee, at its option, may pay or discharge in whole or in part any taxes, encumbrances, or other liens existing, levied or assessed against the above-described lands, and in the event Lessee exercises such option it shall be subrogated to the rights of any holder or holders thereof and may reimburse itself by applying any royalty accruing hereunder to the amount of any such encumbrance, tax or other lien paid by Lessee.

14. Lessee hereby is given the right to acquire for its own benefit, deeds, leases, or assignments covering any interest or claim in leased premises which Lessee or any other party contends is outstanding and not covered hereby and even though such outstanding interest or claim be invalid or adverse to Lessor. In the event the validity of this Lease be disputed by Lessor or by any other person, then, for the period such dispute remain undisposed of, Lessee shall be relieved of all obligations hereunder to explore or develop leased premises; all royalties or other payments which would otherwise accrue shall be suspended for such period; and this Lease automatically shall be extended for an additional period equal to the duration of such period.

15. If at any time within the primary term of this Lease and while the same remains in force and effect, Lessor receives any bona fide offer, acceptable to Lessor, to grant an additional Lease (top lease) covering all or part of the afore-described lands, Lessee shall have the continuing option by meeting any such offer to acquire such top lease. Any offer must be in writing, and must be set forth the proposed Lessee's name, bonus consideration and royalty consideration to be paid for such Lease, and include a copy of the Lease form to be utilized which form should reflect all pertinent and relevant terms and conditions of the top lease. Lessee shall have fifteen (15) days after receipt, from Lessor, of a complete copy of any such offer to advise Lessor in writing of its election into an oil and gas Lease with Lessor on equivalent terms and conditions. If Lessee fails to notify Lessor within the aforesaid fifteen (15) day period of its election to meet any such bona fide offer, Lessor shall have the right to accept said offer.

16. It is specifically understood that each wife and husband named herein and executing this Lease, for the consideration above set out, and the covenants and agreements contained in this Lease to be performed by the Lessee, does hereby release and relinquish unto said Lessee, all right of dower, curtesy and homestead in and to the lands covered hereby for the purpose of this Lease.

17. This Lease and all its terms, conditions and stipulations shall extend to and be binding on all successors in title of said Lessor or Lessee.

18. It is the intent of the Lessor to lease all of Lessor's interest in and to the Section described herein, whether or not the tracts recited hereon are properly described, and further it is understood that this Lease includes all rights owned by the Lessor in this section whether or not correctly described and any other properties owned by the Lessor in the drilling and spacing unit for this well, including without limitation, strips, gores, alleyways, roadways, accretions and avulsions.

    See Exhibit "A" attached hereto and made a part hereof.

    IN WITNESS WHEREOF, this Lease is executed as of date first set out herein above.


Tax ID/SS#: _____            _Keith Murphree_
                                                Lessor: Keith Murphree

Tax ID/SS#: _____            _Evelyn Murphree_
                                                Lessor: Evelyn Murphree


## ACKNOWLEDGEMENT

STATE OF _____ )
COUNTY OF _____ )

    Before me, the undersigned Notary Public in and for the above county and state, on this day personally appeared Keith Murphree and Evelyn Murphree, husband and wife, known to me to be the person(s) whose name (s) is/are subscribed to the foregoing instrument, and acknowledged that he/she/they executed the same as his/her/their free and voluntary act and deed for the purposes and consideration herein expressed, including the relinquishment of curtesy, dower, and homestead.

    Given under my hand and seal of office this _____ day of _____, 2005.

My Commission Expires:

_____                           _____
                                                Notary Public

SEAL

```
        OFFICIAL SEAL
      FRANCES NELSON
   NOTARY PUBLIC-ARKANSAS
        WHITE COUNTY
 MY COMMISSION EXPIRES: 06-06-15
```

**Exhibit "A"**

Exhibit "A" attached hereto and made a part of that certain Oil and Gas Lease dated July 1, 2005, by and between Keith Murphree and Evelyn Murphree, husband and wife, as Lessor, and Chesapeake Exploration Limited Partnership, an Oklahoma limited partnership, as Lessee.

Lessee agrees and obligates itself to conduct its operations upon the leased premises as a reasonable and prudent operator and in such a way as to cause a minimum of damage to the land and improvements thereon, including fences; and that it should it become necessary to make any opening in the fences, Lessee will properly brace the fence on each side of the opening to prevent slackening of the wires and shall place substantial metal gates in such openings. Said gates and cattle guards shall be installed before drilling operations commence and said gates shall remain on said property unless otherwise directed by Lessors. Lessee agrees that within 120 days after any operation hereunder, weather permitting, Lessee shall repair the damaged land to the fullest practical extent, including the filling and leveling all of the holes, pits, ruts, roads or excavations in the areas to no longer to be used by Lessee; and upon termination hereof, to fully repair all damages land not already repaired to the end commencement of such operations. Lessee shall pay for all actual injury or damage done or caused by Lessee in its operations hereunder to any buildings, fences, roads, roadway, easements, culverts, merchantable timber, growing crops or other improvements on said land which is not replaced or repaired by Lessee according to the terms of this Lease.

The right to maintain this lease in force by paying shut-in royalty as set out herein is a recurring right, which may be exercised by Lessee from time to time, but in no event shall any shut-in period exceed more than Two (2) consecutive years. In the event any shut-in period exceeds more than Two (2) consecutive years, Lessee shall not be required to relinquish its rights in and to the wellbore(s) of well(s) drilled theretofore.

Signed for Identification: _Keith Murphree_
Keith Murphree

Signed for Identification: _Evelyn Murphree_
Evelyn Murphree



Certificate of Record
State of Arkansas, County of Cleburne
KAREN GILES, CIRCUIT CLERK
Filed & Recorded in Cleburne County
Date 01/07/2010, 02:40:31 PM
Fees $15.00
DOC # 201000226
Karen Giles, Clerk

This instrument was prepared by:
Gateway Land Services
7100 N. Classen
Oklahoma City, OK 73116

OIL AND GAS LEASE AMENDMENT

L0510305

STATE OF ARKANSAS }
COUNTY OF CLEBURNE }

WHEREAS, on the 1st day of July, 2008, Edward Keith Murphree and Evelyn Murphree, husband and wife, as Lessor, executed an oil and gas lease in favor of Chesapeake Exploration Limited Partnership, an Oklahoma limited partnership... as Lessee, recorded in Book 38, Page 738, of the Oil and Gas Book of Cleburne County, Arkansas, covering and describing the following lands to wit:

E/2 NE/4 of Section 19-11N-10W

WHEREAS, said lease is now owned by Chesapeake Exploration, L.L.C.; and

WHEREAS, it is the desire of the parties hereto that the lease be amended as detailed herein;

NOW, THEREFORE, the undersigned, the present owner(s) of the oil, gas and other minerals in, on and under said land, in consideration of the sum of Ten Dollars ($10.00) and other valuable consideration, the receipt of which is hereby acknowledged, do hereby agree to amend the terms and provisions of said lease as follows:

(1) That the primary term stipulated in said lease is hereby changed from five (5) years to ten (10) years from the date of said lease. It being the intent of the parties hereto to extend the primary term of said lease for an additional five (5) years.

(2) That the royalty payable to Lessor under clauses 2 and 3 of said lease is hereby changed from 1/8th to 1/6th.

(3) It is agreed between the Lessor and Lessee that, notwithstanding any language herein to the contrary, all oil, gas or other proceeds accruing to the Lessor under this lease or by state law shall be without deduction for the cost of producing, gathering, storing, separating, treating, dehydrating, compressing, processing, transporting, and marketing the oil, gas and other products produced hereunder to transform the product into marketable form; however, any such costs which result in enhancing the value of the marketable oil, gas or other products to receive a better price may be deducted from Lessor's share of production so long as they are based on Lessee's actual cost of such enhancements. However, in no event shall Lessor receive a price that is less than, or more than, the price received by Lessee.

To effectuate the purposes and intent of the parties hereto, the undersigned does hereby grant, bargain, sell, convey, lease and let exclusively unto Chesapeake Exploration, L.L.C., all the oil, gas and other minerals in, on and under said land for and during the term of said lease as herein amended and extended, and subject to the provisions thereof. Except as herein changed, the provisions of said lease and any recorded amendment thereto shall remain in full force and effect, and are hereby ratified, adopted and confirmed the same as if incorporated herein. If any terms or provisions in said lease conflict with any terms or provisions in this Oil and Gas Lease Amendment, the terms, agreements, conditions and provisions of this Oil and Gas Lease Amendment shall govern the relationship between the Lessor and the Lessee.

IN WITNESS WHEREOF this instrument is executed on this 24th day of November, 2009.

Tax ID/SS#: _____

_____
Lessor: Edward Keith Murphree

_____
Tax ID/SS#: _____
Lessor: Evelyn Murphree

ACKNOWLEDGEMENT

Prepared By:
Chesapeake Exploration, L.L.C.
P.O. Box 18496
Oklahoma City, OK. 73154

STATE OF Arkansas
COUNTY OF White

Before me, the undersigned Notary Public in and for the above county and state, on this day personally appeared Edward Keith Murphree and Evelyn Murphree, husband and wife, known to me to be the person(s) whose name(s) is/are subscribed to the foregoing instrument, and acknowledged that he/she/they executed the same as his/her/their free and voluntary act and deed for the purposes and consideration therein expressed, including the relinquishment of curtsey, dower, and homestead.

Given under my hand and seal of office this 24th day of November, 2009

My Commission Expires:
2/25/13

SEAL

_____
Notary Public

Record & Return to:
Chesapeake Operating, Inc.
P.O. Box 18496
Oklahoma City, OK. 73154

OFFICIAL SEAL
CRYSTAL FOUSE
NOTARY PUBLIC - ARKANSAS
LONOKE COUNTY
My Commission Expires FEBRUARY 25, 2013

EXHIBIT
20

Certificate of Record
State of Arkansas, County of Cleburne
KAREN GILES, CIRCUIT CLERK
Filed & Recorded in Cleburne County
Date 01/07/2010,02:48:44 PM
Fees $25.00
DOC # 201000239
Karen Giles, Clerk

**OIL AND GAS LEASE**
(Arkansas — Paid-up)

This instrument was prepared by:
Gateway Land Services, LLC
7100 N. Classen, Suite 400
Oklahoma City, OK 73116

L 0511270

THIS AGREEMENT made and entered into this ____24th____ day of ____November____, 20 _09_, by and between:

Henry Keith Murphree and Evelyn Murphree

873 Golden Pond Drive

Coldwater, MS 38618

Hereinafter called Lessor and Chesapeake Exploration, L.L.C., an Oklahoma limited liability company, P.O. Box 18496, Oklahoma City, Oklahoma 73154-0496, hereinafter called Lessee.

WITNESSETH, that Lessor, for and in consideration of the sum of Ten and more Dollars ($10.00 & more) in hand paid, and of the covenants and agreements hereinafter contained and to be performed by the Lessee, does hereby grant, demise, lease and let unto said Lessee, exclusively, the hereinafter described land for the purpose of carrying on geological, geophysical, seismic, and other exploration work and drilling and operating for, producing and saving all of the oil, gas (including casinghead gas, coal seam gas, coal bed methane gas, helium and all other constituents), and other hydrocarbons and laying pipelines, together with any reversionary rights therein, situated in the County of ____Cleburne____, State of Arkansas, and described as follows:

N/2 SE/4 and S/2 SW/4

***The intent of this lease is to have an effective date of August 11, 2010.***

of Section ___27___, Township __11 North__, Range __11 West__, and containing ___160___ acres, more or less, and also, in addition to the above-described land, any and all strips or parcels of land, other than those constituting regular governmental subdivisions, adjoining or contiguous to the above-described land and owned or claimed by Lessor, all of the foregoing land being hereinafter referred to as leased premises. It is the intention of the Lessor herein that the leased premises cover and include all lands owned or claimed by Lessor in the above-numbered governmental section or sections, together with any and all accretions thereto whether or not herein accurately and completely described.

1. This Lease shall remain in force for a primary term of ____Five (5)____ years and as long thereafter as oil, gas or other hydrocarbons are produced from said leased premises or from lands pooled therewith.

2. Lessee shall deliver, free of cost, to Lessor at the wells, or to the credit of Lessor in the pipeline to which the wells may be connected, the equal 1/8th part of all oil and other liquid hydrocarbons produced and saved from the leased premises, or at Lessee's option, to pay Lessor for such 1/8th royalty the market price at the well for such oil and other liquid hydrocarbons of like grade and gravity prevailing on the day such oil and other liquid hydrocarbons are run from the lease stock tanks.

3. Lessee shall pay or, if required by law, contribute to be paid to Lessor 1/8th of the net proceeds realized by Lessee of gas (including all substances contained in such gas) produced from the leased premises and sold by Lessee, less Lessor's proportionate share of taxes and all costs incurred by Lessee in delivering, processing, compressing or otherwise making such gas or other substances merchantable or enhancing the marketing thereof. If such gas is used by Lessee off the leased premises or used by Lessee for the manufacture of casinghead gasoline or other products, Lessee shall pay Lessor 1/8th of the prevailing market value at the well for the gas so used.

4. If a well capable of producing gas or gas and gas condensate in paying quantities located on the leased premises [...]

5. Lessee hereby is given the right at its option, at any time and whether before or after production, to pool for development and operation purposes all or any part or parts of the leased premises or rights therein with any other land in the vicinity thereof, or with any leasehold, operating or other rights or interests in such other land so as to create units of such size and surface acreage as Lessee may desire but containing not more than forty-five (45) acres; provided, however, a unit may be established hereunder containing not more than 640 acres plus 10% acreage tolerance if unitized only as to gas rights or only as to gas and gas condensate, except that units pooled for oil or oil and gas for or in conjunction with repressuring, pressure maintenance, cycling and secondary recovery operations or any one or more of same, may be formed to include no more than 320 acres. If at any time larger units are required under any then applicable law, rule, regulations or order of any governmental authority for the drilling, completion or operation of a well, or for obtaining maximum allowable for any contemplated, drilling or completed well, any such unit may be established or enlarged to conform to the size specified by such law, rule, regulation or order.

Operations on any part of any lands so pooled shall, except for the payment of royalties, be considered operations on leased premises under this Lease, and, notwithstanding the status of a well at the time of pooling, such operations shall be deemed to be in connection with a well which is commenced on leased premises under this Lease. The term "operations" as used herein shall include, without limitation, the following: commencing, construction of roadways, preparation of drillsite, drilling, testing, completing, reworking, recompleting, deepening, plugging back, repressuring, pressuring maintenance, cycling, secondary recovery operations, or the production of oil or gas, or the existence of a shut-in well capable of producing oil or gas.

There shall be allocated to the portion of leased premises included in any such pooling such proportion of the actual production from all lands so pooled as such portion as leased premises, computed on an acreage basis, bears to the entire acreage of the lands so pooled. The production so allocated shall be considered for the purpose of payment or delivery or royalty to be the entire production for the portion of leased premises included in such pooling in the same manner as though produced from such portion of leased premises under the terms of this Lease.

6. If the Lessor owns a lesser interest in the above-described land than the entire and undivided mineral estate therein, then the royalties herein provided for shall be paid to the said Lessor only in the proportion which his interest bears to the whole and undivided mineral estate.

7. If the estate of either party hereto is assigned, and the privilege of assigning in whole or in part is hereby expressly allowed, the covenants hereof shall extend to their heirs, executors, administrators, successors or assigns, but no change in the ownership of the land or the minerals in and under the same or assignment of royalties shall be binding on Lessee unless Lessee shall have been furnished ninety (90) days before payment hereunder of such royalties, with certified copies of recorded instruments showing evidence of title.



EXHIBIT
21

8. Lessee shall have the right to use, free of cost, gas, oil and water found on said land for its operations, except water from the wells of the Lessor. When required by the Lessor, the Lessee shall bury its pipelines below plow depth and shall pay reasonable damages for injury by reason of its operations to growing crops on said land. No well shall be drilled nearer than 200 feet to any house or barn or other structure on said premises as of the date of this Lease without the written consent of the Lessor. Lessee shall have the right at any time during, or after the expiration of its Lease to enter upon the property and to remove all machinery, fixtures, and other structures placed on said premises, including the right to draw and move all casing, but the Lessee shall be under no obligation to do so.

9. Notwithstanding anything contained in this Lease to the contrary, it is expressly agreed that if the Lessee shall commence operations as provided herein at any time while this Lease is in force, this Lease and its terms shall remain in force and its terms shall continue so long as such operations are prosecuted, and if production results therefrom, then so long as production is maintained.

10. If, after the expiration of the primary term of this Lease, production on the leased premises should cease from any cause, this Lease shall not terminate provided Lessee commences operations for additional drilling or reworking within sixty (60) days from such cessation, and this Lease shall remain in force during the prosecution of such operations and if production results therefrom, then so long as production is maintained.

11. Lessee may at any time surrender or cancel this Lease in whole or in part by delivering or mailing such release to the Lessor, or by placing such release of record in the proper County. In case this Lease is surrendered or cancelled as to only a portion of the acreage covered thereby, then all payments and liabilities thereafter accruing under the terms of this Lease as to the portion surrendered shall cease. As to the portion of the acreage not released, the terms and provisions of this Lease shall continue and remain in full force and effect for all purposes.

12. All provisions hereof, express or implied, shall be subject to all Federal and State Laws and the orders, rules, and regulations of all governmental agencies administering the same, and this Lease shall not in any way be terminated wholly or partially, nor shall the Lessee be liable in damages for failure to comply with any of the express or implied provisions hereof if such failure accords with any such laws, orders, rules or regulations. Should the Lessee be prevented during the last year of the primary term hereof from drilling a well hereunder by the order of any constituted authority having jurisdiction, or if Lessee shall be unable during said period to drill a well hereunder due to the equipment necessary in the drilling thereof not being available for any cause, the primary term of this Lease shall continue until one year after said order is suspended or said equipment is available.

13. Lessor hereby warrants and agrees to defend the title to the land herein described and agrees that the Lessee, at its option, may pay or discharge in whole or in part any taxes, encumbrances, or other liens existing, levied or assessed against the above-described lands, and in the event Lessee exercises such option, it shall be subrogated to the rights of any holder or holders thereof and may reimburse itself by applying any royalty accruing hereunder to the amount of any such encumbrance, tax or other lien paid by Lessee.

14. Lessee hereby is given the right to acquire for its own benefit deeds, leases, or assignments covering any interest or claim in leased premises which Lessee or any other party contends is outstanding and not covered hereby and even though such outstanding interest or claim be invalid or adverse to Lessee. In the event the validity of this Lease be disputed by Lessor or by any other person, then, for the period such dispute remains undisposed of, Lessee shall be relieved of all obligations hereunder to explore or develop leased premises; all royalties or other payments which would otherwise accrue shall be suspended for such period; and this Lease automatically shall be extended for an additional period equal to the duration of such period.

15. If, at any time within the primary term of this Lease and while the same remains in force and effect, Lessor receives any bona fide offer, acceptable to Lessor, to grant an additional Lease (top lease) covering all or part of the afore-described lands, Lessee shall have the continuing option by meeting any such offer to acquire such top lease. Any offer must be in writing, and must set forth the proposed Lessee's name, bonus consideration and royalty consideration to be paid for such Lease, and include a copy of the Lease form to be utilized which form should reflect all pertinent and relevant terms and conditions of the top lease. Lessee shall have fifteen (15) days after receipt from Lessor, of a complete copy of any such offer to advise Lessor in writing of its election to enter into an oil and gas Lease with Lessor on equivalent terms and conditions. If Lessee fails to notify Lessor within the aforesaid fifteen (15) day period of its election to meet any such bona fide offer, Lessor shall have the right to accept said offer.

16. It is specifically understood that each wife and husband named herein and executing this Lease, for the consideration above set out, and the covenants and agreements contained in this Lease to be performed by the Lessee, does hereby release and relinquish unto said Lessee all right of dower, curtesy and homestead in and to the lands covered hereby for the purpose of this Lease.

17. This Lease and all its terms, conditions and stipulations shall extend to and be binding on all successors in title of said Lessor or Lessee.

18. It is the intent of the Lessor to lease, and Lessor does hereby grant, demise, lease and let unto Lessee, all oil, gas and other minerals owned by Lessor in Section 27, Township 11 North, Range 11 West, Cleburne County, Arkansas, whether or not properly and completely described herein. In the event it is determined that Lessor actually owns more net mineral acres than that assumed by the parties in the calculation of lease bonus and paid by Lessee, Lessor and Lessee agree that Lessee shall pay Lessor for such additional net acreage at the same bonus price per acre agreed upon for the execution of this oil and gas lease. Likewise, in the event it is determined that Lessor owns less net acres, or it is determined that Lessor's acreage is currently leased under a prior oil and gas lease, then the Lessor agrees to reimburse Lessee for the bonus per acre paid for the acreage not owned by Lessor or under the prior oil and gas lease.

This Lease is subject to an Oil and Gas lease filed of record in Cleburne County, Arkansas in Oil and Gas Book 37, Page 262, dated August 10, 2005, by and between Carol Nation, Lessor's, in favor of Chesapeake Exploration Limited Partnership, an Oklahoma limited partnership.

See exhibit "A" attached hereto and made a part hereof.

IN WITNESS WHEREOF, this Lease is executed as of date first set out herein above.

_Henry Keith Murphree_
Lessor: Henry Keith Murphree

_Evelyn Murphree_
Lessor: Evelyn Murphree

Tax ID/SSN:

Tax ID/SSN:

### ACKNOWLEDGEMENT

STATE OF _Arkansas_
COUNTY OF _White_

Before me, the undersigned Notary Public in and for the above county and state, on this day personally appeared Henry Keith Murphree and Evelyn Murphree, husband and wife, known to me to be the person(s) whose name(s) is/are subscribed to the foregoing instrument, and acknowledged that he/she/they executed the same as his/her/their free and voluntary act and deed for the purposes and consideration therein expressed, including the relinquishment of curtesy, dower, and homestead.

Given under my hand and seal of office this 24th day of November 2008.

My Commission Expires:

_2/25/13_

SEAL

_Crystal Fouse_
Notary Public

OFFICIAL SEAL
CRYSTAL FOUSE
NOTARY PUBLIC - ARKANSAS
LONOKE COUNTY
My Commission Expires FEBRUARY 25, 2013

Exhibit "A"

Attached hereto and made a part of that certain Oil and Gas Lease dated November 24, 2009, by and between Henry Keith Murphree and Evelyn Murphree, husband and wife, as Lessor, and Chesapeake Exploration, L.L.C., an Oklahoma limited liability company, as Lessee.

1. It is agreed between the Lessor and Lessee that, notwithstanding any language herein to the contrary, all oil, gas or other proceeds accruing to the Lessor under this lease or by state law shall be without deduction for the cost of producing, gathering, storing, separating, treating, dehydrating, compressing, processing, transporting, and marketing the oil, gas and other products produced hereunder to transform the product into marketable form; however, any such costs which result in enhancing the value of the marketable oil, gas or other products to receive a better price may be deducted from Lessor's share of production so long as they are based on Lessee's actual cost of such enhancements. However, in no event shall Lessor receive a price that is less than, or more than, the price received by Lessee.

Signed for Identification: _Keith Murphree_
                           Keith Murphree

Signed for Identification: _Evelyn Murphree_
                           Evelyn Murphree

Record & Return to:
Chesapeake Operating, Inc.
P.O. Box 18496
Oklahoma City, OK 73154

# WILLIAMS & ANDERSON PLC

TWENTY-SECOND FLOOR
111 CENTER STREET
**LITTLE ROCK, ARKANSAS 72201**

(501) 372-0800
TELECOPIER
(501) 372-6453

RICHARD H. MAYS
rmays@williamsanderson.com

DIRECT DIAL
(501) 396-8446

November 7, 2018

XTO Energy, Inc.
c/o Corporation Service Company
Agent for Service for XTO
300 Spring Building, Suite 900
Little Rock, Arkansas  72201

Re:  **Notice of Judicial Action**
Lessors:  See attached list of Lessors on Exhibit No. 1
Lessee:  XTO Energy, Inc.

Ladies and Gentlemen:

This firm represents a number of individuals ("Lessors") who entered into Oil
and Gas Leases on various properties owned by them in Cleburne County, Arkansas,
which Leases are now held by XTO Energy, Inc. as "Lessee." Enclosed with this letter is
a Description of Leases that contains, among other information, the names and
addresses of the Lessors, the property included in the Leases, and the location of those
Leases in the Records of Cleburne County, Arkansas.

With one exception, those Leases (or the Appendices to them) all contain a
common provision relative to the payment of royalties to the Lessors and a prohibition
against deduction of production, transportation and marketing costs from the royalties
to be paid to the Lessors except in certain circumstances. That common provision reads
as follows:

It is agreed between the Lessor and Lessee that notwithstanding any language
herein to the contrary, all oil, gas or other proceeds accruing to the Lessor under
the lease or by state law shall be without deduction for the cost of producing,
gathering, storing, separating, treating, dehydrating, compressing, processing,
transporting and marketing the oil, gas and other products produced hereunder
to transform the product into marketable form; however, any such costs which
result in enhancing the value of the marketable oil, gas or other products to



**www.williamsanderson.com**

EXHIBIT
22

WILLIAMS & ANDERSON PLC

November 7, 2018
Page 2

receive a better price may be deducted from Lessor's share of production so long as they are based on Lessee's actual cost of such enhancements. However, in no event shall Lessor receive a price that is less than, or more than, the price received by Lessee.

The single exception to the wording of the applicable royalty provision quoted above is contained in an Oil and Gas Lease between Harold Ray Moore and Doris A. Moore, husband and wife, to Petrohawk Properties, L.P. (predecessor in interest to XTO Energy, Inc.) dated December 10, 2008, that simply states that: "Royalty shall be free of costs or deductions."

For a period of time after obtaining production on these leases, XTO or its predecessors in interest complied with the above-quoted royalty provisions by not deducting production, transportation and marketing costs from royalty. However, for more than two (2) years, XTO has deducted and continues to deduct from the Lessors' royalties costs allegedly incurred by XTO of producing, processing, transporting and marketing the gas.

Under the terms of the royalty provisions in the leases, XTO is not entitled to deduct any costs of enhancement of gas to make it marketable. It is also not entitled to deduct any costs of enhancement of marketable gas to achieve a better price without demonstrating to the royalty owners that such enhancements were necessary to receive a better price for the product, and that such enhancements were based on XTO's actual costs of such enhancements. XTO has not made such demonstration.

By withholding payment of gross royalties to Lessors (i.e., without deduction of any costs), XTO has violated the requirements of Ark. Code Ann. §§15-74-601 to -604. Pursuant to Ark. Code Ann. §15-74-603, Lessors hereby give notice to you as a first purchaser or as the owner of the right to produce under the aforementioned Oil and Gas Leases of Lessors' intent to file a judicial action against you as a result of the abovementioned violations and breach of the Oil and Gas Lease. Such suit will include a claim for an accounting by XTO of the royalties paid and that should have been paid without deduction of any costs, and also interest on the amounts due at the rate of twelve percent (12%) per annum, plus penalty and attorney fees.

Any suit filed pursuant to this Notice will also include a request for certification of the case as a class action to include all persons and entities that are lessors in oil and

WILLIAMS & ANDERSON PLC

November 7, 2018
Page 3

gas leases covering property in the Fayetteville Shale with the same or similar royalty
provisions as those contained in the Leases described or referred to in this letter, and
from whom costs of production, treatment, marketing and transportation are being or
have been deducted.

Pursuant to Ark. Code Ann. §15-74-603(c), you have thirty (30) days after receipt
of this notice within which to pay the proceeds due, plus a reasonable attorney fee, or to
respond in writing with a reasonable basis for nonpayment.

We anticipate that we will be retained by additional persons or entities having
the same or similar claims under their leases with XTO. If so, we will consider your
response to this Notice to be the same as that you would make to the same Notice of
claims that could be made in the future for such additional persons or entities.

I look forward to hearing from you within the said thirty-day period.

Sincerely,

WILLIAMS & ANDERSON PLC

Richard H. Mays
Senior Counsel

RHM/nj
Encl.
Certified Mail No. 7012 3050 0000 7661 2763
Return Receipt Requested

cc:    **XTO Energy Inc.**
       22777 Springwoods Village Pkwy.
       Spring, TX 77389
       Certified Mail No. 7012 3050 0000 7661 2770
       Return Receipt Requested

       Client group

## ATTACHMENT TO NOTICE OF JUDICIAL ACTION
## TO XTO ENERGY, INC.
## October 31, 2018

### Description Of Lessors/Leases

1.                                 *The McCarty Lease*

Oil and Gas Lease from Jerry McCarty and Cassandra McCarty to Chesapeake
Exploration LLC dated December 16, 2009. See attached Exhibit No. 1.


2.                                 *The Thomas Lease*

Oil and Gas Lease from Patricia Thomas a/k/a Patricia A. Thomas and Larry Thomas
a/k/a Larry L. Thomas to Chesapeake Exploration LLC dated December 16, 2009,
recorded as Document 201001853 of the Records of Cleburne County, Arkansas. See
attached Exhibit No. 2.


3.                                 *The Moore Leases*

*Lease No. 1:*
Oil and Gas Lease from Harold Ray Moore and Doris A. Moore to Chesapeake
Exploration LLC dated March 9, 2010, recorded as Document 201003822 of the Records
of Cleburne County, Arkansas. See attached Exhibit No. 3.

*Lease No. 2:*
Oil and Gas Lease from Harold Ray Moore and Doris A. Moore to Petrohawk Properties,
L.P., dated December 10, 2008. See attached Exhibit No. 4.

4.                                 *The Bittle Leases*

*Lease No. 1:*
Oil and Gas Lease from Johnny Bittle and Linda Bittle to Chesapeake Exploration LLC
dated February 26, 2010, recorded as Document 201003754 of the Records of Cleburne
County, Arkansas. See attached Exhibit No. 5.

*Lease No. 2:*
Oil and Gas Lease from Johnny Bittle and Linda Bittle to Chesapeake Exploration LLC
dated May 27, 2010, recorded as Document 201007840 of the Records of Cleburne
County, Arkansas. See attached Exhibit No. 6.


*Lease No. 3:*

Oil and Gas Lease from Johnny Bittle and Linda Bittle to Chesapeake Exploration LLC dated May 27, 2010, recorded as Document 201007845 of the Records of Cleburne County, Arkansas. See attached Exhibit No. 7.

### Lease No. 4:
Oil and Gas Lease from Johnny Bittle and Linda Bittle to Chesapeake Exploration LLC dated May 27, 2010, recorded as Document 201007844 of the Records of Cleburne County, Arkansas. See attached Exhibit No. 8.

5.                            *The Hunt Leases*

### Lease No. 1:
Oil and Gas Lease from Ernie C. Hunt and Sherry L. Hunt to Chesapeake Exploration Limited Partnership dated July 1, 2005, as amended May 27, 2010, recorded in Book 35 at page 740 of the Records of Cleburne County, Arkansas, as amended by Agreement to Extend Oil and Gas Lease dated November 13, 2009. See attached Exhibits 9 and 10.

### Lease No. 2:
Oil and Gas Lease from Ernie C. Hunt and Sherry L. Hunt to Chesapeake Exploration Limited Partnership dated July 1, 2005, recorded in Book 36 at page 10 of the Records of Cleburne County, Arkansas, as amended by Agreement to Extend Oil and Gas Lease dated November 13, 2009. See attached Agreement to Extend, Exhibits No. 11 and 12.

### Lease No. 3:
Oil and Gas Lease from Ernie C. Hunt and Sherry L. Hunt to Chesapeake Exploration Limited Partnership dated July 1, 2005, recorded in Book 37 at page 4 of the Records of Cleburne County, Arkansas, as amended by Agreement to Extend Oil and Gas Lease dated November 13, 2009. See attached Agreement to Extend, Exhibits 13 and 14.

### Lease No. 4:
Oil and Gas Lease from Ernie C. Hunt and Sherry L. Hunt to Chesapeake Exploration Limited Partnership dated July 1, 2005, recorded in Book 37 at page 78 of the Records of Cleburne County, Arkansas, as amended by Agreement to Extend Oil and Gas Lease dated November 13, 2009. See attached Agreement to Extend, Exhibits No. 15 and 16.

6.                            *The Nelson Leases*

### Lease No. 1:
Oil and Gas Lease from William Dellain Nelson and Juanita Allen Nelson to XTO Energy, Inc., dated July 18, 2011. See attached Exhibit No. 17.

### Lease No. 2:

Oil and Gas Lease from William Dellain Nelson and Juanita Allen Nelson to XTO Energy, Inc., dated July 18, 2011. See attached Exhibit No. 18.

7.                                  *The Murphree Leases*

*Lease No. 1:*
Oil and Gas Lease from Henry Keith Murphree and Evelyn Murphree to Chesapeake Exploration LLC, dated July 1, 2008, recorded in Book 38 at page 739 of the Records of Cleburne County, Arkansas, as amended by Oil and Gas Lease Amendment dated November 24, 2009 and recorded as Document 201000226 of the Records of Cleburne County, Arkansas. See attached Exhibit 19.

*Lease No. 2:*
Oil and Gas Lease from Henry Keith Murphree and Evelyn Murphree to Chesapeake Exploration LLC., dated November 24, 2009 recorded as Document 201000239 of the Records of Cleburne County, Arkansas. See attached Exhibit 20.

WILLIAMS & ANDERSON PLC

TWENTY-SECOND FLOOR
111 CENTER STREET
LITTLE ROCK, ARKANSAS 72201

7016 1370 0000 9663 4425



**First Class Mail**

**First Class Mail**

XTO Energy, Inc.
C/o Corporation Service Company
300 Spring Building, Suite 900
300 Spring Street
Little Rock, Arkansas 72201

$14.95⁰
US POSTAGE
FIRST-CLASS
0625000039678
72201

939694 09